**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **COMMUNITY REFUGEE AND** | ) | |
| **IMMIGRATION SERVICES;** | ) | |
| **Gumaa Ismail Yahya IBRAHIM;  and** | ) | **No_____** |
| **Badreldin RAHOUMA, on behalf of** | ) | |
| **themselves and all others similarly situated,** | ) | |
| | ) | |
| | ) | |
|     **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT FOR** |
| | ) | **DECLARATORY AND** |
| | ) | **INJUNCTIVE RELIEF** |
| **Don Petit, Registrar, Ohio Bureau of Motor** | ) | |
| **Vehicles, in his official capacity,** | ) | **CLASS ACTION** |
| | ) | |
| | ) | **DEMAND FOR JURY** |
|     **Defendant.** | ) | **TRIAL** |

**COMPLAINT FOR CLASSWIDE DECLARATORY AND INJUNCTIVE RELIEF**

## I.      INTRODUCTION

1.      This is an action to enforce the rights of refugees who apply for driver's licenses in the

State of Ohio. Refugees are a class of non-citizens authorized to work and reside in the United

States and entitled under Ohio law and the REAL ID Act to obtain driver's licenses. However,

the Bureau of Motor Vehicles ("BMV") has enacted discriminatory policies that deny or delay

the issuance of driver's licenses to these individuals.  The BMV's actions are preempted by the

Supremacy Clause of the United States Constitution, which forbids states from making

immigration classifications distinct from those of the federal government.  Because they are

unable to procure driver's licenses in a timely fashion, thus hindering their fundamental right to

1

travel to their places of employment, transport their children and family members, and otherwise participate fully in civic life, Plaintiffs and putative class members seek injunctive and declaratory relief against these policies.

## II.    JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights), and 42 U.S.C. § 1983.  Because this lawsuit alleges violations of the United States Constitution, it raises questions of federal law.

3.      This Court has the authority to grant injunctive relief, declaratory relief, and other related relief pursuant to 28 U.S.C. § 1331 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

4.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant Don Petit, who is sued in his official capacity, operates in this district and division.  Additionally, organizational Plaintiff Community Refugee and Immigration Services is located in this district and division, many of the putative class members reside herein, and a substantial part of the acts or omissions giving rise to the events occurred herein.

## III.    PARTIES

### Plaintiffs

5.      Community Refugee and Immigration Services ("CRIS") is a non-profit organization that serves refugee and immigrant populations in Central Ohio. Its office is located in Columbus, Ohio.  Angela Plummer is the Executive Director of CRIS.

6.      Plaintiff CRIS has had to divert resources to assist affected individuals who have applied for driver's licenses in Ohio.   CRIS first began to hear from clients that they were being denied driver's licenses around 2016 because clients told staff attorneys at CRIS that BMV Deputy

Registrars would not accept their Form I-94 as proof of lawful status if the I-94 was more than two years old.

7.      Gumaa Ibrahim was born in Sudan and is not a United States citizen. He resides in Dayton, Ohio. He was admitted to the United States as a refugee on October 27, 2015 and issued a Form I-94. Ibrahim remains in the United States with valid refugee status. On or around December 23, 2016, he submitted an application to adjust his status to lawful permanent residency to U.S. Citizenship and Immigration Services ("USCIS"). USCIS issued a receipt notice on December 23, 2016. In early 2018, Mr. Ibrahim applied for a driver's license with BMV Deputy Registrars in Dayton, Clayton, and Centerville, Ohio. All three Deputy Registrars denied him a driver's license on the ground that his I-94 was more than two years old, because BMV policy prohibits Deputy Registrars from issuing a license to a refugee under this circumstance.

8.      Badreldin Rahouma was born in Sudan and is not a United States citizen. He resides in Cleveland, Ohio. He was admitted to the United States as a refugee on January 26, 2004 and issued a Form I-94. Rahouma remains in the United States with valid refugee status. He has a pending application for adjustment of status, which he filed on December 8, 2017 and for which USCIS issued him a receipt notice on January 30, 2018. He applied for a driver's license at a BMV Deputy Registrar at 3345 Edgecliff Terrace, Cleveland, Ohio in approximately February 2018. The Deputy Registrar refused to issue him a driver's license on the ground that his I-94 was more than two years old, because BMV policy prohibits Deputy Registrars from issuing a license to a refugee under this circumstance.

