IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| COMMUNITY REFUGEE AND IMMIGRATION SERVICES; Gumaa Ismail Yahya IBRAHIM; and Badreldin RAHOUMA, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> Don PETIT, Registrar, Ohio Bureau of Motor Vehicles, in his official capacity, <br><br> Defendant. | No. 2:18-cv-1189 <br><br> Judge Sargus <br><br> Magistrate Judge Jolson |

## MOTION FOR CLASS CERTIFICATION

1. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs Gumaa Ibrahim and Badreldin Rahouma move for an order certifying this matter to proceed as a class under Rule 23(b)(2).

2. The named Plaintiffs Gumaa Ibrahim and Badreldin Rahouma seek to represent a class consisting of all refugees residing in Ohio who possess a valid refugee I-94 document that is more than two years old and have not yet adjusted their status to that of a lawful permanent resident.

3. Plaintiffs request that Emily Brown, Kathleen Kersh, Mark Heller, and Eugenio Mollo of Advocates for Basic Legal Equality, Inc., be appointed as class counsel in this case.

4. Plaintiffs make this Motion on the grounds that:

1

    (A) The class is so numerous that joinder is impracticable;

    (B) There are questions of law and fact common to all class members;

    (C) The claims of the named Plaintiffs are typical of the claims of the class;

    (D) The named Plaintiffs will fairly and adequately protect the interests of the class; and

    (E) Defendant has acted or failed to act on grounds generally applicable to the class, thereby making final injunctive and declaratory relief appropriate.

5. Therefore, Plaintiffs respectfully request that this Court enter an order:

    A. Certifying this case to proceed on behalf of the class defined as:

        All refugees residing in Ohio who possess a valid refugee I-94 document that is more than two years old and have not yet adjusted their status to that of a lawful permanent resident.

    B. Appointing Emily Brown, Kathleen Kersh, Mark Heller, and Eugenio Mollo of Advocates for Basic Legal Equality, Inc., as counsel for the class.

    C. Granting such other and further relief as this Court deems just and proper.

## I. INTRODUCTION

Plaintiffs bring this action on behalf of themselves and others similarly situated to challenge Defendant's unconstitutional policy that denies Ohio driver's licenses to named Plaintiffs and similarly situated individuals who hold refugee status and who were admitted to the United States as refugees more than two years ago.

## II. FACTS

The facts of this case are set forth more fully in the Class Action Complaint (Dkt. #1) and attached exhibits, which are incorporated by reference. The proposed class that Plaintiffs seek to represent consists of:

> All refugees residing in Ohio who possess a valid refugee I-94 document that is more than two years old and have not yet adjusted their status to that of a lawful permanent resident.

## III.  ARGUMENT

A federal court may certify a suit as a class action where the proposed class meets all of the requirements of Federal Rule of Civil Procedure 23(a) and fits within one of the subcategories of Federal Rule of Civil Procedure 23(b). *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-538 (6th Cir. 2012).

A district court is required to conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are satisfied before certifying a class. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).  A preliminary inquiry into the merits is generally not appropriate when considering a motion for class certification; indeed, "[m]erits questions may be considered to the extent—*but only to the extent*—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013)).

In this case, the Class easily satisfies the requirements of Rule 23(a) and (b)(2). Thus, this Class should be certified.

### A.  *The Proposed Class is Ascertainable and Meets the Requirements of Rule 23(a)*

#### i.  <u>Membership in the Class is Ascertainable</u>

Before analyzing the statutory elements regarding class certification, a court ordinarily must find that the class definition is "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young*, 693 F.3d at 537-538 (citation omitted).  However, the Sixth Circuit has held that "ascertainability is not an additional requirement for certification of a (b)(2) class seeking only injunctive and

declaratory relief," noting that "because the focus in a (b)(2) class is more heavily placed on the nature of the remedy sought, and because a remedy obtained by one member will naturally affect the others, the identities of individual class members are less critical in a (b)(2) action than in a (b)(3) action." *Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016) (quoting *Shelton v. Bledsoe*, 775 F.3d 554, 561 (3d Cir. 2015)). Here, Plaintiffs seek certification as a (b)(2) class and ask the Court only for injunctive and declaratory relief. Therefore, they need not show ascertainability.

