**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **COMMUNITY REFUGEE AND** | ) | |
| **IMMIGRATION SERVICES;** | ) | |
| **Gumaa Ismail Yahya IBRAHIM;   and** | ) | |
| **Badreldin RAHOUMA, on behalf of** | ) | |
| **themselves and all others similarly situated,** | ) | |
| | ) | **No. 2:18-cv-1189** |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Chief Judge Sargus** |
| | ) | |
| **Charles NORMAN, Registrar, Ohio Bureau of** | ) | **Magistrate Judge Jolson** |
| **Motor Vehicles, in his official capacity,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS**</u>

For many years Ohio has been a leader in the resettlement of refugees from war-torn

countries across the globe.  As these refugees strive to integrate into American society, they

depend on access to driver's licenses to obtain employment, attend English classes, and provide

transportation for their families.

Individual Plaintiffs Gumaa Ibrahim and Badreldin Rahouma and organizational Plaintiff

Community Refugee and Immigration Services ("CRIS") filed a class-action complaint for

injunctive and declaratory relief against Bureau of Motor Vehicles ("BMV") Registrar Charles

Norman's policy that denies Ohio driver's licenses to individuals who hold a valid refugee

admission document ("Form I-94") but were admitted to the United States as refugees more than

two years ago.

1

Plaintiffs challenge the BMV's policy under both the Supremacy Clause and the Equal Protection Clause of the Fourteenth Amendment. First, Plaintiffs contend that the BMV's policy not to recognize a Form I-94—a federally issued, unexpired lawful presence document—if it is more than two years old is an improper regulation on immigration because it is an immigration classification not authorized or contemplated by federal law. *See* Compl., Doc. 1-1 (redacted paper I-94 document); Doc. 1-2 (redacted automated I-94 document). Second, Plaintiffs challenge Defendant's policy as improper alienage-based discrimination against Plaintiffs and putative class members, because refugees are a suspect class entitled to strict scrutiny, and Defendant has asserted no compelling state interest to justify its policy.

Plaintiffs respectfully ask the Court to deny Defendant's Rule 12(b)(6) motion to dismiss Plaintiffs' causes of action under the Supremacy Clause and the Equal Protection Clause of the Fourteenth Amendment.

## I.      FACTUAL ALLEGATIONS

Plaintiffs Rahouma and Ibrahim are refugees who were lawfully admitted to the United States in refugee status and remain in that status today. Both Plaintiffs were denied Ohio driver's licenses because of the BMV policy that prohibits refugees from obtaining a driver's license if they present only a refugee I-94 admission document as proof of lawful status when that document was issued over two years ago. Complaint, Doc. 1, at ¶¶ 7-8; Statement of Stipulated Facts, Doc. 18 at ¶ 8.

A refugee is "[a]ny person who is outside any country of such person's nationality…who is unable or unwilling to return to, and is unable and unwilling to avail himself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §

1101(a)(42), INA § 101(a)(42). Refugees apply for and are granted refugee status abroad. An approval of a refugee application authorizes U.S. Customs and Border Protection to admit an applicant as a refugee upon arrival. 8 C.F.R. § 207.4. Upon entry and admission into the United States, refugees are issued an I-94 document that serves as proof of their immigration status. This I-94 document does not have a date of expiration, but is rather marked "D/S," stating that it is valid for the "Duration of Status." *See* Doc. 2-2 (Ibrahim I-94 document) and Doc. 2-4 (Rahouma I-94 entry document).  Plaintiff Ibrahim was lawfully admitted to the U.S. as a refugee from Sudan on October 27, 2015 and in early 2018, three Deputy Registrars[1] in the Dayton area denied his application for a driver's license on the ground that his I-94 was more than two years old.  Compl., Doc. 1, ¶ 7.  Plaintiff Rahouma was lawfully admitted to the U.S. on January 26, 2004 and a BMV Deputy Registrar in Cleveland denied his application for a driver's license in February 2018. *Id.* at ¶ 8.

