# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **COMMUNITY REFUGEE AND IMMIGRATION SERVICES,** | : : : | Case No. 2:18-Cv-01189 |
| Plaintiff, | : : | Judge Edmund A. Sargus, Jr. |
| vs. | : : | Magistrate Kimberly A. Jolson |
| **CHARLES NORMAN, REGISTRAR, OHIO BUREAU OF MOTOR VEHICLES, in his official capacity,** | : : : : | |
| Defendant. | : | |

## DEFENDANT CHARLES NORMAN'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS

Plaintiffs Gumaa Ibrahim ("Ibrahim"), Badreldin Rahouma ("Rahouma"), and Community Refugee and Immigration Services ("CRIS") filed the complaint in this matter on October 5, 2018. Defendant Charles Norman ("Norman"), Registrar of the Ohio Bureau of Motor Vehicles ("BMV"), filed a Motion to Dismiss pursuant to Civ. R. 12(b)(6) on December 4, 2018. Plaintiffs filed their response to Defendant's Motion to Dismiss on March 21, 2019. Defendant Norman hereby provides this Reply in Support of his Motion to Dismiss.

Defendant Norman reiterates that Plaintiffs' claims do not state a violation of either the Supremacy Clause or the Equal Protection Clause of the United States Constitution. Thus the Court should dismiss Plaintiffs' claims.

**A. Defendant Norman and the BMV's requirement that refugees must show proof of continued compliance with U.S. immigration laws in well within the state's police powers and is not a violation of the Supremacy Clause of the United States Constitution.**

In order for Plaintiffs to argue that Registrar Norman's policy violates the Supremacy Clause, they had to first completely misstate the Registrar's position. Plaintiffs allege that the Registrar is arguing that refugees lose their refugee status after two years if they fail to apply for permanent residence status within two years after their admission into the U.S. Doc. 23, p. 6. Based upon this improper characterization, Plaintiffs then claim that the Registrar is, therefore attempting to declare that, after two years, the refugees are no longer lawfully present in the U.S. if they have not yet applied for permanent resident status. *Id*. At no point in this litigation has the Registrar argued that the refugees lose their immigration status after two years. The Registrar and BMV are simply requiring proof from refugees of their continued compliance with U.S immigration laws in order to issue them a driver's license that is compliant with the REAL ID Act.

Pursuant to INA § 209(a), any alien admitted to the United States as a refugee, whose admission has not been terminated by the Secretary of Homeland Security or the Attorney General, who has resided in the United States for at least one year, and who has not acquired permanent resident status, "shall… return or be returned to the custody of the Department of Homeland Security for inspection and examination for admission to the United States…" Thus, refugees are required to apply for permanent residence status one year after they have been admitted into the United States. The BMV gives refugees an additional year to apply for permanent resident status before requiring proof that the refugee has complied with federal law. Defendant, Norman is not creating an additional immigration classification, but merely requiring proof of compliance with federal regulations governing an already existing classification.

2

The proper inquiry in this case is whether the Supremacy Clause prohibits the BMV from requiring documentation proving legal presence in the United States in order to issue a driver's license. The Defendant and BMV are not acting as "de facto" immigration agents and judges, but are simply seeking verification that those Plaintiffs are authorized to stay in the United States and have the proper documentation to support that status. The BMV is not initiating deportation proceedings nor seeking deportation from another agency; neither is the Registrar or BMV rejecting an immigration classification created by the federal government. Rather, the BMV is requiring applicants for driver's licenses to prove that they are complying with the requirement set by USCIS that they apply for permanent residence status after one year. *See* 8 C.F.R. § 209.1(a). This requirement by the Registrar and the BMV is designed to insure compliance with the REAL ID Act, is not preempted by federal laws or regulations, and is within the Registrar's police powers.

Plaintiffs rely on the case of *Arizona Dream Act Coalition v. Brewer*, 855 F.3d 957 in support of their argument that the Registrar's requirement that a refugee provide a Form I-797 receipt notice (a.k.a. I-797C) if they have resided in the U.S. for more than 2 years violates the Supremacy Clause of the United States Constitution. This reliance is misplaced. The challenged law in the *Arizona Dream Act* case was the result of an executive order issued by Arizona's Governor "Re-Affirming Intent of Arizona Law in Response to the Federal Government's Deferred Action Program," which stated that "the Deferred Action Program does not and cannot confer lawful or authorized status or presence upon the unlawful alien applicants." *Arizona Dream Act, Supra* at 964. Arizona specifically denied Employment Authorization Documents ("EADs") submitted by Deferred Action for Childhood Arrivals ("DACA") recipients as proof of lawful presence while accepting EADs from all other non-citizens. *Id.*

3

Here, the Registrar and the BMV are not claiming that refugees do not have lawful status. They are not even claiming that refugees who have resided in the U.S. without applying for permanent status do not have lawful status.  The Registrar and BMV are merely recognizing that there is a requirement imposed by the federal government that refugees apply for permanent status after one year of residence within the U.S. and are requiring proof of compliance with that regulation before issuing a driver's license.  The Registrar and BMV's I-797 requirement does not conflict with federal law, nor does it expand upon an area of law occupied solely by the federal government.  Instead, the Registrar and BMV's policy merely recognizes an existing requirement imposed by the federal government and seeks to insure compliance therewith.

