IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| COMMUNITY REFUGEE AND IMMIGRATION SERVICES; Gumaa Ismail Yahya IBRAHIM; and Badreldin RAHOUMA, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 2:18-cv-1189 |
| v. | ) ) | Judge Sargus |
| Charles NORMAN, Registrar, Ohio Bureau of Motor Vehicles, in his official capacity, | ) ) ) ) | Magistrate Judge Jolson |
| Defendant. | ) ) | |

**SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs Gumaa Ibrahim and Badreldin Rahouma move for an order certifying this matter to proceed as a class under Rule 23(b)(2).

The named Plaintiffs Gumaa Ibrahim and Badreldin Rahouma seek to represent a class consisting of "all refugees residing in Ohio who possess a valid refugee I-94 document that is more than two years old and have not yet adjusted their status to that of a lawful permanent resident." Plaintiffs satisfy all the prerequisites to certification as a Rule 23(b)(2) class, namely, numerosity, commonality, typicality, adequacy, and the appropriateness of injunctive and declaratory relief because Defendant has acted or failed to act on grounds generally applicable to the class.

Plaintiffs request that Emily Brown, Kathleen Kersh, Mark Heller, and Eugenio Mollo of Advocates for Basic Legal Equality, Inc., and Caroline Gentry, Ana P. Crawford, and David P.

1

Shouvlin of Porter Wright Morris & Arthur LLP, be appointed as class counsel in this case. A proposed order is attached as Exhibit 17.

## I.     INTRODUCTION

Plaintiffs bring this action on behalf of themselves and others similarly situated to challenge Defendant's unconstitutional policy that denies Ohio driver's licenses to named Plaintiffs and similarly situated individuals who hold refugee status and who were admitted to the United States as refugees more than two years ago.

On October 26, 2018, Plaintiffs filed a Motion for Class Certification. Dkt. 2. Briefing was stayed pursuant to an expedited discovery period on both class and merits issues, and Plaintiffs now submit this supplemental brief in support of the Motion for Class Certification, with appropriate citations to the record in light of the discovery that has now been exchanged by the parties.

## II.     FACTS

The two named plaintiffs, Gumaa Ibrahim and Badreldin Rahouma, were denied Ohio driver's licenses by the BMV because they presented refugee I-94 documents issued more than two years prior as their only proof of immigration status in the United States. Ex. 1, Badreldin Rahouma's Refugee I-94; Ex. 2, Gumaa Ibrahim's Refugee I-94; Ex. 3, Declaration of Gumaa Ibrahim ("Ibrahim Decl."), at ¶¶ 9-10; Ex. 4, Declaration of Badreldin Rahouma ("Rahouma Decl."), at ¶¶ 9-12. At the time of filing, both Plaintiffs were refugees with pending applications for lawful permanent residence, Form I-485. In addition to their I-94s, both presented Form I-797C, receipt notice, evidencing their pending adjustment of status applications. Ibrahim Decl., Ex. 3, at ¶ 9; Rahouma Decl., Ex. 4 at ¶ 10; Ex. 5, Gumaa Ibrahim's I-485 Receipt Notice, Form I-797C; Ex. 6, Badreldin Rahouma's I-485 Receipt Notice, Form I-797C. Both Plaintiffs were

told by Deputy Registrar employees that their applications for a driver's license were denied because they failed to submit sufficient proof of legal presence by submitting only their refugee I-94s and their I-485 receipt notices. Ibrahim Decl, Ex. 3, at ¶¶ 9-10; Rahouma Decl., Ex. 4, at ¶¶ 11-12. The denials of Plaintiffs' driver's license applications are required by BMV policy, which mandates that a refugee I-94 is not valid as proof of immigration status if it is two or more years old and requires that refugees submitting an I-94 as proof of valid immigration status also submit an "I-797 with case type I-485." Ex. 7, Deputy Registrar Procedure Manual; Ex. 9, Statement of Stipulated Facts at ¶ 9. Form I-797 is an approval notice; therefore, an I-797 with case type I-485 is an approval notice for a green card. *See* https://www.uscis.gov/i-797-info.