<u>Defendant</u>

3

9.     Defendant Don Petit is the Registrar of the Bureau of Motor Vehicles and is sued in his official capacity only.  He is responsible for the policies, practices, and customs of the Bureau of Motor Vehicles.  At all relevant times he was acting under color of state law.

## IV.     LEGAL FRAMEWORK

<u>Federal Law Governing Immigration Classification and Issuance of Driver's Licenses to Non-Citizens</u>

10.     The federal government has exclusive power to determine and regulate the immigration status of non-citizens in the United States.  The U.S. Constitution grants the federal government the power to "establish a uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3.

11.     Congress has created a comprehensive system of federal laws regulating immigration and enforcing immigration law through the Immigration and Nationality Act ("INA").  *See* 8 U.S.C. §§ 1101 *et seq.* (2016).  The INA contains complex and exclusive procedures for determining immigration and citizenship status.  The federal government has established specialized agencies and courts to determine the immigration status of individuals, to enforce immigration law, and to effectuate immigration policy.  *See* 8 U.S.C. §§ 1101(b)(4), 1229a, 1551 *et seq.* (2016); 8 C.F.R. §§ 2.1, 1003.1 *et seq.* (2016).

12.     The extensive federal statutory and regulatory scheme governing immigration classifications leaves no room for supplemental state laws or policies that classify non-citizens.  States have no authority to create immigration classifications that do not exist in federal law, nor to assess the legality of a non-citizen's presence or status in the United States separately from the federal government.

4

13.     With the federal REAL ID Act, Congress set standards for the issuance of state driver's licenses that federal agencies will accept for official purposes, such as accessing federal facilities and boarding federally regulated aircraft.  Pub. L. No. 109-13, § 201(3), 119 Stat. 231, 313 (codified at 49 U.S.C. § 30301 note).

14.     The REAL ID Act provides that the Secretary of Homeland Security shall determine whether a state is meeting the requirements of the REAL ID Act based on certifications made by the state to the Secretary of Homeland Security.  Pub. L. No. 109-13, § 202(a)(2). A state may receive federal grant money to assist it in complying with the Act. *Id.* § 204(a).

15.     Ohio, along with at least 24 other states and the District of Columbia, has agreed to comply with REAL ID, thereby ensuring that its residents may use their Ohio driver's licenses to enter federal facilities and board commercial domestic flights.[1]  Many other states have received extensions on the deadline to become compliant with REAL ID.[2]

16.     To issue a REAL ID-compliant driver's license to an applicant, a state must require documentary evidence that the applicant has "lawful status," as defined by the REAL ID Act. *Id.* § 202(c)(2)(B).

17.     The REAL ID Act establishes nine categories of persons who have "lawful status," as required to receive a REAL ID-compliant driver's license: (1) citizens or nationals of the United States; (2) aliens lawfully admitted for permanent or temporary residence in the United States; (3) aliens with conditional permanent resident status in the United States; (4) aliens who have an approved application for asylum in the United States or who entered into the United States in

---

[1] *See* https://www.dhs.gov/real-id/ohio [last visited September 26, 2018].

[2] Beginning in July 2018, Ohio began to issue a "compliant" driver's license with heightened standards beyond those required in the REAL ID Act.  For purposes of this complaint, when Plaintiffs refer to "REAL ID-compliant" driver's licenses, they are not referring to these new Ohio licenses but to licenses that meet the actual requirements of the REAL ID Act.

refugee status; (5) aliens with a valid, unexpired nonimmigrant visa or nonimmigrant visa status for entry into the United States; (6) aliens with a pending application for asylum in the United States; (7) aliens with a pending or approved application for temporary protected status in the United States; (8) aliens with approved deferred action status; and (9) aliens with a pending application for adjustment of status to that of an alien lawfully admitted for permanent residence in the United States or conditional permanent resident status in the United States. Pub. L. No. 109-13, § 202(c)(2)(B), 119 Stat. 231, 313 (codified at 49 U.S.C. § 30301 note); 6 C.F.R. § 37.3 (2016).