However, even if a showing of ascertainability were required, Plaintiffs can make such a showing. A court must be able to ascertain whether a person is a class member "by reference to objective criteria." *Young*, 693 F.3d at 538 (citing Moore's Federal Practice § 23.21[3]). "In some circumstances, a reference to damages or injuries caused by particular wrongful actions taken by the defendants will be sufficiently objective criterion for proper inclusion in a class definition." *Id.* at 538-39 (citing Moore's Federal Practice § 23.21[3]).

Here, the class satisfies the ascertainability requirement because a specific group (refugees residing in Ohio who entered the United States more than two years ago and have not yet adjusted their status to lawful permanent residency) suffered a specific injury: denial of an Ohio state identification card or driver's license. Therefore, it is ascertainable.

### ii. The Class Is So Numerous that Joinder of All Members is Impracticable

Plaintiffs can meet the "numerosity" requirement of Rule 23(a)(1) if they demonstrate the impracticability of joinder. *Young*, 693 F.3d at 541 (*quoting In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)). Joinder need not be impossible. There is no "strict numerical test for determining impracticability of joinder." *In re Am. Med. Sys.,* 75 F.3d at 1079. A court may certify a class even when a plaintiff does not know the exact number of class members. *Senter v. General Motors Corp.*, 532 F.2d 511, 523 n. 24 (6th Cir. 1976). A large number of potential

4

plaintiffs, however, can be sufficient to satisfy numerosity. *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) ("[The] sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy [numerosity]."); *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005) (holding a district court did not abuse its discretion when granting class certification to a class of Columbus tenants whose water service was or will be terminated because of the landlord or prior tenant's indebtedness, where for purposes of showing numerosity the plaintiffs relied only on the fact that the city of Columbus had 150,000 renters); Additionally, courts frequently certify classes where the size of the class is not precisely known. *Bovee v. Coopes & Lybrand*, 216 F.R.D. 596, 608 (S.D. Ohio 2003) (certifying a class where the court noted that "plaintiffs believe that the class numbers in the thousands").

Plaintiffs estimate that there are a minimum of 1,082 members in the proposed class. This estimation was derived from Ohio-specific refugee arrival and refugee-adjustment data, where available. In federal fiscal years 2012 through 2016, according to publicly available data from the Office of Refugee Resettlement, approximately 15,031 refugees were resettled in Ohio, and in 2016, specifically, approximately 4,194 refugees were resettled in Ohio. Exhibit A, p. 1, Department of State Refugee Arrivals (showing total refugee arrivals to Ohio in FY 2012 to FY 2016).

To estimate the number of refugees who have been in the United States for more than two years but have not adjusted their status to lawful permanent residency, Plaintiffs used the most recent available Ohio-specific data[1] on the number of refugees resettled in Ohio who adjusted

---

[1] Available data in subsequent years only tracks on a state-by-state basis the number or refugee arrivals; only nationwide data is available for the number of refugee adjustments.

their status to lawful permanent residency: data from years 1996-2001. *See* U.S. Department of Homeland Security, Yearbook of Immigration Statistics 1996 to 1999, available at: https://www.dhs.gov/immigration-statistics/yearbook/1996_1999.

| **Year** | **Number of Refugees Arriving in Ohio** | **Number of Refugees and Asylees who Adjusted Status in Ohio** |
|---|---|---|
| 1996 | 1395 | -- |
| 1997 | 1384 | 1362 |
| 1998 | 1535 | 664 |
| 1999 | 1484 | 481 |
| 2000 | 1780 | 903 |
| 2001 | -- | 2215 |
| Total Arrivals 1996-2000 | **7578** | |
| Total Adjustments 1997-2001 | | **5625** |

Percentage of individuals who adjusted status: 5625 / 7578 = **74.2%**

Percentage of individuals who did not adjust status: **25.8%**

Since refugees are required to live in the United States for one year before applying for lawful permanent residency, Plaintiffs compared the number of refugees who adjusted their status in a given year to the number of refugees who arrived the year before (and thus the number of refugees who would have accrued one year of presence and thus were eligible to adjust their status).  Based on the data available, it appears only approximately 74.2% of eligible refugees adjust their status to lawful permanent residency after one year of presence in the United States.