Organizational Plaintiff CRIS is a refugee resettlement agency that resettles and serves refugees and immigrants in Central Ohio. CRIS assists refugees in many aspects of resettlement, including securing housing and basic necessities; applying for Social Security cards, public assistance, and driver's licenses; enrolling children in school; accessing health screenings; and providing cultural orientation. Compl., Doc. 1 at ¶ 55.  CRIS's refugee constituents first began informing the organization's staff attorneys that they were being denied driver's licenses around 2016. *Id.* at ¶ 59.  Specifically, clients told the attorneys that the BMV Deputy Registrars would not accept their refugee I-94 documents as proof of lawful status when the I-94 was issued over

---

[1] The BMV has the exclusive authority to issue driver's licenses and state identification cards in Ohio, but the BMV has signed contracts with 186 Deputy Registrars, as independent contractors, which provide services throughout Ohio's 88 counties, including issuing driver's licenses and state identification cards. *See* Ohio Rev. Code § 4507.01(B); Statement of Stipulated Facts, Doc. 18 ¶¶ 2-3.

two years ago. *Id*. As a result of these driver's license denials, CRIS attorneys have had to divert resources from the organization's other priorities, spending approximately 200 hours advocating for their clients with the BMV, including through BMV License Control. *Id*. at ¶¶ 60-61. Caseworkers and other CRIS staff have also had to divert resources by devoting time to accompany refugee clients to the BMV Deputy Registrars to advocate for their clients who were denied driver's licenses pursuant to this BMV policy. *Id*. at ¶ 63.

## II.     RULE 12(B)(6) STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Keys v. Humana*, 684 F.3d 605, 608 (6th Cir. 2012).  In determining whether to grant a motion to dismiss under Federal Rule 12(b)(6), courts consider whether the complaint includes sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court must interpret the complaint in the light most favorably to the plaintiff, accepting factual allegations as true, and giving the plaintiff the benefit of reasonable inferences.  *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).  To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III.     ARGUMENT

### A.  Plaintiffs have adequately stated a claim that the BMV's refugee I-94 policy violates the Supremacy Clause because it is an improper regulation on immigration and makes an immigration classification not authorized or contemplated by federal law.

Plaintiffs' complaint adequately states a claim for injunctive relief pursuant to the court's equitable authority to enjoin a state action that violates the Supremacy Clause.  *See Armstrong v.*

*Exceptional Child Center, Inc.*, 135 S. Ct. 1378, 1384 (2015) ("[We] have long held that federal courts may in some circumstances grant injunctive relief against state officers who are violating, or planning to violate, federal law."); *Exodus Refugee Immigration, Inc. v. Pence*, 165 F.Supp.3d 718, 728 (S.D. Ind. 2016), *aff'd*, 838 F.3d 902, 904 (7th Cir. 2016) (holding that after *Armstrong*, courts may exercise equitable power to enjoin state action that is preempted by federal immigration law).

Defendant has stipulated that BMV policy denies driver's licenses to refugees who submit I-94 refugee admission documents that are more than two years old as sole proof of their lawful immigration status, and grants driver's licenses to refugees who present those same documents if they are less than two years old. Statement of Stipulated Facts, Doc. 18 ¶¶ 8-9. Defendant's policy as outlined in the Deputy Registrar Manual, submitted in support of the Statement of Stipulated Facts, states that a driver's license applicant presenting an "I-94 with 'indefinite' Refugee stamp over 2 years old" must also present "an I-797 with case type I-485." Deputy Registrar Procedure Manual, Doc 18-1 at 33, PageID 231. However, the same policy states that a driver's license applicant presenting an "I-94 with 'indefinite' Refugee stamp within 2 years old…does not need to present any additional legal presence documents." *Id*. The different treatment required for two different groups of refugees constitutes a subclassification of immigration status that is preempted by federal law.

Defendant's argument in his motion to dismiss—that the BMV policy on refugee I-94 expiration does not create a subclassification, "but merely requires documentation from applicants to prove that they have obtained the immigration status they claim"—only further supports Plaintiffs' argument that Defendant's policy is designed to make a determination on the

validity of an applicant's immigration status documents, and as such, is preempted by federal law. Mot. to Dismiss, Doc. 9 at 10.

The "[p]ower to regulate immigration is unquestionably exclusively a federal power." *De Canas v. Bica*, 424 U.S. 351, 354 (1976).  The BMV's refusal to accept refugee I-94s issued more than two years ago as proof of valid immigration status in the United States is in clear violation of federal immigration law, which does not strip refugees of refugee status nor render them unlawfully present in the United States if they do not apply for adjustment of status.[2] Plainly stated, refugees remain refugees for immigration purposes on Day One in the United States, Day 366 (one year and one day) in the United States, Day 731 (two years and one day) in the United States, and so on.  The state's attempt to declare refugees to be no longer lawfully present if their I-94 is more than two years old creates immigration classifications independent of federal law and directs state officials to act as *de facto* immigration agents and judges. *See Arizona Dream Act Coalition* v. *Brewer*, 855 F.3d 957, 973-74 (9th Cir. 2017) (affirming a permanent injunction of Arizona's policy on driver's licenses because that policy distinguished between non-citizens based on the state's "*own* definition of 'authorized presence,' one that