Accordingly, Plaintiffs have not and cannot allege a violation of the Supremacy Clause of the United States Constitution.

> **B. Refugees who possess I-94 forms which are more than 2 years old and who have not applied for permanent residence status are not members of a suspect class and thus, any law that affects them is subject to a rational basis analysis.**

Plaintiffs continue to claim that the alleged discrimination in this case is based on alienage and thus a strict scrutiny analysis should be examined.  Doc. 23, pp. 12-13.  As stated previously in Defendant's Motion to Dismiss, the Sixth Circuit has not agreed with that proposition.  The Sixth Circuit has held that lawful, temporary resident aliens do not qualify as a suspect class and, therefore any law that is alleged to cause discriminatory harm against them is not entitled to heightened scrutiny, but rather must only bear a rational relation to a legitimate governmental interest.  *LULAC v. Bredesen*, 500 F.3d 523, 533 (6th Cir. 2007).  The facts and circumstances of this case fit neatly in the rationale the Court utilized in *LULAC*.  As stated by the Sixth Circuit in citing the trial court's order:

4

> This case is not about "citizens" versus "aliens." Plaintiffs argue that classifications based on alienage are inherently suspect. But the statute at issue does not classify persons based on alienage. The statutory classification in this case is between citizens and lawful permanent resident *aliens* on the one hand, and illegal *aliens* and those *aliens* who are not permanent lawful residents, on the other hand. Thus, the classification created by the drivers' license legislation is not between aliens and citizens. The drivers' license law does not distinguish among persons because of a protected classification. For instance, aliens can qualify for either a drivers' license or a drivers' certificate based on legitimate criteria other than alienage. Instead, the classification is based on the legality of the alien's presence in the country under federal law (lawful permanent resident aliens vs. illegal aliens) and/or the length of time the federal government has authorized the alien to stay in this country (permanent vs. temporary). Thus, the court is not persuaded that the legislation burdens a suspect class, and should be subjected to strict scrutiny analysis.

*LULAC,* at 531, citing *LULAC v. Bredesen,* No. 3:04-0613, 2004 U.S. Dist. LEXIS 26507, at *9 (M.D. Tenn. Sep. 28, 2004). In adopting the district court's rationale, the Sixth Circuit held that there was "no compelling reason why the special protection afforded by suspect-class recognition should be extended to lawful temporary resident aliens." *Id*. At 533. The court further held that "[b]ecause the instant classification does not result in discriminatory harm to members of a suspect class, it is subject only to rational basis scrutiny. *Id*.

Unlike the more classic example of discrimination based on alienage where there is a distinction made between alien and citizen, the allegations in this case state a distinction between refugees who possess I-94 Forms that are more than two years old and refugees with I-94 Forms that are less than two years old. Doc. 1, ¶ 90. Thus, as in *LULAC*, this case is not about alienage and, therefore, is not subject to a strict scrutiny analysis. Instead, the Registrar is only required to show that the policy of requiring submission of a Form I-797 receipt notice when a refugee's I-94 form is more than two years old is rationally related to a legitimate government

5

interest. In this case, that legitimate government interest is the verification of the identity and legal status of applicants for a driver's license.

C. **If the allegations in Plaintiffs' Complaint are true, Plaintiffs should have been issued driver's licenses based upon the submitted documentation, thus any errors were committed by the specific Deputy Registrars involved; Plaintiffs continue to allege harm of individuals not represented by the Plaintiffs in this matter.**

As it relates to both of the named Plaintiffs in this matter, the documents Plaintiffs allege to have taken to the deputy registrars would have satisfied the requirements set forth by Registrar Noman for the issuance of driver's licenses to non-citizens. The deputy registrars Plaintiffs visited were appointed by Registrar Norman pursuant to the requirements of R.C. 4507.01(B). These deputy registrars were independent contractors and not employees of the BMV. See R.C. 4503.03(C). Therefore, assuming all facts alleged in Plaintiffs' Complaint are true, they have not presented any evidence showing that they have been harmed by the actions of Registrar Noman.

i. **BMV policy mandates that Plaintiffs Ibrahim and Rahouma should have been issued driver's licenses.**

When a refugee presents a Form I-94 that is over 2 years old, BMV requires that the applicant present a Form I-797 receipt notice for case type Form I-485 along with his or her Form I-94 in order to be issued a driver's license. Deputy Registrar Manual, Doc 18-1 at 33, PageID 231. The BMV will accept an I-797 receipt, waiver, or acceptance notice. Deputy Registrar Manual, Doc 18-1 at 30, PageID 228. Plaintiffs continue to belabor their argument that there is a distinction between I-797 and an I-797C receipt notice. However, a review of the Deputy Registrar manual shows that the BMV applies the generic term "I-797" to mean multiple types of I-797 forms including the I-797C receipt notice in addition to the I-797 approval notice. Clearly, the BMV intends to accept what Plaintiffs term I-797Cs when they describe I-797 receipt notices as an acceptable document for purposes of receiving a driver's license. "Form I-