Plaintiffs may serve as class representatives despite changes in their factual circumstances since the filing for class certification on October 26, 2018. Shortly after filing the complaint and the motion for class certification, Defendant made arrangements for both individual Plaintiffs to obtain an Ohio credential. Plaintiff Ibrahim obtained his driver's license on February 7, 2019, and Plaintiff Rahouma obtained his state ID card on June 18, 2019. Both Plaintiffs obtained their driver's licenses because Defendant arranged to make an exception to the policy and accept an I-797C receipt notice instead of an I-797 approval notice, which the policy requires. Ex. 7, Deputy Registrar Procedure Manual; Ex. 11, Def's Response to Request for Admission No. 8; Ex. 12, Pls' Response to Def's Requests for Admission Nos. 1, 3. This Court acknowledged the I-797/I-797C distinction in its opinion denying Defendant's motion to dismiss. Dkt. 31, Opinion and Order Denying Defendant's Motion to Dismiss at 16, PageID # 471; *see also* 30(b)(6) Deposition Tr. of BMV: Derek Casper Vol II ("Casper BMV Dep. Vol

II") Dkt. 36, p. 265-66 (acknowledging I-797 and I-797C are two different forms).[1] Although the BMV permitted Rahouma and Ibrahim to obtain Ohio credentials, it did not change its policy with respect to any other members of the class.

The proposed class that Plaintiffs seek to represent consists of:

> All refugees residing in Ohio who possess a valid refugee I-94 document that is more than two years old and have not yet adjusted their status to that of a lawful permanent resident.

### III.     ARGUMENT

A federal court may certify a suit as a class action where the proposed class meets all the requirements of Federal Rule of Civil Procedure 23(a) and fits within one of the subcategories of Federal Rule of Civil Procedure 23(b). *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-538 (6th Cir. 2012).

A district court is required to conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are satisfied before certifying a class. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). A preliminary inquiry into the merits is generally not appropriate when considering a motion for class certification; indeed, "[m]erits questions may be considered to the extent—*but only to the extent*—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013)).

---

[1] The Sixth Circuit has repeatedly acknowledged that defendants to a class action may not evade review of a challenged practice and moot the class action by simply "picking off" named plaintiffs. *Wilson v. Gordon*, 822 F.3d 934, 947-51 (6th Cir. 2016); *Blankenship v. Secretary*, 587 F.2d 329, 333 (6th Cir. 1978) (finding a claim may not "evade review if it is declared moot merely because the defendants have voluntarily ceased the illegal practice complained of in the particular instance"). Thus, the claims and circumstances of Plaintiffs Ibrahim and Rahouma remain representative of the class as a whole.

In this case, the Class easily satisfies the requirements of Rule 23(a) and (b)(2). Thus, this Class should be certified.

### A. The Proposed Class Meets the Requirements of Rule 23(a)

#### i. The Class Is So Numerous that Joinder of All Members Is Impracticable

Plaintiffs will meet the "numerosity" requirement of Rule 23(a)(1) if they demonstrate the impracticability of joinder. *Young*, 693 F.3d at 541 (*quoting In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)). Joinder need not be impossible. There is no "strict numerical test for determining impracticability of joinder." *In re Am. Med. Sys.*, 75 F.3d at 1079. *Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974) (upholding certification of class of only 35 current members). A court may certify a class even when a plaintiff does not know the exact number of class members. *Senter v. General Motors Corp.*, 532 F.2d 511, 523 n. 24 (6th Cir. 1976). A large number of potential plaintiffs, however, can be sufficient to satisfy numerosity. *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) ("[The] sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy [numerosity]."); *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005) (holding a district court did not abuse its discretion when granting class certification to a class of Columbus tenants whose water service was or will be terminated because of the landlord or prior tenant's indebtedness, where for purposes of showing numerosity the plaintiffs relied only on the fact that the city of Columbus had 150,000 renters). Additionally, courts frequently certify classes where the size of the class is not precisely known, *Bovee v. Coopes & Lybrand*, 216 F.R.D. 596, 608 (S.D. Ohio 2003) (certifying a class where the court noted that "plaintiffs believe that the class numbers in the thousands"), or when "general knowledge and common sense indicate that the class is large." *Phillips v. Philip Morris Cos.*, 298 F.R.D. 355, 362-63 (N.D. Ohio 2014).