### *Refugees*

18.     A refugee is "Any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42), INA § 101(a)(42). An approval of a refugee application authorizes U.S. Customs and Border Protection ("CBP") "to admit the applicant conditionally as a refugee upon arrival." 8 C.F.R. § 207.4.

19.     Prior to April 26, 2013, CBP issued refugees a paper I-94 entry document with a classification stamp verifying their refugee status under INA § 207. *See* Exhibit 1 (redacted paper I-94 record). Beginning April 26, 2013 and thereafter,[3] persons entering the United States through the U.S. Refugee Admissions Program must access an I-94 entry document from the designated CBP web site to verify their lawful admission as a refugee under INA § 207. *See*

---

[3] There was a rollout provision with rolling implementation dates for conversion to this electronic process, but by September 7, 2015, all refugees were issued electronic I-94 records.

Exhibit 2 (redacted electronic I-94 record). The form itself notes that a record of admission printed from the CBP website constitutes a lawful record of admission. *See* 8 C.F.R. § 1.4(d). Neither the paper nor the electronic I-94 refugee admission document has an expiration date or other date upon which it is no longer a valid document for proof of immigration status and employment authorization.[4] Both the paper and electronic I-94 records are acceptable proof of lawful immigration status and employment authorization on federal forms, such as USCIS Form I-9, Employment Eligibility Verification, which is used to verify an employee's authorization to work lawfully in the United States.[5]

20.     Refugees are eligible to adjust status to lawful permanent residency after they have "been physically present in the United States for at least one year." INA § 209(a)(1), 8 U.S.C. §§ 1158 (a)(1), (a)(2)(b).[6] Once an application to adjust status is approved, the refugee's period of permanent residence is retroactively dated to the date of his or her admission to the United States as a refugee. *Id.*

21.     In order to apply for adjustment of status, a refugee must submit Form I-693 completed by a USCIS-certified civil surgeon. Civil surgeon fees for completion of Form I-693 are not covered by Medicaid or other health insurance, and civil surgeons charge fees ranging from approximately $350 to $1000 per person for this service, plus additional fees for required vaccinations as needed. Adjustment of status applications for refugees are initially processed by the USCIS Nebraska Service Center and then transferred to local field offices. Timeframes for adjudication of adjustment of status applications vary from several months to over a year. For

---

[4] Some refugee I-94s are marked "D/S", signifying the refugee is eligible to stay in the United States for the duration of her refugee status.
[5] USCIS, Instructions for Form I-9 (11/14/2016), available at: https://www.uscis.gov/i-9 [last visited October 3, 2018].
[6] Although refugees are eligible to apply for adjustment to lawful permanent residency after one year of physical presence in the U.S., they are not required to do so. Refugee I-94s do not expire.

instance, on October 4, 2018, the Ohio USCIS Field Offices were adjudicating adjustment of status applications filed between September 29, 2016 and November 24, 2016.[7] USCIS also sometimes takes additional time to process applications beyond the processing times indicated on its website.

22.     To be eligible for a REAL ID-compliant driver's license, a person must present documents demonstrating identity and lawful status in the United States, as determined by USCIS. Pub. L. No. 109-13, § 202(c).

23.     To issue REAL ID-compliant licenses, states must enter into memoranda of understanding with the Secretary of Homeland Security to routinely use the Systematic Alien Verification for Entitlements ("SAVE") system, established by USCIS, to "verify the legal presence status of a person, other than a United States citizen, applying for a driver's license or identification card." Pub. L. No. 109-13, § 202(c)(3)(C).

<u>Ohio Law and Policy Governing Issuance of Licenses to Non-Citizens</u>

24.     The Ohio Revised Code establishes the legal requirements for the issuance of driver's licenses to Ohio residents. *See* Ohio Rev. Code § 4507.