If an average of 74.2% of eligible refugees adjust status to lawful permanent residency in any given year, it therefore follows that a remaining average 25.8% of eligible refugees do not

6

adjust their status.[2] Applying these estimates to the 4,194 refugee arrivals in Ohio in 2016, it follows that an estimated 25.8% of those arrivals—or 1,082 refugees—likely did not adjust their status to lawful permanent residence in 2016. Thus, approximately 1,100 refugees are estimated to be living in Ohio since 2016—with a refugee I-94 that is therefore more than two years old—who have not yet adjusted their status and would be harmed by the BMV's current policy.[3]

Consequently, the Class is sufficiently numerous to satisfy the numerosity requirement. *See Senter,* 532 F.2d at 522-523 ("In ruling on a class action a judge may consider reasonable inferences drawn from facts before him at that stage of the proceedings"); *Smith v. Waterman S.S. Corp.*, 2011 U.S. Dist. LEXIS 103369, at *4 (E.D. Mich. Sept. 13, 2011) ("It is the duty of a district court faced with the question of class-action certification to scrutinize the available evidence [and] draw reasonable inferences from the facts available at this stage of the proceeding . . ."); *Putnam v. Davies*, 169 F.R.D. 89, 93 (S.D. Ohio 1996) (noting that numerosity was satisfied even though plaintiff "has not offered evidence with respect to the number of potential

---

[2] The failure to adjust status could be a result of different or many factors, including a failure to apply for adjustment or application processing delays by U.S. Citizenship and Immigration Services.

[3] Note that the 1,082 estimate is conservative for two reasons. First, the only available adjustment data from this time period includes both refugee and asylee adjustments, and thus refugee adjustment numbers are likely significantly lower than the number of adjustments reflected in the data table. Second, this data does not include information for secondary migrants (refugees who have migrated to Ohio from other states).  Data from the Office of Refugee Resettlement in the U.S. Department of Health and Human Services indicates that Ohio has recently been a top state for secondary refugee migration, suggesting that the overall number of refugees in Ohio is likely greater than the number initially resettled here, and therefore the number of refugees who remain unadjusted two years after entry to the U.S. is likely greater as well.  *See* https://www.acf.hhs.gov/sites/default/files/orr/statistical_abstract_for_refugee_resettlement_stakeholders_508.pdf at p. 9-10 (showing data from the Refugee Arrivals Data System that in FY 2013 Ohio had a net secondary migration total of 881 refugees, as 1,062 refugees resettled in Ohio from other states and 181 refugees left Ohio).

class members," because the named plaintiff had asserted that law enforcement executed the challenged policy on a daily basis).

Other factors courts look to in determining impracticability of joinder include "judicial economy, geographical dispersion of class members, ease of identifying putative class members, and practicality with which individuals [sic] putative class members could sue on their own." *Crawley v. Ahmed*, No. 08-cv-14040, 2009 U.S. Dist. LEXIS 40794, at *28-29 (E.D. Mich. May 14, 2009). Here, Class members are dispersed throughout the state. It is unlikely that each and every Class member, most of whom have limited English proficiency and limited financial resources, will be able to invest in the resources necessary to redress the claims raised by this case on their own. In sum, judicial economy will be served by allowing this case to be brought as a class action, rather than requiring hundreds of individuals to bring their own actions. *See Putnam*, 169 F.R.D. at 93 ("[T]he financial disincentives to initiating a lawsuit such as this one create a significant hardship for prospective plaintiffs and warrant the conclusion that the questioned statutes would go unchallenged were a class not certified.") (quoting *Kutschbach v. Davies*, 885 F. Supp. 1079, 1084 (S.D. Ohio 1995)).

        iii.   There are Questions of Law and Fact Common to the Class

The "commonality" requirement of Rule 23(a)(2) is satisfied where there is a question of law or fact common to the class. The test is "qualitative rather than quantitative . . . [and] there need be only a single issue common to all members of the class." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1080 (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3.10, at 3-50 (3d ed. 1992)); *see also Powers v. Hamilton Co. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). If there is a common issue uniting the putative class members, "variations in the circumstances of class members are acceptable." *Bacon*, 370 F.3d at 570. The Sixth Circuit has

8

also observed that plaintiffs satisfy the commonality prong where resolving the common issue will "advance the litigation." *Sprague v. Gen'l Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998); *see also Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 424 (6th Cir. 1998) ("[T]he commonality test is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members.") (quotation omitted). "To demonstrate commonality, the plaintiffs' 'claims must depend on a common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Young*, *supra* at 542 (citation omitted). In a case such as this one, which alleges that Defendant's policy is illegal, "the commonality requirement will be satisfied as long as the members of the class have allegedly been affected by a general policy of the Defendant and the general policy is the focus of the litigation." *Bovee v. Coopes & Lybrand*, 216 F.R.D. 596, 608 (S.D. Ohio 2003) (citing *Putnam*, 169 F.R.D. at 93).