---

[2] INA § 209(a) provides that an alien admitted as a refugee whose "admission has not been terminated by the Secretary of Homeland Security or the Attorney General pursuant to such regulations as the Secretary of Homeland Security or the attorney General may prescribe," after one year of residence in the United States, "shall" adjust their status and "be regarded as lawfully admitted to the United States for permanent residence as of the date of such alien's arrival into the United States." This provision of law does not support Defendant's argument that refugees lose their refugee status after two years if they do not apply to adjust their status to lawful permanent residency. No part of this statute—or any other federal statute or regulation—strips refugees of immigration status because of a time limitation on such status. If anything, the language of the statute contemplates that a refugee would remain in refugee status and therefore be eligible to adjust to lawful permanent residency absent termination by the Attorney General or Secretary of Homeland Security through federal regulation. As a result, this statute does not justify Defendant's policy to require refugees presenting I-94s over two years old to provide additional lawful presence documentation, but rather further establishes it is contrary to Congressional intent and therefore preempted.

neither mirrors nor borrows from the federal immigration classification scheme"). Similar to the reasoning in *Arizona Dream Act Coalition*, when a refugee applies for a driver's license and presents an I-94 issued more than two years ago, the BMV Deputy Registrar employee is required by BMV policy to ask for additional proof of status in the form of U.S. Citizenship and Immigration Services ("USCIS") documents. In so doing, he or she is making a determination that the I-94 the refugee submitted is no longer proof of refugee status, a clear violation of Congress's intent for the I-94 to remain valid for the duration of status, as noted specifically on an I-94 document. *See* Doc. 1-1 (redacted paper I-94) and Doc. 1-2 (redacted automated I-94).

In separating refugees into two categories—those that have I-94s that are more than two years old and those who have I-94s that are less than two years old—the BMV policy impermissibly encroaches on the federal government's exclusive authority to make immigration classifications and determine immigration status. Doc. 1 at ¶¶ 10-23; *Plyler v. Doe*, 457 U.S. 202, 225 (1982) ("The States enjoy no power with respect to the classification of aliens…This power is 'committed to the political branches of the Federal government.'" (quoting *Mathews v. Diaz*, 426 U.S. 67, 81 (1976)).

While the Sixth Circuit has never decided a Supremacy Clause challenge to a state's immigration classifications, numerous other federal courts of appeal and the Supreme Court have held that "state regulation not congressionally sanctioned that discriminates against aliens lawfully admitted to the country is impermissible if it imposes additional burdens not contemplated by Congress." *De Canas*, 424 U.S. at 358, n.6 (citing cases); *Toll v. Moreno*, 458 U.S. 1, 17 (1982) (striking down state law that permitted citizens and permanent residents to get in-state tuition rates at state universities but prohibited a certain class of temporary visa holders from receiving in-state tuition); *Villas at Parkside Partners v. City of Farmers Branch*, 726 F.3d

524, 536–37 (5th Cir. 2013) (en banc) (city ordinance "allow[ing] state courts to assess the legality of a non-citizen's presence" conflicted with federal immigration law and was therefore preempted, even though the ordinance required that assessment to be made "under federal law").

Defendant's reliance on the REAL ID Act to substantiate his argument is misguided, and Plaintiffs' contention that the BMV's policy is preempted by federal law is actually supported by the language of the REAL ID Act. *See* Mot. to Dismiss, Doc. 9 at 11. As Defendant notes in his motion to dismiss, the REAL ID Act enumerates nine categories of federally-created "lawful" immigration statuses under which individuals are entitled to REAL ID-compliant licenses. One of those categories includes an alien who "has an approved application for asylum in the United States or has entered into the United States in refugee status." Pub. L. No. 109-13-202(c)(2)(B)(iv); 119 Stat. 313; (49 U.S.C. § 30301 codified as note); 6 C.F.R. § 37.3 (2016). It is crucial to note that Congress made no distinction in this category between refugees admitted before a certain period of time and refugees admitted more recently. This reflects the federal government's clear intent to convey that 1) refugees do not lose their refugee status simply because they have been in the United States for a certain period of time, and 2) there is no subclassification in federal law between refugees admitted more than two years ago and refugees admitted within the past two years.