6

797 receipt notice for case type Form I-485" is the same document Plaintiffs allege they presented to the Deputy Registrar and the same document the BMV states as an acceptable document in their policy.  Deputy Registrar Manual, Doc 18-1 at 30, PageID 228.  After filing a Form I-485 Application to Register Permanent Residence or Adjust Status and being issued the proper Form I-797 receipt notice, Plaintiffs would qualify as having "a pending application for adjustment of status to that of an alien lawfully admitted for permanent residence in the United States or conditional permanent resident status in the United States."  Pub. L. No. 109-13 202(c)(2)(B)(ix); 119 Stat. 313; (49 U.S.C. § 30301 codified at note); 6 C.F.R. § 37.3 (2016).

### ii. Plaintiff CRIS cannot establish organizational standing absent identifying at least one specific individual member allegedly harmed.

Plaintiffs are also improperly attempting to broaden the prospective class by adding an additional group of people to this case that are otherwise not currently being represented. Refugees who have an I-94 that is more than two years old and have not yet applied to adjust status, meaning they do not have any I-797 form, are a different class of people who are not similarly situated to the current named individual Plaintiffs.  In addition, Plaintiffs should not be permitted to shoehorn this group into this case under the umbrella of Plaintiff CRIS because none of current Plaintiffs in this action represent the same alleged harm and potential redressability required of this new group of individuals.   In order to establish standing to proceed on behalf of its members, a proposed organizational plaintiff must "make specific allegations establishing that at least one **identified** member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009) [Emphasis added].  Plaintiff, CRIS has not identified a single member who would fit their proposed broadened class definition.

7

The requirement of naming the affected members of an organization in order to establish standing of the organization to proceed on behalf of its members is only waived "where *all* the members of the organization are affected by the challenged activity." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498-499, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009) [Emphasis in Original], Citing, *e.g.*, *NAACP* v. *Alabama ex rel. Patterson*, 357 U.S. 449, 459, 78 S. Ct. 1163, 2 L. Ed. 2d 1488 (1958).  Plaintiff CRIS has not alleged that all members of the organization have been affected by the Registrar and BMV's policy and, thus, cannot pursue a claim on behalf of its membership without naming at least one affected member.

Plaintiff CRIS continued to assert that they have "diverted valuable resources" yet have not provided any documentation to that effect.  In fact, Plaintiff CRIS states, "The organization assists refugees in many aspects of their resettlement, including…applying for…Ohio driver's Licenses." Complaint at ¶ 55.  Plaintiff CRIS has not explained how this assistance to refugees go outside the bounds of their stated organizational goal.  While Plaintiff, CRIS alleges that it has "spent approximately 200 hours total on advocacy with the BMV and the Deputy Registrars to help their refugee clients obtain driver's licenses after they were initially refused a license because their I-94s were more than 2 years old," it has not indicated how that type of advocacy is outside its stated mission.  Doc. 1, ¶ 61.  It is simply not logical that one of the stated objectives of CRIS being assisting in applying for driver's licenses yet that is also somehow a burden on the organization causing harm.  Plaintiff CRIS has not provided any supplemental support to this claim identifying quantifiable harm that has occurred to it.

Accordingly, Plaintiffs have not stated a claim upon which relief can be granted against Registrar Noman, and have not shown that they are entitled to relief.  Their Complaint is therefore subject to dismissal under Fed. R. Civ. P. 12(b)(6).

### D. Conclusion

For the reasons set forth above, Defendant Norman respectfully requests that the Court dismiss Plaintiffs' claims against him in their entirety.

          Respectfully submitted,

          DAVE YOST   (0056290)
          OHIO ATTORNEY GENERAL

          /s/ Brian R. Honen
          Hilary R. Damaser (0059190)
          Brian R. Honen (0084880)
          Jahan S. Karamali (0093800)
          Cory J. Goe (0090500)
          Assistant Attorneys General
          Executive Agencies Section
          30 East Broad Street, 26th Floor
          Columbus, Ohio  43215-3428
          614.466.2980; FAX:  614.728.9470
          hilary.damaser@ohioattorneygeneral.gov
          brian.honen@ohioattorneygeneral.gov
          jahan.karamali@ohioattorneygeneral.gov
          cory.goe@ohioattorneygeneral.gov
          *Counsel for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing **Defendant Charles Norman's Reply in Support of its Motion to Dismiss** was filed through the Court's CM/ECF system and was served via electronic mail this 9th day of April, 2019 upon the  following:

Emily M. Brown, Esq.
ebrown@ablelaw.org

Kathleen C. Kersh, Esq.
kkersh@ablelaw.org

Mark R. Heller, Esq.
mheller@ablelaw.org

Eugenio Mollo, Jr., Esq.
emollo@ablelaw.org

*Counsel for Plaintiffs*

/s/ Brian R. Honen
Brian R. Honen (0084880)