A review of the available data shows that there are at least a thousand members in the proposed class. Ex. 8, Declaration of Dr. Geoffrey Alan Boyce, at ¶ 4. From fiscal years 2011 to 2017, approximately 19,046 refugees were resettled in Ohio. *Id*. at ¶ 5 (citing Congressional Research Service, Reception and Placement of Refugees in the United States, June 21, 2017, page 6, available at: https://fas.org/sgp/crs/homesec/R44878.pdf). Of that number, 6,518 refugees were resettled in Ohio in fiscal years 2016 and 2017. *Id*. at ¶ 10. There is no longer state-by-state adjustment data available after 2001, but data from previous years indicate an annual average of 19.16% of eligible refugees in Ohio did not adjust their status to lawful permanent residence. *Id*. at ¶¶ 6-8. If the historic 19.16% annual average rate of eligible refugees who do not adjust status is applied to the 19,046 refugees resettled in Ohio from 2011-2017, the calculation results that there are approximately 3,649 eligible refugees resettled in Ohio who have not yet adjusted their status. *Id*. at ¶ 8. Even if the 19.16% annual average rate of eligible refugees who do not adjust status were applied only to the 6,518 refugees resettled in Ohio from fiscal years 2016 and 2017, the result is that approximately 1,248 refugees who resettled in Ohio over two years ago have not yet adjusted their status to lawful permanent residence. *Id*. at ¶ 10.[2]

---

[2] The estimate of 1,248 is most likely conservative for two reasons. First, the only available adjustment data from this time period includes both refugee and asylee adjustments, and thus refugee adjustment numbers are likely somewhat lower than the number of adjustments reflected in the data table. Second, this data does not include information for secondary migrants (refugees who have migrated to Ohio from other states). Data from the Office of Refugee Resettlement in the U.S. Department of Health and Human Services indicates that Ohio has recently been a top state for secondary refugee migration, suggesting that the overall number of refugees in Ohio is likely greater than the number initially resettled here, and therefore the number of refugees who remain unadjusted two years after entry to the U.S. is likely greater as well. *See* https://www.acf.hhs.gov/sites/default/files/orr/statistical_abstract_for_refugee_resettlement_stakeholders_508.pdf at p. 9-10 (showing data from the Refugee Arrivals Data System that in FY 2013 Ohio had a net secondary migration total of 881 refugees, as 1,062 refugees resettled in Ohio from other states and 181 refugees left Ohio).

Additionally, courts have found that future members of the class who will suffer the same harm as its current members may also be considered in the numerosity determination when the action seeks only injunctive and declaratory relief, as this case does. *Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975) ("Smaller classes are less objectionable where, as in the case before us, the plaintiff is seeking injunctive relief on behalf of future class members as well as past and present members.") (citation omitted); *Tonya K. v. Chicago Bd. of Educ.*, 551 F. Supp. 1107, 1109 (N.D. Ill. 1982) (in case involving exclusion of student with disabilities from public school, court considered class to include students who in the future would require placement in numerosity determination). This class will take on new members in the future as refugees continue to be resettled in Ohio. Further, as processing times for I-485 Application to Register Lawful Permanent Residence or Adjust Status continue to increase, fewer refugees will be able to receive their lawful permanent residence within two years of admission, and thus will only have an I-94 issued more than two years prior as proof of their immigration status.[3]