25.     A driver's license issued to a resident of Ohio over the age of twenty-one expires on the birthday of the applicant in the fourth year after the date it is issued, unless the applicant is a temporary resident. Ohio Rev. Code § 4507.09(A).

26.     Ohio driver's license applicants who are not permanent residents or U.S. citizens are only eligible for a "nonrenewable license." A nonrenewable license "shall not extend beyond the duration of an applicant's temporary residence in this state, and shall expire on the same date listed on the applicant's legal presence documentation, or on the same date in the fourth year

---

[7] https://egov.uscis.gov/processing-times/ [last visited October 4, 2018].

after the date in the nonrenewable license is issued, whichever comes first." OAC § 4501:1-1-37(A)(1).

27.     Applicants must show "legal presence" in the United States by submitting the appropriate legal documents issued by USCIS to establish the individual "has taken the necessary steps to ensure they have a recognizable legal status with the United States." OAC § 4501:1-1-37(A)(4). Applicants must submit "original and valid" USCIS documents showing the dates of "legal presence." OAC § 4501:1-1-21(G)(6).

### V.     FACTUAL ALLEGATIONS

**A.     Bureau of Motor Vehicles Structure**

28.     The Bureau of Motor Vehicles is a state agency that falls under the Department of Public Safety.

29.     The BMV has signed contracts with more than 400 Deputy Registrars, which provide services throughout Ohio's 88 counties, including issuing driver's licenses.  *See* Ohio Rev. Code § 4507.01(B).

30.     When Deputy Registrars issue or decline to issue driver's licenses to individual customers, they are acting as state actors.  According to the BMV's website, Deputy Registrars "provide driver licenses, ID cards, vehicle registrations and other services on behalf of the BMV."  The fees for all services that Deputy Registrars may charge are set by the BMV in accordance with the Ohio Revised Code.

31.     Deputy Registrars are required to follow Ohio law and BMV policy and guidance.

32.     The relationship between the BMV and its Deputy Registrars is contractual in nature; the BMV provides monetary compensation to Deputy Registrars in exchange for the services they are contracted to provide.

**B.     Bureau of Motor Vehicles Policies and their Enforcement**

33.     BMV policy requires that driver's license applicants who have refugee status and "are in possession of an I-94 with a refugee stamp that indicates 'indefinite' can be issued" a driver's license. However, if the I-94 stamp is over two years old, refugee applicants "must present an I-797 [USCIS receipt notice] with case type I-485 [application to register permanent residence or adjust status] along with the I-94" in order to receive a driver's license. Exhibit 3 (BMV DR manual, Chapter 1, Section P(1)(m)(i)); Exhibit 4 (USCIS Manual p. 16).

34.     Gumaa Ibrahim, a citizen of Sudan, was admitted to the United States as a refugee on October 27, 2015.

35.     Pursuant to federal law, Ibrahim was eligible to adjust his status to lawful permanent residence on October 27, 2016, one year after his admission as a refugee.

36.     On December 23, 2016, Ibrahim applied to adjust his status to lawful permanent residence.

37.     Through no fault of Ibrahim, USCIS has not yet adjudicated his application for adjustment of status ("Form I-485").  It issued a receipt notice for his application on December 23, 2016.

38.     Ibrahim obtained an Ohio driver's license on October 14, 2017 but the license was issued with an expiration date of January 3, 2018, because Ibrahim's employment authorization document expired on January 3, 2018.

39.     In January 2018, Ibrahim visited the Bureau of Motor Vehicles Deputy Registrar at 451 W. Third Street in Dayton, Ohio, to apply for a new driver's license.  He presented his I-94, his expired employment authorization document, a copy of his I-485 receipt notice, and proof of his Ohio residence.

10

40.  An employee of the Deputy Registrar, and subsequently a manager, told him that, pursuant to BMV policy, his I-94 could not be accepted as proof of legal presence because it was more than two years old.