The questions of law and fact that are common to all members of the class include: (1) whether Defendant's policy of not accepting refugee I-94 documents as proof of legal presence in the U.S. if the documents are more than two years old is an impermissible immigration classification that preempts federal law; and 2) whether Defendant's policy of not accepting refugee I-94 documents as proof of legal presence if the documents are more than two years old discriminates against refugees on the basis of their national origin in violation of the Equal Protection Clause of the Fourteenth Amendment. *See* Complaint, Dkt. 1, Exhibit 3 (BMV Driver Manual) (stating policy of not accepting I-94 that is more than two years old as proof of "legal presence" absent an approval notice for an application for permanent residence, Form I-485).

As was the case in *Putnam,* where the class challenged the constitutionality of a state law enforcement policy regarding seizure of vehicles, the named Plaintiffs in this case seek to redress an unconstitutional state policy carried out against themselves and all class members. As such, the named Plaintiffs share common questions of law or fact with the putative class.

Moreover, the common questions are central to the case. A holding that the Defendant's conduct is unconstitutional because it preempts federal law and/or discriminates against a group of refugees on the basis of their national origin would resolve the case for all class members "in one stroke." *Young*, 693 F.3d at 542. Therefore, resolving the common issues will most certainly "advance the litigation." *Sprague*, 133 F.3d at 397.

          iv.   <u>The Claims of the Named Plaintiffs are Typical of the Claims of the Class</u>

The typicality requirement of Rule 23(a)(3) insures that the class representative will adequately represent the members of the class by requiring her claims to be sufficiently similar to the claims and defenses of the putative class members. *Day v. NLO*, 144 F.R.D. 330, 334 (S.D. Ohio 1991). Both named individual plaintiffs here satisfy the typicality requirement.

Plaintiff Gumaa Ibrahim is a refugee from Sudan, lawfully admitted to the United States with an I-94 entry document on October 27, 2015. Form I-94 of Gumaa Ibrahim, Exhibit B; Declaration of Gumaa Ibrahim ("Ibrahim Decl."), Exhibit C at ¶¶ 1-2. He now resides in Dayton, Ohio. *Id.* at ¶ 1. He applied to adjust his status to that of a lawful permanent resident on December 23, 2016, but U.S. Citizenship and Immigration Services has not yet adjudicated his application. *Id.* at ¶¶ 5-6.

Plaintiff Ibrahim was previously issued an Ohio driver's license that expired on January 3, 2018. *Id.* at ¶ 9. He went to a deputy registrar on Third Street in downtown Dayton, Ohio in January 2018 to renew his license and the deputy registrar refused to issue him a license, declining to accept his I-94 to fulfill the BMV requirement to show "legal presence," because his

I-94 was more than two years old, which the deputy registrar characterized as "expired." *Id.* The deputy registrar staff told him to come back when he had received his green card. *Id.* He then went to a second deputy registrar, on Main Street in Clayton, Ohio, and that deputy registrar also refused to issue him a license because his I-94 was more than two years old. *Id.* at ¶ 10.

Plaintiff Badreldin Rahouma is a refugee from Sudan, lawfully admitted to the United States with an I-94 entry document on January 26, 2004. Form I-94 of Badreldin Rahouma, Exhibit D; Declaration of Badreldin Rahouma ("Rahouma Decl."), Exhibit E, at ¶ 1-3. He now resides in Cleveland, Ohio. *Id.* at ¶ 1. He applied to adjust his status to that of a lawful permanent resident on January 30, 2018, but U.S. Citizenship and Immigration Services has not yet adjudicated his application. *Id.* at ¶¶ 6-7.[4]

Plaintiff Rahouma applied for an Ohio driver's license in February 2018 at the Edgecliff Terrace deputy registrar in Cleveland, Ohio. *Id.* at ¶ 10. The deputy registrar refused to issue him a license because his I-94, which he presented to satisfy the BMV's requirement to show "legal presence," was more than two years old. *Id.* at ¶ 11.