Defendant's requirement that refugees presenting I-94s that are more than two years old also submit proof of an application to USCIS for lawful permanent residence in order to prove lawful status is similarly preempted by federal law. *See* Deputy Registrar Procedure Manual, Doc. 18-1 at 33, PageID 231 (BMV policy stating that an I-94 with "indefinite" Refugee stamp "within 2 years old" does not require the applicant to present any additional legal presence documents, but an I-94 with "'indefinite' Refugee stamp over 2 years old" requires an applicant

to submit an "I-797 with case type I-485"). In support of his argument to the contrary, Defendant cites to the REAL ID Act's requirement that a temporary ID card or driver's license is "valid only during the period of the applicant's authorized stay in the United States or, if there is no definite end to the period of authorized stay, a period of one year." Mot. to Dismiss, Doc. 9 at 12; Pub. L. No. 109-13, 202(c)(2)(C)(ii); 119 Stat. 313; (49 U.S.C. § 30301 codified at note); 6 C.F.R. § 37.3. However, this provision speaks to the length of time an individual driver's license may be valid before it must be renewed, not to the length of time a refugee remains in valid refugee status in the United States. While refugee I-94s are marked "D/S," indicating that a refugee is present for the duration of his or her status as a refugee, the federal government does not strip the refugees of their status after one year. On the contrary, if that were the federal government's intention, it would do so by creating an expiration date for the I-94 after one year of entry, as is its practice in other immigration classifications.[3]

Plaintiffs allege that BMV policy creates a state definition of "lawful status," with no analogue in federal law, that requires Plaintiffs and other similarly-situated individuals to prove to the BMV's satisfaction that they are lawfully present by presenting not only their refugee I-94 document but also, if said document is over two years old, by presenting Form I-797 showing approval of their I-485 application to adjust status. Such allegations are sufficient to state a claim that the BMV's policy is preempted because it creates immigration classifications independent of and contrary to federal law.

---

[3]The Form I-94 for many other immigration classifications includes an expiration date. *See, e.g.*, 8 C.F.R. § 214.2(b)(1) (showing that holders of B-1/B-2 tourist visas "may be admitted for not more than one year and may be granted extensions of temporary stay in increments of not more than six months each"; 8 C.F.R. § 214.2(h)(2)(i)(H)(3)(i) (indicating that the date that an H-1B temporary worker's status will expire is noted on the Form I-94).

Finally, Defendant inaccurately claims that Plaintiffs allege the federal government preempts the states' police power to regulate the issuance of driver's licenses within their boundaries. Mot. to Dismiss, Doc. 9 at 11. However, Defendant misstates the allegations at the heart of Plaintiffs' complaint. Plaintiffs do not challenge the state's authority to issue driver's licenses, nor its general ability to regulate licenses under its police power. Rather, Plaintiffs allege that the state's policy impermissibly seeks to regulate immigration status by determining that refugees presenting I-94 documents over two years old have not presented proof of valid immigration status.

The Supreme Court has repeatedly held that laws falling under areas of traditional "state concern," such as police powers, may still be preempted where the underlying issue is "uniquely federal" in nature. *See Buckman Co. v. Plaintiffs' Legal Cmte.*, 531 U.S. 341, 347 (2001) (quoting *United Technologies Corp.*, 487 U.S. 500, 504-505 (1988)). A state may not use its authority to regulate areas of traditional state concern where the state interferes with Congress's "integrated scheme of regulation." *Wisconsin Dep't of Industry, Labor & Human Relations v. Gould, Inc.*, 475 U.S. 282, 288-89 (1986) (finding states are prohibited from setting forth standards of conduct inconsistent with the substantive requirements of the NLRA and from providing their own regulatory or judicial remedies for conduct prohibited by the NLRA).

The Supreme Court and many circuit courts have found that state and local practices enacted in areas of traditional state concern like rental ordinances, employment, and policing are still preempted by federal law where they interfere with the federal government's exclusive authority to regulate immigration status. *See, e.g.*, *Arizona v. U.S.*, 567 U.S. 387, 403, 406-07, 409, 415 (2012) (finding that three sections of Arizona's S.B. 1070 were preempted by federal law because they infringed on Congress's exclusive right to regulate the field of alien