Consequently, the Class is sufficiently numerous to satisfy the numerosity requirement. *See Senter,* 532 F.2d at 522-523 ("In ruling on a class action a judge may consider reasonable inferences drawn from facts before him at that stage of the proceedings"); *Smith v. Waterman S.S. Corp.*, No. 10-12759-BC, 2011 U.S. Dist. LEXIS 103369, at *4 (E.D. Mich. Sept. 13, 2011) ("It is the duty of a district court faced with the question of class-action certification to scrutinize the available evidence [and] draw reasonable inferences from the facts available at this stage of the proceeding . . . "); *Putnam v. Davies*, 169 F.R.D. 89, 93 (S.D. Ohio 1996) (noting that

---

[3] *See* https://egov.uscis.gov/processing-times/historic-pt (noting the average processing time for an I-485 application based on a refugee admission has increased by 3.3 months since FY 2015); Ex. 13, Declaration of Morgen Morrissette at ¶ 10 (noting I-485 applications are often delayed for years due to background checks).

numerosity was satisfied even though plaintiff "has not offered evidence with respect to the number of potential class members," because the named plaintiff had asserted that law enforcement executed the challenged policy on a daily basis).

Other factors courts consider in determining impracticability of joinder include "judicial economy, geographical dispersion of class members, ease of identifying putative class members, and practicality with which individuals [sic] putative class members could sue on their own." *Crawley v. Ahmed*, No. 08-cv-14040, 2009 U.S. Dist. LEXIS 40794, at *28-29 (E.D. Mich. May 14, 2009). Here, Class members are dispersed throughout the state. It is unlikely that each and every Class member, most of whom have limited English proficiency and financial resources and are unfamiliar with the American legal system, will be able to invest in the resources necessary to redress their claims on their own.[4] Further, Defendant testified in the 30(b)(6) deposition that it does not keep records of refugees who were denied licenses because their only proof of lawful presence was an I-94 issued more than two years ago. Deposition Tr. of BMV: Todd Ballinger ("Ballinger BMV Dep.") Dkt. 37, p. 25. In sum, judicial economy will be served by allowing this case to be brought as a class action, rather than requiring hundreds of individuals to bring their own actions. *See Putnam*, 169 F.R.D. at 93 ("[T]he financial disincentives to initiating a lawsuit such as this one create a significant hardship for prospective plaintiffs and warrant the conclusion that the questioned statutes would go unchallenged were a class not certified.") (quoting *Kutschbach v. Davies*, 885 F. Supp. 1079, 1084 (S.D. Ohio 1995)).

      ii.   <u>There are Questions of Law and Fact Common to the Class</u>

---

[4] *See* Ex. 10, Declaration of Angela Plummer, at ¶ 7; Ex. 13, Declaration of Morgen Morrissette, at ¶ 5, stating the majority of CRIS's refugee clients are low-income.

The "commonality" requirement of Rule 23(a)(2) is satisfied where there is a question of law or fact common to the class. The test is "qualitative rather than quantitative . . . [and] there need be only a single issue common to all members of the class." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1080 (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3.10, at 3-50 (3d ed. 1992)); *see also Powers v. Hamilton Co. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). If there is a common issue uniting the putative class members, "variations in the circumstances of class members are acceptable." *Bacon*, 370 F.3d at 570. The Sixth Circuit has also observed that plaintiffs satisfy the commonality prong where resolving the common issue will "advance the litigation." *Sprague v. Gen'l Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998); *see also Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 424 (6th Cir. 1998) ("[T]he commonality test is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members.") (quotation omitted). "To demonstrate commonality, the plaintiffs' 'claims must depend on a common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Young*, *supra* at 542 (citation omitted). In a case such as this one, which alleges that Defendant's policy is illegal, "the commonality requirement will be satisfied as long as the members of the class have allegedly been affected by a general policy of the Defendant and the general policy is the focus of the litigation." *Bovee v. Coopes & Lybrand*, 216 F.R.D. 596, 608 (S.D. Ohio 2003) (citing *Putnam*, 169 F.R.D. at 93).