41.  Because he has no identity document due to his refugee status and inability to get a passport in his home country, Sudan (refugees are usually unable to get passports from the home countries they have fled), the I-94 is the only identity document Ibrahim currently possesses.

42.  The same day, Ibrahim went to another Deputy Registrar at 8389 North Main Street, in Clayton, Ohio.  He presented the same documents he presented at the West Third Street Deputy Registrar. An employee of the North Main Street Deputy Registrar, told him that they could not issue him a license because his I-94 was more than two years old.

43.  Approximately two weeks later, Ibrahim presented the same documents to a Deputy Registrar at 104 West Spring Valley Road in Centerville, Ohio.  Again, the Deputy Registrar refused to issue him a license on the ground that his I-94 was more than two years old.

44.  Badreldin Rahouma, a citizen of Sudan, was admitted to the United States as a refugee on January 26, 2004.

45.  Pursuant to federal law, Rahouma was eligible to adjust his status to lawful permanent residence on January 26, 2005, a year after his admission as a refugee.

46.  Due to a lack of funds and legal representation, Rahouma did not apply to adjust his status to lawful permanent residence until December 8, 2017.

47.  USCIS has not yet adjudicated Rahouma's application for adjustment of status ("Form I-485"). It issued a receipt notice for his application on January 30, 2018.

48.  Rahouma obtained a temporary Ohio driver's license in 2009 that was valid for one year, until April 3, 2010.

11

49.    Rahouma tried to obtain another license after his first one expired. He visited Deputy Registrars in approximately 2010 and 2011 in Cleveland, Ohio and Columbus, Ohio, and was told both times that he could not obtain a driver's license using his I-94 because it was "expired."

50.    In approximately February 2018, after he filed his I-485 and received the receipt notice, Rahouma visited the Bureau of Motor Vehicles Deputy Registrar at 3345 Edgecliff Terrace, Cleveland, Ohio. He presented his I-94, his expired employment authorization document, a copy of his I-485 receipt notice, and proof of his Ohio residence.

51.    An employee of the Edgecliff Terrace Deputy Registrar told him that, pursuant to BMV policy, his I-94 could not be accepted as proof of legal presence because it was more than two years old.

52.    The Edgecliff Terrace Deputy Registrar employee contacted a BMV official in Columbus to explain the situation, and then the employee again told Rahouma that according to BMV policy she could not accept the I-94 because it was more than two years old.

53.    Because he has no identity document due to his refugee status and inability to get a passport in his home country, Sudan, the I-94 is the only identity document Rahouma currently possesses.

54.    Community Refugee and Immigration Services ("CRIS") provides refugee resettlement services to refugees admitted to the United States who settle in Central Ohio.

55.    The organization assists refugees in many aspects of their resettlement, including securing housing and basic necessities; applying for Social Security cards, public assistance, and Ohio driver's licenses; enrolling children in school; accessing health screenings; and providing cultural orientation.

56. CRIS employs attorneys who, among other things, also assist refugees in applying for adjustment of status when they are legally eligible to do so.

57. In addition to refugee resettlement and legal services, CRIS provides other services, including services for Limited English Proficient residents, assistance for victims of crime, health education services and outreach to health providers, services to senior refugees and asylees, employment services and individual employment counseling, English as a Second Language instruction, and early intervention services for the children of Limited English Proficient families.

58. CRIS serves over 1000 clients per year with a staff of approximately 56 employees.

59. Attorneys and other staff at CRIS first became aware that the BMV was refusing to issue licenses to refugees whose I-94 documents were more than two years old in approximately 2016.

60. CRIS attorneys have had to spend resources advocating for their refugee clients through BMV License Control when their clients have been unable to obtain driver's licenses at individual Deputy Registrars.

61. CRIS attorneys have spent approximately 200 hours total on advocacy with the BMV and the Deputy Registrars to help their refugee clients obtain driver's licenses after they were initially refused a license because their I-94s were more than two years old.

62. Caseworkers and other CRIS staff have had to spend resources accompanying refugee clients to the BMV Deputy Registrars to attempt to convince the BMV to give licenses to clients.