The claims of Plaintiffs Ibrahim and Rahouma are typical of those of the class because there is a "sufficient relationship . . . between the injury to the named Plaintiffs and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged

---

[4] Currently, USCIS processing times indicate that the adjudication of an I-485 (application for adjustment of status) in the Cleveland Field Office takes approximately 9 to 27 months. *See* https://egov.uscis.gov/processing-times/. Therefore, even those refugees who apply for adjustment the day they become eligible—one year after admission to the U.S.—may still not receive a decision on their application until they have been in the U.S. for 39 months. Additionally, many refugees struggle to accumulate the required filing fee for the adjustment of status, which is $1,125, as well as the associated medical and legal fees, and there is no fee waiver available to refugees. *See* https://www.uscis.gov/i-912 (Special Instructions re I-485 waiver eligibility).

conduct." *In re Am. Med. Sys. Inc.*, 75 F.3d at 1082 (*quoting Newberg on Class Actions* at 3-76). The commonality requirement overlaps and merges with the typicality requirement. *Young*, 693 F.3d at 542. Like the commonality requirement, "a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *Senter*, 532 F.2d at 525 n.31).

In cases where typicality is satisfied, the proposed class representative's interests are so aligned with the putative class's interests that by pursuing his claim, he advances the class's interests. *Id.*; *see also Beattie v. Century Tel., Inc.*, 511 F.3d 554, 561-562 (6th Cir. 2007) (finding typicality satisfied where the claims of the named Plaintiffs and the class as a whole arose from the same conduct and were premised on the same allegation); *Crawley*, 2009 U.S. Dist. LEXIS 40794, at *38-39, (finding typicality satisfied in a case seeking to prove unlawful termination of Medicaid benefits where the claims of the class representative and the proposed class arose from the same conduct by the defendant, shared the same legal theory, and the plaintiffs and class members suffered an identical harm in that they were not afforded pre-termination eligibility review and hearings). *Putnam*, 169 F.R.D. at 94 (finding typicality satisfied in a challenge to a state statute regarding the seizure of vehicles of persons who have been arrested for a second offense of operating a motor vehicle under the influence of alcohol, because "there was nothing to indicate that the procedures followed in seizing Plaintiff's vehicle and in addressing Plaintiff's claim that she was an innocent owner differed in any way from the procedures that normally are followed under the statute").

Here, Plaintiffs easily meet the typicality requirement because the claims of the named Plaintiffs and the class arise from the same unlawful conduct, namely Defendant's refusal to accept refugees' I-94s that are more than two years old, and there is no indication that

Defendant's written policy is carried out differently as to different class members. Just like named Plaintiffs, all members of the Class have been harmed or will be harmed by Defendant's practices for issuing driver's licenses to refugees who entered the U.S. more than two years ago and have not yet adjusted their status to lawful permanent residence.

In sum, the legal theories underlying the claims of the individual Plaintiffs and the claims of the class—which turn on whether Defendant has violated the Supremacy Clause and the Equal Protection Clause by classifying refugees who arrived in the U.S. more than two years ago differently from those who arrived less than two years ago—are identical.

### v. The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

To demonstrate adequacy of representation, Plaintiffs must show that: (1) the class representative has common interests with the unnamed members of the class; and (2) the representative will vigorously prosecute the interests of the class through qualified counsel. *Young*, 693 F.3d at 543; *Senter v. Gen'l Motors Corp.*, 532 F.2d 511, 522 (6th Cir. 1976). The relationship between the named plaintiffs and members of the putative class must not be antagonistic. *Smith v. Babcock*, 19 F.3d 257, 265 n.13 (6th Cir. 1994). These elements are met in this case.

First, the interests of the named Plaintiffs and the members of the class are entirely coextensive. As described above, the legal claims of the named Plaintiffs arise from the same illegal conduct by Defendants that applies to the entire class. Consequently, the proposed class representatives are sufficiently interested in the outcome of the case to vigorously prosecute the class's claims. The named Plaintiffs seek declaratory and injunctive relief to ensure that Defendants promptly change their policies to ensure that they can obtain driver's licenses and state identification cards which will enable them to fully participate in civic life; transport

13

themselves to work, medical appointments, and other obligations; and support themselves financially. This request does not present conflicts between named Plaintiffs and other class members because the named Plaintiffs lack any interests adverse to the members of the proposed class.