registration, sanctions on aliens employed without work authorization, and the federal system created to allow the arrest of aliens in the United States unlawfully); *United States v. South Carolina*, 720 F.3d 518, 530 (4th Cir. 2013) (finding a state law that sought to criminalize unlawful presence was preempted because it stood as an obstacle to the execution of the federal removal system and interfered with the discretion entrusted to federal immigration officials); *Lozano v. City of Hazelton*, 724 F.3d 297, 317 (3d Cir. 2013) (finding city ordinance which barred aliens from renting housing constituted an impermissible regulation of immigration law); *United States v. Alabama*, 691 F.3d 1269, 1296 (11th Cir. 2012) (declining to apply the presumption against preemption to a state statute regulating contracts because "the thrust [of the statute] is to impinge on an area of core federal concern"—immigration law); *Ga. Latino All. For Human Rights v. Governor of Georgia*, 691 F.3d 1250, 1265 n.11 (11th Cir. 2012) ("[L]egislation in a field where states traditionally have power does not defeat a claim of federal preemption.")

The presumption against preemption of state laws can also be overcome when Congress enacts its own specific laws to the contrary. Mot. to Dismiss, Doc. 9 at 10. For instance, in *Arizona v. U.S.*, the Supreme Court struck down a provision of the state statute that criminalized unauthorized employment by immigrants. The Court found Congress had expressly spoken to the issue of unauthorized employment when it enacted the Immigration Reform and Control Act of 1986 as a "comprehensive framework for 'combatting the employment of illegal aliens'" and thus the state's attempt to regulate the same area of unauthorized employment was preempted. 567 U.S. at 404 (quoting *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 147 (2002)). Similarly, Defendant's policy not to accept refugee I-94 documents issued over two years ago is preempted by federal law because Congress has similarly addressed the issue of whether refugee

status expires in the federal statutory and regulatory scheme. Section 207(c)(4) of the Immigration and Nationality Act states that the Attorney General has the exclusive right to terminate immigration status. Section 209(a) of the Act states that refugees are also eligible to reside permanently in the United States as lawful permanent residents and does not state that refugee status will be revoked if an individual decides not to pursue this application. Defendant's policy that refugee I-94 documents are invalid for proof of lawful presence after two years, when federal law expressly states to the contrary, is an impermissible regulation of immigration status. Plaintiffs have adequately pleaded a claim for equitable relief based on federal preemption.

> **B.  Plaintiffs have adequately stated a claim under the Equal Protection Clause that the BMV's policy impermissibly targets a suspect class of refugees and the state has no compelling interest in the policy.**

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike" under the law. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  If a state does not burden a fundamental right or target a suspect classification, it will withstand constitutional scrutiny so long as it bears a rational relationship to a legitimate state interest.[4]  *Vacco v. Quill*, 117 S.Ct. 2293, 2297 (1997). However, if a state law or policy makes a classification based on race, national origin, or alienage, it violates the Equal Protection Clause unless the state can demonstrate that the policy is "necessary to further a compelling governmental interest" and "narrowly tailored to that end." *Fisher v. Univ. of Tex. at Austin*, 133 S. Ct. 2411, 2422 (2013) (internal quotations omitted).

Plaintiffs' complaint adequately alleges discrimination on the basis of alienage. Compl., Doc. 1 at ¶¶ 93-102. BMV policy requires refugees with I-94 documents issued two or more

---

[4] Contrary to Defendant's assertion, Plaintiffs do not allege that access to a driver's license is a fundamental right or that the denial of a driver's license infringes on Plaintiffs' right to travel. *See* Mot. to Dismiss, Doc. 9 at 8-9.

years ago to provide additional documentation (a Form I-797 approval notice for their adjustment of status application) but does not impose the same requirement on the other eight categories of non-citizens—including recently admitted refugees—who likewise have "lawful status" under the REAL ID Act. That policy constitutes discrimination on the basis of alienage, for which there is no compelling or adequate justification. *Id.* at ¶¶ 13-17.

The Supreme Court has held that "[a]liens as a class are a prime example of a 'discrete and insular' minority," and that therefore state classifications based on alienage are "inherently suspect and subject to close judicial scrutiny" under the Equal Protection Clause.[5] *Graham v. Richardson*, 403 U.S. 365, 372 (1971) (internal citation omitted); *see also Dandamudi v. Tisch*, 686 F.3d 66, 72 (2d Cir. 2012) ("[T]he Supreme Court has repeatedly affirmed the general principle that alienage is a suspect classification."). A challenged policy need not discriminate against <u>all</u> aliens in order to be considered a classification on the basis of alienage. *Nyquist v. Mauclet*, 432 U.S. 1, 9 (1977). In *Nyquist*, the Supreme Court held unconstitutional a college scholarship program requirement that limited awards only to U.S. citizens, refugees, or those who intended to seek U.S. citizenship when eligible. *Id.* The Court noted that "[t]he fact that the [challenged] statute is not an absolute bar [against all aliens] does not mean that it does not discriminate against the class." *Id.* at 9. Instead, the Court found, "[t]he important points are that [the challenged statute] is directed at aliens and that only aliens are harmed by it." *Id.* Here, the BMV's policy imposes additional requirements on a certain group of aliens—refugees who have been in the United States for more than two years and have not yet adjusted status to