The questions of law and fact that are common to all members of the class include: (1) whether Defendant's policy of not accepting refugee I-94 documents as proof of "legal presence" in the U.S. if the documents are more than two years old is an impermissible immigration

classification that preempts federal law; and (2) whether Defendant's policy of not accepting refugee I-94 documents as proof of "legal presence" if the documents are more than two years old discriminates against refugees on the basis of their national origin in violation of the Equal Protection Clause of the Fourteenth Amendment. *See* Deputy Registrar Procedure Manual, Ex. 7, Bates No. 000530.

As was the case in *Putnam,* where the class challenged the constitutionality of a state law enforcement policy regarding seizure of vehicles, the named Plaintiffs in this case seek to redress an unconstitutional state policy carried out against themselves and all class members. As such, the named Plaintiffs share common questions of law or fact with the putative class.

Moreover, the common questions are central to the case. A holding that the Defendant's conduct is unconstitutional because it preempts federal law and/or discriminates against a group of refugees on the basis of their national origin would resolve the case for all class members "in one stroke." *Young*, 693 F.3d at 542. Therefore, resolving the common issues will most certainly "advance the litigation." *Sprague*, 133 F.3d at 397.

        iii.   <u>The Claims of the Named Plaintiffs are Typical of the Claims of the Class</u>

The typicality requirement of Rule 23(a)(3) ensures that the class representative will adequately represent the members of the class by requiring her claims to be sufficiently similar to the claims and defenses of the putative class members. *Day v. NLO*, 144 F.R.D. 330, 334 (S.D. Ohio 1991). Both named individual plaintiffs here satisfy the typicality requirement.

At the time of the filing of this lawsuit and the motion for class certification, Plaintiff Ibrahim was a refugee from Sudan, lawfully admitted to the United States with an I-94 entry document on October 27, 2015.[5] Form I-94 of Gumaa Ibrahim, Ex. 2; Ibrahim Decl., Ex. 3, at ¶¶

---

[5] In approximately June 2019, USCIS granted Plaintiff Gumaa Ibrahim's I-485 Application to Register Permanent Residence or Adjust Status; therefore, he is now a lawful permanent

1-2. He now resides in Dayton, Ohio. *Id.* at ¶ 1. He applied to adjust his status to that of a lawful permanent resident on December 23, 2016. *Id.* at ¶¶ 5-6.

Plaintiff Ibrahim was previously issued an Ohio driver's license that expired on January 3, 2018. *Id.* at ¶ 9. He went to a deputy registrar on Third Street in downtown Dayton, Ohio in January 2018 to renew his license and the deputy registrar refused to issue him a license, declining to accept his I-94 as proof of "legal presence" because it was more than two years old, which the deputy registrar characterized as "expired." *Id.* The deputy registrar staff told him to come back when he had received his green card. *Id.* He then went to a second deputy registrar,