63. Caseworkers and other CRIS staff have spent numerous hours accompanying clients to the Deputy Registrars for this purpose.

64. CRIS has faced budget cuts in recent years due to changes in federal policy regarding refugees.

13

**C.      Defendant's Policies Harm Plaintiffs**

65.      In most parts of the United States, including Ohio, the ability to drive is a necessity of modern life. Non-citizens live in urban, suburban, and rural areas of Ohio. Even in cities, few Ohio residents are able to commute to work by public transportation, and in suburban and rural areas of the state public transportation is virtually non-existent.

66.      For many low-income immigrants and refugees, an Ohio driver's license or state identification card is the only form of photo identification available to them. Many low-income immigrants do not have the financial resources or access to transportation to travel to the nearest embassy or consulate to apply for a passport. Refugees who have fled violence in their home countries are often unable to apply for passports as a result of their flight from their home country. State-issued photo identification is a requirement to apply for work, open a bank account, attend higher education, obtain public benefits, and access many other fundamental human rights.

67.      For instance, the Form I-9 must be completed by an employer in order to confirm that an employee is legally authorized to work. Employees must produce certain identity documents, including at least one photo ID, in order for the Form I-9 to be filled out successfully. Therefore, lack of access to a driver's license can adversely affect a refugee's ability to gain employment and support herself or her family.

68.      Many studies have found that low-income workers without cars face significant obstacles in obtaining transportation to places of employment and for other necessities. The Leadership Conference Education Fund found that as jobs are increasingly located farther away from urban centers, workers without cars struggle to find reliable public transportation to commute to work.[8]

---

[8] http://civilrightsdocs.info/pdf/docs/transportation/getting-to-work-july20.pdf.

14

Public transportation is clustered in city centers, but only about 22% of people in the country's largest metropolitan areas (including many Ohio cities) work within three miles of city centers.

69.    A Brookings Institution Report found that among the 96 largest metropolitan statistical areas in the United States, the Cleveland metro area experienced the largest drop (27 percent) in the number of jobs near the average resident from 2000 to 2012.[9]

70.    Another Brookings Institution report found that only one-quarter of jobs in low- and middle-skill industries are accessible via public transit within 90 minutes for the typical metropolitan commuter nationwide, while one-third of jobs in high-skill industries are accessible via transit.  Refugees disproportionately work in lower-skilled jobs and thus are more likely to have difficulty getting to work on public transportation.[10]

71.    A report by the Federal Reserve Bank of Cleveland found that jobs are the least accessible for workers with only a high school degree and for positions that pay less than $1,250.00 per month.[11]

72.    According to a Policy Matters Ohio report, Ohio's public transportation system is grossly underfunded. This will likely require most Ohio residents to continue to rely on cars for transportation to work, school, and other errands for the foreseeable future.[12]

73.    Ibrahim is employed by Honeywell in Dayton, Ohio. Without a driver's license, it is difficult for him to commute to work. Public transportation options between his home and his workplace are very limited and inconvenient because there are a limited number of routes, many

[9] Elizabeth Kneebone and Natalie Holmes, "The growing distance between people and jobs in metropolitan America," Brookings, Washington D.C.: 2015.
[10] https://www.brookings.edu/research/missed-opportunity-transit-and-jobs-in-metropolitan-america.
[11] https://www.clevelandfed.org/newsroom-and-events/publications/a-look-behind-the-numbers/albtn-20151123-a-long-ride-to-work-job-access-and-public-transportation-in-northeast-ohio.aspx#U3.
[12] https://www.policymattersohio.org/research-policy/sustainable-communities/smart-transportation/testimony-to-house-finance-subcommittee-on-transportation.

of which require transfers and long wait times. He often depends on coworkers to get rides to and from work.

74. Ibrahim also takes English classes regularly at St John's United Church in Dayton. It is difficult for him to get transportation to and from his English classes without a driver's license.

75. Rahouma is currently unemployed and searching for work. His inability to get a driver's license has limited the jobs he is able to apply for and accept.[13] His lack of a driver's license also limits his ability to attend medical appointments that are crucial to his health.