Second, counsel for the named plaintiffs and the proposed class has sufficient experience and expertise to ably represent the proposed class, as well as a track record of vigorously pursuing the interests of their clients. Mark R. Heller has practiced law for more than 40 years, all of it in poverty law and primarily representing immigrants in federal litigation, including numerous class actions and collective actions. Eugenio Mollo, Jr., has 12 years of experience practicing immigration law and litigating on behalf of immigrants in federal court. Emily Brown has experience representing immigrants in a previous class action in the Northern District of Ohio, and Brown and Kathleen Kersh have a combined 9 years of experience practicing immigration law and litigating civil-rights and employment cases in federal district court. *See* Exhibit F, Brown, Heller, Kersh, and Mollo resumes. Plaintiffs' counsels' law firm, Advocates for Basic Legal Equality, Inc., is the preeminent nonprofit law firm in Ohio in litigation involving immigrants' civil rights. Plaintiffs' attorneys will prosecute this action vigorously and competently.

Accordingly, Plaintiffs will fairly and adequately protect the interests of the class in this action, which satisfies the requirements of Rule 23(a)(4).

### B. The Proposed Class Meets the Requirements of Rule 23(b)(2)

Where a proposed class meets the requirements of Rule 23(a), the class may be certified if it satisfies one of the conditions set forth in Rule 23(b). Rule 23(b)(2) permits class certification when "the party opposing the class has acted or refused to act on grounds that apply

generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

Certification under Rule 23(b)(2) is appropriate where "the common claim is susceptible to a single proof and subject to a single injunctive remedy." *Senter*, 532 F.2d at 525. "Rule 23(b)(2) was drafted specifically to facilitate relief in civil rights suits." 8 *Newberg on Class Actions*, § 25:20. In actions primarily seeking injunctive relief, the (b)(2) requirement is "almost automatically satisfied." *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). "When a suit seeks to define the relationship between the defendant(s) and the world at large, (b)(2) certification is appropriate." *Id*. (internal quotation marks and ellipses omitted). "What is important is that the relief sought by the named plaintiffs should benefit the entire class." *Id*. at 59.

In determining whether a class merits certification under Rule 23(b)(2), the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011), held that Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. This class easily meets that standard, as all members of the class seek injunctive and declaratory relief from Defendant's generally applicable custom, policy, or practice of not accepting as proof of legal presence a refugee Form I-94 that is more than two years old. The named Plaintiffs do not contend that they were singled out for unlawful treatment. On the contrary, their treatment is in accordance with an official BMV policy, as is the treatment of other class members. The remedy they seek—declaratory and injunctive relief to force Defendant to cease its policy of refusing to accept refugees' I-94s that are more than two years old—would apply to and benefit all members of the proposed class. An order entered by this Court on any basis holding that the policy violates the Supremacy Clause and/or the Equal

Protection Clause would, by its terms, inure to the benefit of all members of the class. Certification is therefore appropriate under Rule 23(b)(2).

## IV. CONCLUSION

The proposed class is ascertainable and satisfies the requirements of Rule 23(a) and Rule 23(b)(2). Therefore, Plaintiffs respectfully request that this Court enter an order certifying the class and appointing class counsel as set forth fully in the motion above.

Respectfully submitted,

By: */s/ Emily M. Brown*
Emily M. Brown (0092553)
Kathleen C. Kersh (0091198)
Mark R. Heller (0027027)
Eugenio Mollo, Jr. (0081860)

Advocates for Basic Legal Equality, Inc.
130 West Second St., Suite 700E
Dayton, Ohio 45402
937.535.4408 (phone)
937.535.4600 (fax)
ebrown@ablelaw.org
kkersh@ablelaw.org
mheller@ablelaw.org
emollo@ablelaw.org

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Notice of Related Case was filed this 26th day of October, 2018 through the Court's Electronic Filing System and served by certified mail on Defendant Don Petit at the following address:

Don Petit, Registrar
PO Box 16520
Columbus, OH 43216-6250

*s/ Emily M. Brown*

Emily M. Brown (0092553)
Advocates for Basic Legal Equality, Inc.
130 West Second St., Suite 700E
Dayton, Ohio 45402
937.535.4408 (phone)
937.535.4600 (fax)
ebrown@ablelaw.org

*Attorney for Plaintiffs*