---

[5] The Supreme Court has subjected *federal* classifications based on alienage (which are not at issue in this case) to less stringent review. *Mathews v. Diaz*, 426 U.S. 67, 84-85 (1976) (noting that a classification based on alienage is "a routine and normally legitimate part" of the federal government's business, whereas a state would have "no apparent justification" to draw comparable distinctions).

lawful permanent residence—who are similarly situated to other categories of individuals, including citizens, lawful permanent residents, and other refugees, whom the REAL ID Act treats as having "lawful status" for the purpose of eligibility for a driver's license. Pub. L. No. 109-13, § 202(c)(2)(B).

Defendant contends that the Court should apply rational basis review to Plaintiffs' equal-protection claim but his reliance on *LULAC v. Bredesen*, 500 F.3d 523 (6th Cir. 2007), is misplaced. In *LULAC*, the Sixth Circuit found that strict scrutiny did not apply to a class of "temporary nonresident aliens"[6] but relied heavily on the fact that the class at issue did not consist of aliens "entitled to reside permanently in the United States." *Id.* at 533. In fact, the Sixth Circuit defined "lawful temporary resident" aliens as those "whose authorized presence is tied to a specific purpose or defined period of time." *Id.* at 537. Unlike the class members in *LULAC*, refugees' presence is *not* tied to a specific purpose (such as employment) or defined period of time. Refugees are entitled to reside permanently in the United States under INA § 209, which provides for their admission as lawful permanent residents one year after admission as refugees. Additionally, once a refugee does adjust status to lawful permanent residence, the date of lawful permanent residence is backdated to their original entry as a refugee. 8 C.F.R. § 209.1(e). Classes of temporary resident aliens and undocumented immigrants do not enjoy this backdating privilege if they are able to adjust status, which indicates Congress's clear intent for

---

[6] The state repeatedly classifies refugees as "temporary residents" for the purpose of distinguishing between renewable or nonrenewable Ohio driver's license eligibility. However, Defendant's improperly imports this driver's license classification to the immigration context. Mot. to Dismiss, Doc. 9 at 8. Refugees are not considered "temporary" immigrants (properly classified as "nonimmigrants" under the Immigration and Nationality Act) under federal law. Nonimmigrant categories—those who do not have a path to lawful permanent residency and citizenship—are defined in section 101(a)(15) of the Immigration and Nationality Act. 8 U.S.C. § 1101(a)(15). Refugees, by contrast, are separately defined in INA § 101(a)(42). 8 U.S.C. § 1101(a)(42).

refugees to reside permanently in the United States, unlike nonimmigrants and temporary residents.  *Compare* 8 C.F.R. § 209.1(e) *with, e.g.*, 8 C.F.R. §§ 245.24(f)(1); 245.23(h); 245a.3(m).

The Sixth Circuit establishes a framework in *LULAC* for determining whether a class of aliens are akin to U.S. citizens for the purpose of establishing a suspect class, and refugees clearly qualify as a suspect class under that framework. 500 F.3d at 533.  Drawing on the Fifth Circuit's decision in *LeClerc v. Webb*, 419 F.3d 405 (5th Cir. 2005), which specifically differentiated between nonimmigrant and permanent resident classifications in federal law, the Sixth Circuit found that permanent resident aliens are "virtual citizens" who are "legally entrenched in society" but who lack the ability to participate in the political process. *LULAC*, 500 F.3d at 533 (quoting *LeClerc*, 419 F.3d at 417). Permanent resident aliens are "similarly situated" to citizens "in economic, social, and civic conditions as well." *Id.* By contrast, temporary resident aliens "are subject to strict employment restrictions, incur differential tax treatment, and may be denied federal welfare benefits." *Id*. (quoting *LeClerc*, 419 F.3d at 418-19). Based on this analysis, refugees are like lawful permanent residents in that they are "similarly situated" to citizens. Refugees are able to participate in employment with no restrictions, and their I-94 serves as proof of employment authorization, unlike temporary residents who require an Employment Authorization Document to work. 8 C.F.R. § 274a.12(a)(3). Refugees incur no differential tax treatment and are eligible for federal public benefits programs. 8 U.S.C. § 1612(a)(2)(A). Thus, by the Sixth Circuit's very own criteria, refugees are not temporary resident aliens, but a suspect class deserving of strict scrutiny. Moreover, the Seventh Circuit has directly addressed the level of scrutiny to apply to a class of

refugees and found that strict scrutiny applies. *Exodus Refugee Immigration, Inc. v. Pence*, 838 F.3d 902, 904 (7th Cir. 2016) (class of Syrian refugees).