---

resident. At the time of the filing the motion for class certification on October 26, 2018, however, he was a refugee. Pursuant to *Wilson v. Gordon*, 822 F.3d 934, 945 (6th Cir. 2016), a claim that was live at the time of filing for class certification is not mooted if it is "inherently transitory." *See also Unan v. Lyon*, 853 F.3d 279, 287 (6th Cir. 2017). The "inherently transitory" exception to the mootness doctrine applies in the class certification context when two conditions are met: first, the injury must be "so transitory that it would likely evade review by becoming moot before the district court can rule on class certification." *Wilson*, 822 F.3d at 945. Second, it must be clear that "other class members are suffering the injury." *Id.* Here, the class includes refugees living in Ohio for over two years who have not been granted adjustment of status. Many members of this class will eventually apply for and have their applications granted by USCIS and become lawful permanent residents. However, it is unknown exactly how long USCIS will take to approve any given application, and the adjudication of I-485 applications can take many months and sometimes years. *See Wilson*, 822 F.3d at 945 ("[T]he crux of the 'inherently transitory' exception is the uncertainty about the length of time a claim will remain alive.'"). Further, new refugees resettle in Ohio each year, and some of those refugees will eventually become class members. Moreover, evidence submitted by Plaintiffs Community Refugee and Immigration Services and Rahouma show that it is clear that other class members are suffering the injury. Rahouma Decl., Ex. 4, at ¶¶ 9-12; Ex. 10, Declaration of Angela Plummer at ¶¶ 11-17. Plaintiffs have also shown diligence in filing the motion for class certification shortly after filing the amended complaint (Dkt. 1, 2), proceeding with class and merits discovery on an expedited schedule, and requesting expedited adjudication of the class certification motion, factors which courts cite in determining whether plaintiffs may avail themselves of the "inherently transitory" exception. *See, e.g.*, *Banks v. National Collegiate Athletic Assoc.*, 977 F.2d 1081, 1085-86 (7th Cir. 1992), *cert. denied*, 508 U.S. 908 (1993); *Brunet v. City of Columbus*, 1 F.3d 390, 400 (6th Cir. 1993). Finally, even if the court does find Mr. Ibrahim's claim moot, Plaintiff Rahouma's claim remains live at this time.

on Main Street in Clayton, Ohio, and that deputy registrar also refused to issue him a license because his I-94 was more than two years old. *Id.* at ¶ 10; License Control Phone Log, Ex. 14.

Plaintiff Rahouma is a refugee from Sudan, lawfully admitted to the United States with an I-94 entry document on January 26, 2004. Form I-94 of Badreldin Rahouma, Ex. 1; Rahouma Decl., Ex. 4, at ¶¶ 1-3. He now resides in Cleveland, Ohio. *Id.* at ¶ 1. He applied to adjust his status to that of a lawful permanent resident on January 30, 2018, but U.S. Citizenship and Immigration Services has not yet adjudicated his application. *Id.* at ¶¶ 6-7.[6]

Plaintiff Rahouma, who had previously held an Ohio temporary permit several years ago, applied for an Ohio driver's license in February 2018 at the Edgecliff Terrace deputy registrar in Cleveland, Ohio. *Id.* at ¶ 10; License Control Phone Log, Ex.15. The deputy registrar refused to issue him a license because his I-94 was more than two years old. Rahouma Decl, Ex. 4, at ¶ 11.

The claims of Plaintiffs Ibrahim and Rahouma are typical of those of the class because there is a "sufficient relationship . . . between the injury to the named Plaintiffs and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re Am. Med. Sys. Inc.*, 75 F.3d at 1082 (*quoting Newberg on Class Actions* at 3-76). The commonality requirement overlaps and merges with the typicality requirement. *Young*, 693 F.3d at 542. Like the commonality requirement, "a representative's claim need not always

---

[6] Currently, USCIS processing times indicate that the adjudication of an I-485 (application for adjustment of status) in the Cleveland Field Office takes approximately 9 to 27 months. *See* https://egov.uscis.gov/processing-times/. Therefore, even those refugees who apply for adjustment the day they become eligible—one year after admission to the U.S.—may still not receive a decision on their application until they have been in the U.S. for 39 months. Additionally, many refugees struggle to pay the medical and legal fees associated with the adjustment application. *See* https://www.uscis.gov/i-912 (Special Instructions re I-485 waiver eligibility).

involve the same facts or law, provided there is a common element of fact or law." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *Senter*, 532 F.2d at 525 n.31).