76. Additionally, as described in paragraphs 54-64, Organizational Plaintiff CRIS has been harmed by the BMV's policy not to accept refugees' I-94s that are more than two years old. Staff including attorneys and caseworkers at CRIS have had to divert resources to advocate for clients at BMV License Control and at BMV Deputy Registrars. Organizational Plaintiff CRIS primarily serves low-income immigrants. Low-income people especially face challenges in obtaining transportation if they do not have access to a driver's license.

## VI.    CLASS ACTION ALLEGATIONS

77. Plaintiffs bring this class action on behalf of themselves and all others similarly situated. The proposed class is defined as follows:

> All refugees residing in Ohio who possess a valid refugee I-94 document that is more than two years old and have not yet adjusted their status to that of a lawful permanent resident.

78. Plaintiffs and members of the class bring this action for equitable, declaratory, and injunctive relief pursuant to subdivision (b)(2) of Rule 23 of the Federal Rules of Civil Procedure.

---

[13] Form I-9 allows a refugee to submit his or her I-94 as proof of work authorization, but still requires a photo ID. Since the I-94 document does not have a photo, refugees, who rarely are able to receive passports from their home countries, rely on state driver's licenses as their only source of a photo ID. The BMV's denial of a driver's license therefore substantially inhibits his or her eligibility for new employment.

79.     Although the precise size of the class is unknown, Plaintiffs believe that it contains approximately 1,237 members. In federal fiscal years 2010 through 2015 14,767 refugees were resettled in Ohio.[14] The estimated number of refugees that currently reside in Ohio that have been in the United States for more than two years and have not adjusted their status is 1,237. This data is based solely on the number of refugees resettled in Ohio and is extrapolated from national trends, as the precise number of unadjusted refugees in each state is not recorded. The actual number of unadjusted refugees is likely much greater, as Ohio is one of the top five destination states in the U.S. for secondary refugee migration,[15] but exact data of migration is not recorded.

80.     The proposed class is so numerous that individual joinder of all its members would be impracticable.

81.     Class members live throughout the state of Ohio.

82.     Joinder is also impracticable because this population undergoes change, many class members are unaware of their rights, and class members' access to legal services and representation is hampered by language, cultural, and economic barriers.

83.     There are many questions of law and fact common to the representative Plaintiffs and the members of the class, including whether Defendant's policy of refusing to accept refugees' I-94 documents that are more than two years old as proof of lawful presence is discriminatory on the basis of alienage and preempted by federal law.

---

[14] http://jfs.ohio.gov/refugee/chartsMaps_Tables.stm.
[15]
https://peerta.acf.hhs.gov/sites/default/files/public/uploaded_files/Secondary%20Migration%20Webinar%209%202023%2014%20Transcript%20508.pdf.

84.     The claims of the named Plaintiffs are typical of the claims of the class because the named Plaintiffs have been subjected to the same BMV policies to which the class members have been subjected.

85.     The named Plaintiffs will fairly and adequately protect the interests of the class.  There is no conflict between the Plaintiffs and other class members. Moreover, Plaintiffs are represented by attorneys from Advocates for Basic Legal Equality, Inc., which has litigated numerous civil-rights lawsuits on behalf of non-citizens in federal court, including class actions, and can adequately represent the interests of the class members as well as those of the named Plaintiffs.

86.     Defendant has acted on grounds generally applicable to both the named Plaintiffs and other class members, making appropriate final declaratory and injunctive relief with respect to the members of the class. The injuries suffered by the named Plaintiffs and other class members as a result of Defendant's policies are capable of repetition yet may evade review, thereby making individual and class relief appropriate.

### VII.    CAUSES OF ACTION

### FIRST CLAIM FOR INJUNCTIVE RELIEF (UNDER *EX PARTE YOUNG*)

Claim For Equitable Relief to Enforce the Supremacy Clause of the United States Constitution and Enjoin State Action Preempted by Federal Immigration Law

87.     Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

88.     The Supremacy Clause, Article VI, Section 2, of the U.S. Constitution provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the

18

> Judges in every State shall be bound thereby; any Thing in the Constitution of Laws of any State to the Contrary notwithstanding.