For all the reasons above, this Court should apply strict scrutiny, not rational basis review, to Plaintiffs' Equal Protection Clause claim because refugees are a suspect class. Defendant has not made an argument that it has a compelling state interest in requiring refugees to present additional documents to obtain a driver's license after two years in the United States and therefore, Defendant's policy violates the Equal Protection Clause.

Moreover, even if the Court applied the less stringent standard of rational basis review to Plaintiffs' equal-protection claim, Defendant's policy does not bear a "rational relation to some legitimate end." *Vacco*, 117 S.Ct. at 2297.  Defendant's purported state interest falls short of even this standard, which, although deferential, is "not a toothless one."  *Mathews v. Lucas*, 427 U.S. 495, 510 (1976).

The Registrar contends that he has a legitimate state interest in verifying the identification and legal status of applicants for a driver's license.  Mot. to Dismiss, Doc. 9 at 9. Specifically, he argues that the REAL ID Act requires states to verify an applicant's legal status in order to issue a REAL ID-compliant license.  As previously stated, the REAL ID Act enumerates nine categories of federally-created "lawful" immigration statuses under which individuals are entitled to REAL ID-compliant licenses, one of which is an alien who "has an approved application for asylum in the United States or has entered into the United States in refugee status." Pub. L. No. 109-13-202(c)(2)(B)(iv); 119 Stat. 313; (49 U.S.C. § 30301 codified as note); 6 C.F.R. § 37.3 (2016).  The REAL ID Act makes no distinction in this category between refugees admitted before a certain period of time and refugees admitted more recently. This reflects the federal government's clear intent to convey that 1) refugees do not lose their

refugee status simply because they have been in the United States for a certain period of time, and 2) there is no subclassification in federal law between refugees admitted more than two years ago and refugees admitted within the past two years.  Nor does the REAL ID Act or any other federal law suggest than an I-94 that is more than two years old cannot be used for identification purposes. Therefore, Defendant's refugee I-94 policy does not in any way ensure compliance with REAL ID, which does not remotely attempt to classify refugees based on whether they entered the U.S. more or less than two years ago.  The policy is thus unrelated to any legitimate state interest.

Moreover, as Defendant acknowledges in his motion to dismiss, the Ohio Administrative Code permits the Registrar to require USCIS documents to be verified through the federal government's systematic alien verification entitlement ("SAVE") database in order to verify legal status, and Defendant acknowledges the Registrar does in fact verify documents through SAVE, suggesting that it does not in fact need additional documentation from refugees who have been in the U.S. for longer than two years.  Ohio Adm. Code § 4501:1-1-21)(G)(6); Statement of Stipulated Facts, Doc. 18 at ¶ 8.  Accordingly, the policy is unrelated to any legitimate state interest.

### C. Individual Plaintiffs were denied driver's licenses after presenting Form I-797C, not Form I-797, and it was Defendant's policy, not Deputy Registrar error, that prevented them from receiving licenses; other Class Members and Organizational Plaintiff still face harm regardless of any potential resolution of Individual Plaintiffs' license applications.

Defendant erroneously states in Section IV(A) of his motion to dismiss that named Plaintiffs Rahouma and Ibrahim are eligible for driver's licenses under BMV policy and therefore that Plaintiffs have failed to state a claim on which relief can be granted.  BMV policy requires that refugees presenting an "I-94 with 'indefinite' Refugee stamp over 2 years old" must

also present "an I-797 with case type I-485," which BMV policy mischaracterizes as a "receipt notice." Deputy Registrar Procedure Manual, Doc. 18-1 at 33, PageID 231. Defendant then states that if Plaintiff Rahouma and Plaintiff Ibrahim, both of whom have applied to adjust their status to lawful permanent residence but whose cases have not yet been adjudicated by USCIS, presented such notices to a deputy registrar, along with I-94s and other required documentation, they would be eligible for a driver's license. Defendant insinuates that Plaintiffs presented forms I-797 to their local Deputy Registrars and were erroneously denied licenses not because of BMV policy, but because of Deputy Registrar error.