In cases where typicality is satisfied, the proposed class representative's interests are so aligned with the putative class's interests that by pursuing his claim, he advances the class's interests. *Id.*; *see also Beattie v. Century Tel., Inc.*, 511 F.3d 554, 561-562 (6th Cir. 2007) (finding typicality satisfied where the claims of the named Plaintiffs and the class as a whole arose from the same conduct and were premised on the same allegation); *Crawley*, 2009 U.S. Dist. LEXIS 40794, at *38-39, (finding typicality satisfied in a case seeking to prove unlawful termination of Medicaid benefits where the claims of the class representative and the proposed class arose from the same conduct by the defendant, shared the same legal theory, and the plaintiffs and class members suffered an identical harm in that they were not afforded pre-termination eligibility review and hearings); *Putnam*, 169 F.R.D. at 94 (finding typicality satisfied in a challenge to a state statute regarding the seizure of vehicles of persons who have been arrested for a second offense of operating a motor vehicle under the influence of alcohol, because "there was nothing to indicate that the procedures followed in seizing Plaintiff's vehicle and in addressing Plaintiff's claim that she was an innocent owner differed in any way from the procedures that normally are followed under the statute").

Here, Plaintiffs easily meet the typicality requirement because the claims of the named Plaintiffs and the class arise from the same unlawful conduct, namely Defendant's refusal to accept refugees' I-94s that are more than two years old, and there is no indication that Defendant's written policy is carried out differently as to different class members. 30(b)(6) Deposition Tr. of BMV: Casper BMV Dep. Vol I, Dkt. 35, p. 91. Just like named Plaintiffs, all members of the Class have been harmed or will be harmed by Defendant's practices for issuing

13

driver's licenses to refugees who entered the U.S. more than two years ago and have not yet adjusted their status to lawful permanent residence.

In sum, the legal theories underlying the claims of the individual Plaintiffs and the claims of the class—which turn on whether Defendant has violated the Supremacy Clause and the Equal Protection Clause by classifying refugees who arrived in the U.S. more than two years ago differently from those who arrived less than two years ago—are identical.

> iv. <u>The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class</u>

To demonstrate adequacy of representation, Plaintiffs must show that: (1) the class representative has common interests with the unnamed members of the class; and (2) the representative will vigorously prosecute the interests of the class through qualified counsel. *Young*, 693 F.3d at 543; *Senter v. Gen'l Motors Corp.*, 532 F.2d 511, 522 (6th Cir. 1976). The relationship between the named plaintiffs and members of the putative class must not be antagonistic. *Smith v. Babcock*, 19 F.3d 257, 265 n.13 (6th Cir. 1994). These elements are met in this case.

First, the interests of the named Plaintiffs and the members of the class are entirely coextensive. As described above, the legal claims of the named Plaintiffs arise from the same illegal conduct by Defendants that applies to the entire class. Consequently, the proposed class representatives are sufficiently interested in the outcome of the case to vigorously prosecute the class's claims. The named Plaintiffs seek declaratory and injunctive relief to ensure that Defendant promptly changes its policy to ensure that they can obtain driver's licenses and state identification cards which will enable them to fully participate in civic life; transport themselves to work, medical appointments, and other obligations; and support themselves financially. This

request does not present conflicts between named Plaintiffs and other class members because the named Plaintiffs lack any interests adverse to the members of the proposed class.

Second, counsel for the named plaintiffs and the proposed class has sufficient experience and expertise to ably represent the proposed class, as well as a track record of vigorously pursuing the interests of their clients. Mark R. Heller has practiced law for more than 40 years, all of it in poverty law and primarily representing immigrants in federal litigation, including numerous class actions and collective actions. Eugenio Mollo, Jr., has 12 years of experience practicing immigration law and litigating on behalf of immigrants in federal court. Emily Brown has experience representing immigrants in a previous class action in the Northern District of Ohio, and Brown and Kathleen Kersh have a combined 10 years of experience practicing immigration law and litigating civil-rights and employment cases in federal district court. *See* Ex. 16, Brown, Heller, Kersh, Mollo, Gentry, and Crawford resumes. Plaintiffs' counsels' law firm, Advocates for Basic Legal Equality, Inc., is the preeminent nonprofit law firm in Ohio in litigation involving immigrants' civil rights. Caroline Gentry has been a litigation attorney for over twenty years with significant experience in federal court. For years she has devoted a portion of her practice to class action work and has served as Chair or Co-Chair of Porter Wright's Class Action Practice Group. Ana Crawford has over five years of litigation experience, including federal trial-work on civil rights issues. Plaintiffs' attorneys will prosecute this action vigorously and competently.