89.     The Supremacy Clause mandates that federal law preempts state law in any area over which Congress expressly or impliedly has reserved exclusive authority, or which is constitutionally reserved to the federal government, or where state law conflicts or interferes with federal law. The Supremacy Clause also forbids states from regulating immigration or creating immigration classifications independently from those created by the federal government.

90.     The BMV's policy of classifying refugees with a valid I-94 that is more than two years old differently than refugees with a valid I-94 that is less than two years old usurps the exclusive authority of the federal government to determine an individual's immigration status and directs state officials to make immigration determinations independently from those recognized by the federal government.

91.     This policy creates an immigration category that is inconsistent with and unrecognized by federal law. By intruding on the federal government's exclusive authority to make immigration status classifications, Defendant's policy conflicts with federal statutes, regulations and policies, usurps power constitutionally vested in the federal government, and attempts to legislate in fields occupied by the federal government in violation of the Supremacy Clause.

92.     Plaintiffs move for relief on this claim pursuant to the court's equitable authority to enjoin state action that violates the Supremacy Clause.

### SECOND CLAIM FOR INJUNCTIVE RELIEF (UNDER *EX PARTE YOUNG*)

Fourteenth Amendment (42 U.S.C. § 1983) Claim For Violation Of The Right To Equal Protection Of Law

93. Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

94. The Fourteenth Amendment to the U.S. Constitution provides that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

95. The BMV has and enforces a policy of denying driver's licenses to refugees whose I-94 documents are more than two years old and have no other proof of legal presence as determined by the BMV.

96. During all relevant times, including in the promulgation and enforcement of this policy, Defendant has acted under color of state law.

97. Defendant's policy impermissibly discriminates against Plaintiffs and class members – all of whom are currently authorized by the federal government to reside and work in the United States – on the basis of their alienage.

98. Defendant's policy impermissibly discriminates between Plaintiffs and other categories of non-citizens.

99. Defendant's policies also impermissibly discriminate between non-citizens who are classified identically under federal law.

100. Defendant's policies are not rationally related to any legitimate state interest.

101. Defendant's policies are not narrowly tailored to further a compelling state interest.

102. Defendant's policies deny Plaintiffs and class members equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

A.    Assume jurisdiction over this matter and maintain continuing jurisdiction until Defendant is in full compliance with every order of this Court;

B.    Issue an order certifying this action to proceed as a class action pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure;

C.    Appoint the undersigned as class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure;

D.    Issue a judgment declaring that Defendant's policies, practices, acts, and omissions described herein violate Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, and 42 U.S.C. § 1983;

E.    Issue a judgment declaring that Defendant's policies, practices, acts, and omissions described herein are preempted by the Supremacy Clause of the United States Constitution;

F.    Permanently enjoin Defendant, his subordinates, agents, employees, and all others acting in concert with him from subjecting Plaintiffs to the unconstitutional and illegal policies described herein, and issue injunctive relief sufficient to rectify those conditions, including accepting I-94s that are more than two years old as proof of lawful presence for refugee applicants.

G.    Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable law; and

H.    Grant any other relief the Court deems appropriate.

### JURY DEMAND

Plaintiffs demand a jury trial on the claims triable as of right by jury set forth herein.

21

Respectfully submitted,


By:      */s/ Emily M. Brown*
         Emily M. Brown (0092553)
         Kathleen C. Kersh (0091198)
         Mark R. Heller (0027027)
         Eugenio Mollo, Jr. (0081860)

         ADVOCATES FOR BASIC LEGAL EQUALITY, INC.
         130 West Second St., Suite 700E
         Dayton, Ohio 45402
         937.535.4408  (phone)
         937.535.4600  (fax)
         ebrown@ablelaw.org
         kkersh@ablelaw.org
         mheller@ablelaw.org
         emollo@ablelaw.org

         *Attorneys for Plaintiffs*