Both the BMV policy and the Registrar's motion to dismiss make a critical misstatement on the names and functions of different USCIS Forms. An I-797 notice, which the BMV requires a refugee to present if also presenting an I-94 that is over two years old, is *not* a receipt notice, but rather an approval notice for a given application. *See* USCIS, Form I-797: Types and Functions, *available at https://www.uscis.gov/i-797-info*; *see also* USCIS, Form I-797C: Notices of Action, *available at https://www.uscis.gov/forms/form-i-797c-notice-action*. By requiring that a refugee presenting an I-94 over two years old also present Form I-797 for an I-485 application to adjust status to lawful permanent residence, the BMV is effectively requiring that the refugee present an approval notice, not a receipt notice for their green card application. In other words, BMV policy requires a green card application to have actually been <u>approved</u>, not just filed. However, Defendant's briefing suggests that it does not understand the policy. Rahouma and Ibrahim did not present I-797s, because they do not have them (their cases have not been adjudicated). Instead, both Plaintiffs presented an I-797C, which is a receipt notice and which the BMV deputy registrars did not accept. The deputy registrars' failure to accept Form I-797C in conjunction with a refugee I-94 that is older than two years was in complete conformity with

18

BMV policy—the policy that Plaintiffs allege is unconstitutional. Thus, it was BMV policy itself, not the error of the Deputy Registrars, that caused Plaintiffs Ibrahim and Rahouma's license denials.[7]

Defendant's argument that Plaintiffs fail to state a claim on which relief can be granted because Plaintiffs Ibrahim and Rahouma are actually eligible for driver's licenses also ignores organizational Plaintiff Community Refugee and Immigration Service's role in the case. CRIS's constituents have been denied driver's licenses—pursuant to BMV policy—because their I-94 entry dates were more than two years old. Compl., Doc. 1 at ¶¶ 6, 59, and 61. Some of these constituents have not yet applied to adjust status and, therefore, even if Defendant's policy did allow for the issuance of driver's licenses to refugees who present a Form I-797C (which it does not), these refugees would be unable to obtain driver's licenses. As stated at length in the complaint, CRIS has diverted valuable resources to serving clients affected by this policy, including clients who cannot present Form I-797 or Form I-797C because they have never filed their adjustment of status application. Compl., Doc. 1 at ¶¶ 60-63. Thus, CRIS also states a claim for relief regardless of whether the BMV alleges that in practice it sometimes accepts Form I-797C and not only the Form I-797 that is required by the plain language of the policy.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs ask the Court to deny Defendant's motion to dismiss in its entirety.

Respectfully submitted,

---

[7] After the complaint was filed, Defendant approached Plaintiffs' counsel about working with Plaintiffs to instruct Deputy Registrars to issue licenses to the two named Plaintiffs, and Plaintiffs are in the process of doing so. However, as already noted, on its face the BMV policy nevertheless precludes Ibrahim and Rahouma as well as other class members from obtaining licenses.

By:    */s/ Emily M. Brown*
       Emily M. Brown (0092553)
       Kathleen C. Kersh (0091198)
       Mark R. Heller (0027027)
       Eugenio Mollo, Jr. (0081860)
       Advocates for Basic Legal Equality, Inc.
       130 West Second St., Suite 700E
       Dayton, Ohio 45402
       937.535.4408  (phone)
       937.535.4600  (fax)
       ebrown@ablelaw.org
       kkersh@ablelaw.org
       mheller@ablelaw.org
       emollo@ablelaw.org

       Caroline Gentry (0066138)
       Ana P. Crawford (0090581
       David P. Shouvlin (0066154)
       Porter Wright Morris & Arthur LLP
       One South Main Street, Suite 1600
       Dayton, OH 45402
       937-449-6748 (phone)
       937-449-6820 (fax)
       cgentry@porterwright..com
       acrawford@porterwright.com
       dshouvlin@porterwright.com

       *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss was filed March 21, 2019 through the Court's Electronic Filing System. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's systems.

*s/ Emily M. Brown*

Emily M. Brown (0092553)
Advocates for Basic Legal Equality, Inc.
130 West Second St., Suite 700E
Dayton, Ohio 45402
937.535.4408 (phone)
937.535.4600 (fax)
ebrown@ablelaw.org

*Attorney for Plaintiffs*