Accordingly, Plaintiffs will fairly and adequately protect the interests of the class in this action, which satisfies the requirements of Rule 23(a)(4).

  B. *The Proposed Class Meets the Requirements of Rule 23(b)(2)*

Where a proposed class meets the requirements of Rule 23(a), the class may be certified if it satisfies one of the conditions set forth in Rule 23(b). Rule 23(b)(2) permits class

15

certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

Certification under Rule 23(b)(2) is appropriate where "the common claim is susceptible to a single proof and subject to a single injunctive remedy." *Senter*, 532 F.2d at 525. "Rule 23(b)(2) was drafted specifically to facilitate relief in civil rights suits." 8 *Newberg on Class Actions*, § 25:20. In actions primarily seeking injunctive relief, the (b)(2) requirement is "almost automatically satisfied." *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). "When a suit seeks to define the relationship between the defendant(s) and the world at large, (b)(2) certification is appropriate." *Id*. (internal quotation marks and ellipses omitted). "What is important is that the relief sought by the named plaintiffs should benefit the entire class." *Id*. at 59.

In determining whether a class merits certification under Rule 23(b)(2), the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011), held that Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. This class easily meets that standard, as all members of the class seek injunctive and declaratory relief from Defendant's generally applicable custom, policy, or practice of not accepting as proof of legal presence a refugee Form I-94 that is more than two years old. The named Plaintiffs do not contend that they were singled out for unlawful treatment. On the contrary, their treatment is in accordance with an official BMV policy, as is the treatment of other class members. Deputy Registrar Procedure Manual, Ex. 7, Bates No. 000530. The remedy they seek—declaratory and injunctive relief to force Defendant to cease its policy of refusing to accept refugees' I-94s that are more than two years old—would apply to and benefit all members of the proposed class. An order entered by this Court on any basis

16

holding that the policy violates the Supremacy Clause and/or the Equal Protection Clause would, by its terms, inure to the benefit of all members of the class. Certification is therefore appropriate under Rule 23(b)(2).

## IV. CONCLUSION

The proposed class satisfies the requirements of Rule 23(a) and Rule 23(b)(2). Therefore, Plaintiffs respectfully request that this Court enter an order certifying the class and appointing class counsel as set forth fully in the motion above.

Respectfully submitted,

By: */s/ Emily M. Brown*
Emily M. Brown (0092553)
Kathleen C. Kersh (0091198)
Mark R. Heller (0027027)
Eugenio Mollo, Jr. (0081860)
Advocates for Basic Legal Equality, Inc.
130 West Second St., Suite 700E
Dayton, Ohio 45402
937.535.4408 (phone)
937.535.4600 (fax)
ebrown@ablelaw.org
kkersh@ablelaw.org
mheller@ablelaw.org
emollo@ablelaw.org

Caroline H. Gentry (0066138)
Ana P. Crawford (0090581)
David P. Shouvlin (0066154)
Porter Wright Morris & Arthur LLP
One South Main Street, Suite 1600
Dayton, OH 45402
937-449-6748 (phone)
937-449-6820 (fax)
cgentry@porterwright..com
acrawford@porterwright.com
dshouvlin@porterwright.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Supplemental Brief in Support of Motion for Class Certification was filed July 15, 2019 through the Court's Electronic Filing System through and thereby served on all parties.

*s/ Emily M. Brown*

Emily M. Brown (0092553)
Advocates for Basic Legal Equality, Inc.
130 West Second St., Suite 700E
Dayton, Ohio 45402
937.535.4408 (phone)
937.535.4600 (fax)
ebrown@ablelaw.org

*Attorney for Plaintiffs*