## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**COMMUNITY REFUGEE AND**
**IMMIGRATION SERVICES, et al.,**

                **Plaintiffs,**

    **v.**

**REGISTRAR, OHIO**
**BUREAU OF MOTOR VEHICLES,**

                **Defendant.**

**Case No. 2:18-cv-1189**
**JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Kimberly A. Jolson**

### OPINION AND ORDER

This matter is before the Court on the Supplemental Motion for Class Certification filed by Plaintiffs Badreldin Rahouma ("Rahouma"), Gumaa Ismail Yahya Ibrahim ("Ibrahim"), and Community Refugee and Immigration Services ("CRIS") (collectively "Plaintiffs"). (ECF No. 39.) Defendant Charles L. Norman,[1] Registrar ("Registrar" or "Defendant") of the Ohio Bureau of Vehicles ("BMV") has waived opposition to this motion. (ECF No. 45.) For the following reasons, the Plaintiffs' Supplemental Motion for Class Certification (ECF No. 39) is **GRANTED**.

Additionally, this matter is before the Court on Plaintiffs' Motion for Summary Judgment. (ECF No. 47.) Defendant has responded and Plaintiffs have replied. (ECF Nos. 48, 49.) Thus, the motion is ripe for review. For the following reasons, Plaintiffs' Motion for Summary Judgment (ECF No. 47) is **GRANTED**.

---

[1] This case originally named Don Petit, the Registrar of the BMV on December 4, 2018, when the case was filed. (*See Compl.*; Stip. Facts ¶ 5.) Charles L. Norman took office on January 28, 2019, as the new Registrar and, as such, became the defendant in this case. *See https://bmv.ohio.gov/about-registrar.aspx.*

# I.

Plaintiffs allege that a policy of the BMV Registrar denies driver's licenses to individuals who hold a valid refugee admission document ("Form I-94") but were admitted to the United States as refugees more than two years ago. (Pls.' Mot. Summ. J. at 3, ECF No. 47.) Plaintiff's posit:

> BMV Policy permits refugees to use an I-94 admission document stamped "refugee" upon entry to the United States ("refugee I-94") as their sole proof of lawful presence for the purposes of obtaining an Ohio driver's license, provided that a refugee I-94 was issued within the past two years. However, refugees who present a refugee I-94 issued more than two years ago must also present [United States Citizenship and Immigration Services ("USCIS")] Form I-797, a notice of action, with case type I-485, Application to Register Permanent Residence or Adjust Status, in order to show lawful presence.
>
> This policy violates Plaintiffs' and putative class members' rights under both the Supremacy Clause and the Equal Protection Clause of the Fourteenth Amendment. First, the BMV's policy not to recognize a Form I-94—a federal issued, unexpired lawful presence document—if it is more than two years old is an improper regulation on immigration because it is an immigration classification not authorized or contemplated by federal law. Second, Defendant's policy is improper alienage-based discrimination against Plaintiffs and putative class members, because refugees are a suspect class entitled to strict scrutiny, and Defendant has asserted no compelling state interest to justify its policy. Defendant has not even articulated a legitimate state interest to which the policy bears a rational relation.

(*Id.* at 3–4 (internal citations omitted).)

As further describe below, Plaintiffs assert claims under the Supremacy Clause of the Constitution, Article VI, Clause 2, and 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. (Compl. ¶¶ 87–102, ECF No. 1.)

## A.    Relevant Statutes, Regulations, and Policies

A refugee is "[a]ny person who is outside any country of such person's nationality . . . who is unable or unwilling to return to, and is unable and unwilling to avail himself of the protection of that country because of persecution or a well-founded fear of persecution on account of race,

religion, nationality, membership in a particular social group, or political opinion." Immigration and Nationality Act of 2016, 8 U.S.C. § 1101(a)(42). Refugees apply for and are granted refugee status abroad. *See* 8 C.F.R. § 207.4. Approval of a refugee application authorizes Customs and Border Protection to admit an applicant as a refugee upon arrival to the United States. *Id.*

Upon entry and admission into the United States, refugees presenting a credible claim of "well-founded fear of persecution" are issued a Form I-94 that serves as proof of their immigration status. (*See* Ibrahim I-94 document; ECF No. 47-2; Rahouma I-94 document, ECF No. 47-3.) Neither the paper nor the electronic I-94 refugee admission document has an expiration date or other date upon which it is no longer a valid document for proof of immigration status and employment authorization. (Expert Report & Decl. of Pratheepan Gulasekaram at ¶ 8, ECF No. 47-4.) Some I-94s, such as those held by the individually named Plaintiffs in this action, are marked "D/S," indicating that it is valid for the "[d]uration of [s]tatus." (Ibrahim I-94 document; Rahouma I-94 document.)

With the REAL ID Act, Congress set standards for the issuance of state driver's licenses that federal agencies will accept for official purposes, such as accessing federal facilities and boarding federally regulated aircraft.[2] Pub. L. No. 109-13, § 201(3), 119 Stat. 231, 313 (codified at 49 U.S.C. § 30301 note § 201(3)). The REAL ID Act provides that the Secretary of Homeland Security shall determine whether a state is meeting the requirements of the REAL ID Act based on certifications made by the state to the Secretary of Homeland Security. *Id.* § 202(a)(2). Ohio, along with at least 24 other states and the District of Columbia, has agreed to comply with the REAL ID Act, thereby ensuring that its residents may use their Ohio driver's licenses to enter

---

[2] The REAL ID Act is a portion of the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108–458, 118 Stat. 3638.

federal facilities and board commercial domestic flights. (Statement Stipulated Facts ¶ 6, ECF No. 18, hereinafter "Stip. Facts.")

To issue a REAL ID Act-compliant driver's license to an applicant, a state must require documentary evidence that the applicant has "lawful status," as defined by the REAL ID Act. Pub. L. No. 109-13, § 202(c)(2)(b), 119 Stat. 231, 313 (codified at 49 U.S.C. § 30301 note § 201(3)). The REAL ID Act establishes nine categories of persons who have "lawful status," as required to receive a REAL ID Act-compliant driver's license: (1) citizens or nationals of the United States; (2) aliens lawfully admitted for permanent or temporary residence in the United States; (3) aliens with conditional permanent resident status in the United States; (4) aliens who have an approved application for asylum in the United States or who entered into the United States in refugee status; (5) aliens with a valid, unexpired nonimmigrant visa or nonimmigrant visa status for entry into the United States; (6) aliens with a pending application for asylum in the United States; (7) aliens with a pending or approved application for temporary protected status in the United States; (8) aliens with approved deferred action status; and (9) aliens with a pending application for adjustment of status to that of an alien lawfully admitted for permanent residence in the United States or conditional permanent resident status in the United States. *Id.* § 202(c)(2)(B), 119 Stat. 231, 313 (codified at 49 U.S.C. § 30301 note); 6 C.F.R. § 37.3 (2016).

Refugees are eligible to adjust their status to lawful permanent residency after they have "been physically present in the United States for at least one year." Immigration and Nationality Act of 2016, 8 U.S.C. § 1101 *et seq.*, *Id.* §§ 1101(a)(42); § 1158 (a)(1) ("Any alien who is physically present in the United States . . . *may apply* for asylum in accordance with this section"); *id.* § 1158(a)(2)(B) ("Time limit"–explaining that some refugees are eligible to apply for adjustment after one year of physical presence in the United States)). Once an application to adjust

status is approved, the refugee's period of permanent residence is retroactively dated to the date of his or her admission to the United States as a refugee. *Id.*

To apply for adjustment of status, a refugee must file an application to register for permanent residence or to adjust status, a case type I-485. USCIS, Form I-797: Types and Functions, available at https://www.uscis.gov/i-797-info; *see also* USCIS, Form I-797C: Notices of Action, available at https://www.uscis.gov/forms/form-i-797c-notice-action. Once a request for permanent residence or status adjustment is filed, the applicant receives an I-797C. *Id.* Once the application is approved, the applicant will receive an I-797, which is an approval notice showing that the permanent residency application was approved, not just filed. *Id.*

At issue in this case, is the BMV Registrar's policy that denies Ohio driver's licenses to individuals who hold a valid I-94, but who were admitted to the United States as refugees more than two years prior to their application for a driver's license ("the Policy.") Defendant has stipulated that the BMV policy denies driver's licenses to refugees who submit I-94 refugee admission documents that are more than two years old as sole proof of their lawful immigration status, and grants driver's licenses to refugees who present those same documents if they are less than two years old. (Stip. Facts ¶¶ 8, 9.) The Policy as outlined in the Deputy Registrar Procedure Manual ("DRPM"), submitted in support of the Statement of Stipulated Facts, states that a driver's license applicant presenting an "I-94 with 'indefinite' Refugee stamp over 2 years old" must also present "an I-797 with case type I-485." (Deputy Registrar Procedure Manual at 33, ECF No. 18-1, hereinafter "DRPM.") The Policy also states that a driver's license applicant presenting an "I-94 with 'indefinite' Refugee stamp within 2 years old . . . does not need to present any additional legal presence documents." *Id.*

5

**B.    Relevant Facts**

Plaintiffs include: (1) Rahouma; and (2) Ibrahim, citizens of Sudan with valid refugee status who were unable to obtain Ohio driver's licenses because their I-94 documents are more than two years old; and (3) organizational plaintiff CRIS, a central Ohio based nonprofit organization which assists refugees in many aspects of resettlement. (Compl. ¶¶ 5–8, 54.)

**1.    Plaintiff Badreldin Rahouma**

Rahouma is a citizen of Sudan who resides in Cleveland, Ohio. (Rahouma Decl. ¶ 1, ECF No. 47-9.) On January 26, 2004, Rahouma entered the United States as a refugee and received a form I-94. (*Id.* ¶ 2.) Rahouma has held refugee status ever since this date. (*Id.* ¶ 3.) She applied for adjustment on December 8, 2017. (*Id.* ¶ 5, 6.) Rahouma did not apply for adjustment prior to 2017 because she did not have money for the filing, medical, and legal fees. (*Id.* ¶ 5.) Rahouma received a receipt notice from USCIS on January 30, 2018. (*Id.* ¶ 6.)

Rahouma had a valid driver's license from April of 2009 until April of 2010. (*Id.* ¶ 8.) In 2010 in Cleveland, Ohio, and again in 2011 in Columbus, Ohio, Rahouma attempted to get another driver's license with her I-94. (*Id.* ¶ 9.) On both occasions, the BMV denied her a license because her I-94 was more than two years old. (*Id.*)

In February of 2018, Rahouma went to a BMV in Cleveland, Ohio with her I-94 and her I-485 receipt notice. (*Id.* ¶ 10.) The Deputy Registrar refused to give her a driver's license, stating her I-94 could not be used as proof of legal presence because it was more than two years old. (*Id.* ¶¶ 10, 11.)

On June 13, 2019, after this suit had been filed, Rahouma was permitted to take the driver's test at a BMV in Parma, Ohio, but did not pass.[3] (Casper Aff. ¶ 3, ECF No. 48-1.) On June 18, 2019, Rahouma returned to the same BMV and obtained a valid Ohio identification card. (*Id.*)

### 2. Plaintiff Gumaa Ismail Yahya Ibrahim

Ibrahim is a citizen of Sudan currently living in Dayton, Ohio. (Ibrahim Decl. ¶ 1, ECF No. 47-5.) She came to the United States as a refugee on October 27, 2015 and obtained an I-94. (*Id.* ¶ 2.) Ibrahim has remained a refugee since this date. (*Id.* ¶ 3.) In December of 2016, Ibrahim applied to USCIS for a green card. (*Id.* ¶ 5.) USCIS has not acted on her application. (*Id.* ¶ 6.) Ibrahim had a driver's license that expired on January 3, 2018. (*Id.* ¶ 9.)

In January of 2018, Ibrahim went to a BMV in Dayton, Ohio, with her I-94 and I-485 receipt notice, to get a driver's license. (*Id.*) The BMV asked Ibrahim if she had applied for a green card and she said yes. (*Id.*) Even so, the BMV refused to give her a driver's license, stating she had to wait for her green card because her I-94 had expired. (*Id.*) On the same day, she took her documents to another BMV in Dayton. (*Id.* ¶ 10.) Again, they refused to give her a driver's license because her I-94 was more than two years old. (*Id.*)

On February 7, 2019, after this suit was filed, Ibrahim presented her documents to the BMV in Huber Heights, Ohio, and was issued a valid driver's license.[4] (Casper Aff. ¶ 2.) In June of 2019, USCIS granted Ibrahim's application for adjustment and he is now a lawful permanent resident of the United States. (Pl.'s Mot. Summ. J. at 6 n.2.)

---

[3] Plaintiffs contend that "[a]fter Plaintiffs filed the motion for class certification, Defendant made arrangements through Plaintiffs' counsel for [Rahouma and Ibrahim] to obtain an Ohio credential . . . Defendant arranged to make an exception to the policy and accept an I-797C receipt notice instead of an I-797" as required by the Policy. (Pls.' Mot. Summ. J. at 8.) Defendant contends "upon review of the documents, the BMV determined [Plaintiffs] should have been issued a valid driver's license." (Def.'s Resp. at 3.)

[4] *See infra* Section I.B.i.n.3 (explaining the parties competing contentions as to how Ibrahim and Rahouma obtained Ohio credentials).

### 3. Plaintiff Community Refugee and Immigration Services

CRIS is a non-profit organization serving the refugee and immigrant populations in central Ohio. (Plummer Decl. ¶ 2, ECF No. 47-13; Morrissette Decl. ¶ 2, ECF No. 47-14.) Through its various programs, CRIS assists refugees in securing housing and basic necessities, applying for social security cards, public assistance, and Ohio driver's licenses, enrolling children in school, accessing health screenings, and providing cultural orientation. (*Id.* ¶ 6.) Most of the refugees CRIS serves are low income and live in places that lack public transportation. (*Id.* ¶ 7–8; Morrissette Decl. ¶ 5, 8.) Thus, a driver's license is needed to help them integrate into the community and support their families. (*Id.* ¶ 9.)

In 2016, CRIS became aware that the Ohio BMV was refusing to issue licenses to refugees whose I-94 documents were more than two years old. (*Id.* ¶ 11; Morrissette Decl. ¶ 12.) Since this time, CRIS attorneys have spent hundreds of hours advocating for their refugee constituency to obtain driver's licenses. (*Id.* ¶ 12–13; Morrissette Decl. ¶ 13.) CRIS caseworkers have also spent numerous hours accompanying refugees to the BMV to attempt to convince the BMV to give the refugees licenses. (*Id.* ¶ 14–15.)

### 4. Procedural History

In October of 2018, Plaintiffs brought suit under Section 1983 alleging a violation of the Equal Protection Clause of the Fourteenth Amendment and violation of the Supremacy Clause of the Constitution, Article VI, Clause 2. In December of 2019, Defendants moved to dismiss Plaintiffs' claims for failure to state a claim. (ECF No. 9.) The Court denied this motion. (ECF No. 31.) Plaintiffs then filed a supplemental motion for class certification, as well as a motion for summary judgment, both of which are pending before the Court. (ECF Nos. 39, 47.)

## II.

Federal Rule of Civil Procedure 23 controls certification of class actions. The party seeking class certification bears the burden of proof. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Although Rule 23(a) requirements are procedural, not jurisdictional, in nature, a party must satisfy the requisite criteria before class certification can be granted. *See D. D. v. Washington Cty.*, No. 2:10-cv-1097, 2011 U.S. Dist. LEXIS 27720, at *1 (S.D. Ohio Mar. 3, 2011). Courts must use the four factors in Rule 23 when analyzing any request to certify a class. *See, e.g., EEOC v. Whirlpool Corp., Local 808*, 80 F.R.D. 10, 14 (N.D. Ind. 1978) ("The Rule 23 prerequisites are mandatory."). Put simply, parties cannot consent to Rule 23 certification. *Washington Cty.*, 2011 U.S. Dist. LEXIS 27720, at *1. Rather, a district court may certify the proposed class only if it concludes, based on the record before it, that the four factors stated in Rule 23 are satisfied.

Rule 23(a) states:

> [o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four requirements are commonly referred to as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See Washington Cty*, 2011 U.S. Dist. LEXIS 27720 at *4.

The district court must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are satisfied before certifying a class. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). While the district court has broad discretion on whether to certify a class, the determination must be made within the confines of Rule 23. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981) (finding the district court bound by the Federal Rules). A class is not maintainable as a class action merely

9

because it is designated as such in the pleadings. *Am. Med. Sys.*, 75 F.3d at 1079 (citing *Cash v. Swifton Land Corp.*, 434 F.2d 569, 571 (6th Cir. 1970)). The Sixth Circuit has stated:

> Mere repetition of the language of Rule 23(a) is not sufficient. There must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled. Maintainability may be determined by the court on the basis of the pleadings, if sufficient facts are set forth, but ordinarily the determination should be predicated on more information than the pleadings will provide.

*Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974) (citation omitted).

The district court, however, is not permitted to inquire into a case's merits at the class certification stage. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974). ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule."). Thus, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 586 U.S. 455, 466 (2013)) (internal quotations omitted); *see also In re Whirlpool Corp. Front Loading Washer Prods. Liability Litig.*, 722 F.3d 838, 851–52 (6th Cir. 2012) ("[D]istrict courts may not turn the class certification proceedings into a dress rehearsal for the trial on the merits." (internal quotations omitted)); *Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 417 (6th Cir. 2012) (explaining that although "conformance with Rule 23(a) . . . must be checked through rigorous analysis, . . . it is not always necessary . . . to probe behind the pleadings before coming to rest on the certification question, because sometimes there may be no disputed factual and legal issues that strongly influence the wisdom of class treatment." (internal quotations omitted)).

### III.

Plaintiffs seek to certify as a class, "[a]ll refugees residing in Ohio who possess a valid refugee I-94 document that is more than two years old and have not yet adjusted their status to that of a lawful permanent resident." (Suppl. Mot. Class Certification at 1, ECF No 39, hereinafter "Mot. Class Cert."). According to Plaintiffs, the Court should certify the proposed class because "the [c]lass easily satisfies the requirements of Rule 23(a) and (b)(2)." (*Id.* at 3). Defendant does not oppose class certification. (*See* Def.'s Waiver Opp'n, ECF No. 45.) The Court, however, is still required to analyze whether class certification is proper under Rule 23. As such, the Court will first address the Rule 23(a) requirements, then the Court will turn to whether the requirements of Rule 23(b)(2) have been satisfied, and finally the Court will consider the appointment of class counsel.

### A.     Rule 23(a) Requirements

####   1.     Numerosity

Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no bright line numerical test by which the district court can determine when the numerosity requirement is satisfied. *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n.24 (6th Cir. 1976) ("Impracticability of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case.") (citing *Cash*, 434 F.2d at 571). When class size reaches substantial proportions, however, the numerosity requirement is usually satisfied by numbers alone. *Am. Med. Sys.*, 75 F.3d at 1079.

Plaintiffs assert that the putative class meets Rule 23(a)(1)'s numerosity requirement as "there are at least a thousand members in the proposed class." (Mot. Class Cert. at 6 (citing Boyce Decl. ¶ 4, ECF No. 39-8.)) Plaintiffs submitted the Declaration of Dr. Geoffrey Alan Boyce ("Dr.

11

Boyce"), the Academic Director of the Border Studies Program at Earlham College. (*See generally* Boyce Decl.). Dr. Boyce submits:

1. Based on my review of the available research, I believe it is reasonable to conclude that there are at least a thousand refugees lawfully present in the State of Ohio who possess a valid I-94 document that is more than two years old, but who have not yet adjusted their status to that of a lawful permanent resident.

2. Between federal fiscal years 2011 through 2017[,] approximately 19,046 refugees were resettled in Ohio, according to the Congressional Research Service. . . . Approximately 6,518 refugees were resettled in Ohio in fiscal years 2016 and 2017 alone.

(*Id.* ¶¶ 4–5). Given the size and fluid nature of the proposed class, the Court is satisfied that joinder of all members is impracticable and that the numerosity requirement is met.

### 2. Commonality

Under Rule 23, the plaintiff must demonstrate the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). At the certification stage, however, the plaintiffs need not show that all class members have been injured in precisely the same way or were in fact injured at all. *Rikos*, 799 F.3d at 505 ("The Supreme Court in *Dukes* did not hold that named class plaintiffs must prove at the class-certification stage that all or most class members were in fact injured to the meet this requirement."). Instead, "the commonality requirement will be satisfied as long as the members of the class have allegedly been affected by a general policy of the [d]efendant and the general policy is the focus of the litigation." *Bovee v. Coopers & Lyband*, 216 F.R.D. 596, 608 (S.D. Ohio 2003) (citing *Putnam v. Davies*, 169 F.R.D. 89, 93 (S.D. Ohio 1996)).

Additionally, although Rule 23(a)(2) speaks of "questions" in the plural, there need be only one question common to the class. *Id.* (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397

(6th Cir. 1998)).  A common question must be one that is "capable of class wide resolution—which means determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

> Plaintiffs posit they are two questions that are common to all in the putative class:
>
> 1. [W]hether Defendant's policy of not accepting refugee I-94 documents as proof of 'legal presence' in the U.S. if the documents are more than two years old is an impermissible immigration classification that preempts federal law; and
>
> 2. [W]hether Defendant's policy of not accepting refugee I-94 documents as proof of 'legal presence' if the documents are more than two years old discriminates against refugees on the basis of their national origin in violation of the Equal Protection Clause of the Fourteenth Amendment.

(Mot. Class Cert. at 9–10) (citation omitted).

Plaintiffs submit that *Putnam v. Davis*, 169 F.R.D. 89 (S.D. Ohio 1996), is similar to this Case.  In *Putnam*, the class challenged the constitutionality of an Ohio policy that required the seizure of vehicles, which was "routinely and uniformly applied when a driver [was] arrested for a repeat offense of drunk driving." *Id.* at 93–94.  The *Putnam* Court found that the class had satisfied the commonality requirement as the challenged statutory procedure was "routinely and uniformly applied" to all class members and "the essential legal questions . . . will not vary among the class members." *Id.*  Plaintiffs assert that here too "the named Plaintiffs . . . seek to redress an unconstitutional state policy carried out against themselves and all class members." (Mot. Class Cert. at 10).  Furthermore, Plaintiffs contend these common questions are central to the case as a final holding in their favor would resolve the case for all members of the class. (*Id.* (citing *Young*, 693 F.3d at 542).)

The Court concludes that there are questions of fact and law common to all members of the proposed class because all proposed class members are subjected to the same uniformly applied policy.  As Plaintiffs maintain, "[a] holding that the Defendant's conduct is unconstitutional

13

because it preempts federal law and/or discriminates against a group of refugees on the basis of their national origin would resolve the case for all class members 'in one stroke.'" (Mot. Class Cert. at 10 (quoting *Young*, 693 F.3d at 542)). Thus, the commonality requirement is satisfied.

### 3. Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claim or defenses of the class." Fed. R. Civ. P. 23(a)(3). A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Am. Med. Sys.*, 75 F.3d at 1082 (citing 1 Newberg on Class Actions § 3-13, at 3-76). Typicality requires that the "representative's interests [are] aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *Id.* Put differently, "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399; *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000). The commonality and typicality requirements are closely related because they both help determine whether the claim of the named plaintiff and those of the class are so interrelated that the interests of the absent class members will be protected. *Id.*

Like the commonality requirement, the named plaintiff's claims do not have to be identical to the claims and defenses of the other members of the putative class or involve the same facts or law, provided there is a common element of fact or law. *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 6007) (citing *Senter*, 532 F.2d at 525 n.31); *Putnam*, 169 F.R.D. at 94.

Plaintiffs assert that, while Ibrahim[5] has received an Ohio driver's license since filing this action, the typicality requirement is nonetheless met. (*See* Mot. Class Cert. at 10). Plaintiffs first

---

[5] As of filing the Supplemental Motion for Class Certification, Rahouma still had not obtained an Ohio driver's license. (*See* Mot. Class Cert. at 10–11 n.5, 12).

submit that the "inherently transitory" exception to mootness applies to the case at bar.  (*Id.* at 10–11 n.5).  Under the "inherently transitory exception" a plaintiff must demonstrate: (1) that the injury is "so transitory that it would likely to evade review by becoming moot before the district court can rule on class certification[;]" and (2) that "other class members are suffering the injury."  *Wilson v. Gordon*, 82 F.3d 934, 945 (6th Cir. 2016).  Here, as Plaintiffs correctly point out:

> [T]he class includes refugees living in Ohio for over two years who have not been granted adjustment of status.  Many members of this class will eventually apply for and have their applications granted by USCIS and become lawful permanent residents.  However, it is unknown exactly how long USCIS will take to approve any given application, and the adjudication of I-485 applications can take many months and sometimes years.  Further, new refugees resettle in Ohio each year, and some of those refugees will eventually become class members.  Moreover, evidence submitted by Plaintiffs Community Refugee and Immigration Services and Rahouma show that it is clear that other class members are suffering the injury.

(Mot. Class Cert. at 10–11 n.5) (internal citations omitted).  Based on the foregoing, the Court agrees that the inherently transitory exception to mootness applies in this case and that Ibrahim can remain as a named plaintiff.

Turning now to the typicality analysis, Plaintiffs assert that named Plaintiff's claims "arise from the same unlawful conduct[.]"  (*Id.* at 13).  Typical to all Plaintiffs include "Defendant's refusal to accept refugees' I-94s that are more than two years old, and there is no indication that Defendant's written policy is carried out differently as to different class members."  (*Id.*).  The legal claims that Plaintiffs assert arise from the same legal theory.  The typicality requirement is therefore met.

### 4.    Adequacy of Representation

Rule 23(a) permits certification if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement is essential to due process because a final judgment in a class action is binding on all class members.  *Am Med. Sys.*,

75 F.3d at 1083 (citing *Hansberry v. Lee*, 311 U.S. 32 (1940)).  "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Beattie*, 511 F.3d at 562 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997)). The Sixth Circuit has articulated two criteria for determining the adequacy of representation: (1) "[t]he representative must have common interests with unnamed members of the class;" and (2) "it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel." *Senter*, 532 F.2d at 525.

### i.      Named Representatives' Common Interests

The common interest requirement overlaps with the commonality and typicality requirements and requires that the representatives and "the class members have interests that are not antagonistic to one another." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013) (citing *Vassalle v. Midland Funding LLC*, 708 F.3d 713, 721 (6th Cir. 2013)); *see also Shreve v. Franklin Cty.*, No. 2:10-cv-644, 2010 U.S. Dist. LEXIS 131911, at *42 (S.D. Ohio Dec. 14, 2010) ("A plaintiff may not be an adequate representative if that plaintiff is subject to unique defenses that place him or her in a position that is antagonistic to the interests of the class."). Thus, "the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Dry Max*, 724 F.3d at 721.

Plaintiffs submit that they "seek declaratory and injunctive relief to ensure that they can obtain driver's licenses and state identification cards which will enable them to fully participate in civic life; transport themselves to work, medical appointments, and other obligations; and support themselves financially." (Mot. Class Cert. at 14).  Further, Plaintiffs maintain that "[t]his request does not present conflicts between named Plaintiffs and other class members because the named Plaintiffs lack any interests adverse the members of the proposed class." (*Id.* at 14–15).  Based on

this unopposed submission, the Court finds the named Plaintiffs' interests are not adverse to those of the class. The named representatives adequately represent the interests of the class members.

### ii. Class Counsel's Vigorous Prosecution

To satisfy the second requirement of the adequacy of representation prong, it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel. *Senter*, 532 F.2d at 525 (citing *Gonzales v. Cassidy*, 474 F.2d 67, 73 (5th Cir. 1973)). Plaintiffs therefore must have sufficient financial and personal involvement to encourage them to prosecute the action vigorously, and adequate resources and legal representation to meet the demands of maintaining the action. Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1767 (1986)). Further, class counsel must be qualified, experienced, and generally able to conduct the litigation. *Stout*, 228 F.3d at 717.

Here, Plaintiffs seek to appoint as class counsel: Emily Brown, Kathleen Kersh, Mark Heller, and Eugenio Mollo, Jr. of Advocates for Basic Legal Equality, Inc. and Caroline Gentry, Ana P. Crawford, and David P. Shouvlin of Porter Wright Morris & Arthur LLP. (Mot. Class Cert. at 1–2). According to Plaintiffs, Advocates for Basic Legal Equality, Inc., "is the preeminent nonprofit law firm in Ohio in litigation involving immigrants' civil rights." (*Id.* at 15). Ms. Brown represented immigrants in a previous class action in the Northern District of Ohio. (*Id.*; *see also* Ex. 16, 1–2, 7.) Ms. Brown and Ms. Kersh collectively litigated immigration law and civil rights and employment cases in federal courts for 10 years. (*Id.*) Ms. Brown has clerked for two federal district judges in Columbus and enjoys a stellar reputation.

Mr. Heller has been practicing law for four decades. (*Id.*; *see also* Ex. 16 at 3–6.) He has focused his practice in poverty law, "primarily representing immigrants in federal litigation." (*Id.*) Additionally, Mr. Heller served as counsel in several class actions and collective actions. (*Id.*)

Mr. Mollo, Jr. has practiced immigration law and litigated in federal court for 12 years. (*Id.*; *see also* Ex. 16 at 8–9.)

Ms. Gentry, who is well known to the Court as a skilled professional, has practiced law for over twenty years. (*Id.*; *see also* Ex. 16 at 10.) Ms. Gentry has significant experience in federal court and has served as Chair or Co-Chair of Porter Wright's Class Action Practice Group. (*Id.*) Ms. Crawford has five years of litigation experience, including federal trial work on civil rights issues. (*Id.*; *see also* Ex. 16 at 11.) Finally, Mr. Shouvlin is a most distinguished trial lawyer who has litigated many significant cases and has served on virtually every committee of this district court.

The Court also notes that counsel for Defendant here also displayed a high degree of competence and professionalism.

Based on these statements, the Court concludes that Plaintiffs are adequate class representatives and have vigorously prosecuted the interests of the class through qualified and experienced counsel and will likely continue to do so.

**B.    Rule 23(b) Requirements**

In addition to satisfying the prerequisites of Rule 23(a), Plaintiffs must demonstrate that the action falls within one of the subcategories of Rule 23(b). Here, Plaintiffs seek class certification under Rule 23(b)(2), which states, in relevant part:

> A class action may be maintained if Rule 23(a) is satisfied and if: . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Duke*, 564 U.S.

at 360. A class action under Rule 23(b)(2) is referred to as a "mandatory" class action because class members do not have an automatic right to notice or a right to opt out of the class. The defining characteristic of a mandatory class is "the homogeneity of the interests of the members of the class." *Romberio v. Unumprovident Corp.*, 385 F. App'x 423, 432 (6th Cir. 2009) (quoting *Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 649 (6th Cir. 2006)).

To the extent Plaintiffs allege systemic civil rights violations and solely seek declaratory and injunctive relief designed to benefit the class as a whole, and do not seek monetary damages, the Court concludes that Rule 23(b)(2) certification is proper. Plaintiffs allege:

> [A]ll members of the class seek injunctive and declaratory relief from Defendant's generally applicable custom, policy, or practice of not accepting as proof of legal presence a refugee Form I-94 that is more than two years old. The named Plaintiffs do not contend that they were singled out for unlawful treatment. On the contrary, their treatment is in accordance with an official BMV policy, as is the treatment of other class members. The remedy they seek—declaratory and injunctive relief to force Defendant to cease its policy of refusing to accept refugees' I-94s that are more than two years old—would apply to and benefit all members of the proposed class.

(Mot. Class Cert. at 16). The Court agrees. Plaintiffs' allegations apply generally to the proposed class and Plaintiffs have satisfied the requirements of Rule 23(b)(2).

## C. Appointment of Class Counsel

Plaintiffs also ask the Court to appoint Emily Brown, Kathleen Kersh, Mark Heller, and Eugenio Mollo, Jr. of Advocates for Basic Legal Equality, Inc. and Caroline Gentry, Ana P. Crawford, and David P. Shouvlin of Porter Wright Morris & Arthur LLP as counsel for Plaintiffs. As already stated in Section III.A.4.ii., *supra*, counsel for Plaintiffs have so far shown competence and vigor in representing the interests of the proposed class and collectively have significant experience in complex litigation, class litigation, and civil rights litigation. Finally, the Court finds that counsel for Plaintiffs have effectively investigated potential claims in this action and have

demonstrated that they will commit the necessary resources to representing the class.

In sum, the Court hereby GRANTS the Motion for Class Certification. The class under Rule 23(b)(2) consists of the all refugees residing in Ohio who possess a valid refugee I-94 document that is more than two years old and have not yet adjusted their status to that of a lawful permanent resident. The Court further designates Advocates for Basic Legal Equality, Inc. and Porter Wright Morris & Arthur LLP as class counsel.

## IV.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (The requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts.").

Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hamad v. Woodcrest Condo. Ass'n.*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

## V.

Plaintiffs argue "there is no genuine issue of disputed material fact on their Supremacy Clause and Equal Protection Clause claims and that they are entitled to judgment as a matter of law." (Pls.' Mot. Summ. J. at 1.)  In response, Defendant argues that Rahouma and Ibrahim do not have valid claims before this Court and the Plaintiffs are not entitled judgment on either of their claims.

The Court will first address Plaintiffs' standing. *See Unan v. Lyon*, 853 F.3d 279, 284 (6th Cir. 2017) ("It is well established that a federal court must determine jurisdictional questions before proceeding to the merits."). Next, the Court will address whether there is a genuine issue of material fact as to the Policy violating the Supremacy Clause.[6]

### A. Case or Controversy

Defendant argues Rahouma and Ibrahim have "no valid claims[]."  (Def.'s Resp. at 5–6.) Defendant does not use the term standing or mootness or cite any cases, but it appears Defendant is arguing these two Plaintiffs' claims are moot.

The Supreme Court has made clear that Article III requires 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Unan*, 853 F.3d at 284–85 (citing *Preiser v. Newkirk*, 422 U.S. 395 (1975)).  A case becomes moot when the issues

---

[6] Because of the Court's conclusions herein, it is unnecessary to address Plaintiffs' Equal Protection claim. *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347 (1936); *Burton v. United States*, 196 U.S. 283, 295 ("It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case.").

are no longer "live" or "the parties lack a legally cognizable interest in the outcome." *Id.* (citing *United States. Parole Comm'ns v. Geraghty*, 445 U.S. 388, 396 (1980)).

The "[m]ootness doctrine, however, is flexible in the case of class actions." *Id.* (internal citations omitted); *see also Wilson*, 822 F.3d at 941–42.  Generally, once a class is certified, the mooting of the named Plaintiff's claim will not moot the action. *Id.*  Additionally, while generally the mooting of the named Plaintiff's claim prior to class certification moots the entire case, the Sixth Circuit recognizes exceptions including defendants "picking-off" the named plaintiff and claims which are "inherently transitory." *Id.*  Importantly, "[i]f the Court determines that any one of the [p]laintiffs has standing, the court ha[s] jurisdiction and may proceed with the case." *Miller v. Blackwell*, 348 F. Supp. 2d 916, 920 (S.D. Ohio 2004); *see also Carey v. Population Servs. Int'l*, 431 U.S. 678, 682 n.2 (2015) (recognizing that where at least one plaintiff has standing, courts need not determine the standing of the other plaintiffs).

Defendant argues that the Policy requires both an I-94 that is less than two years old and a Form I-797 *or* a Form I-797C.  (Def.'s Resp. 5–6, ECF No 48.)  Thus, Defendant contends, when Rahouma and Ibrahim initially attempted to obtain driver's licenses, they should have been permitted to obtain them.  (*Id.*)  Further, the error the BMV made has since been corrected and Rahouma obtained an identification card and Ibrahim obtained a driver's license.  (*Id.*)  Thus, there is no standing to bring a claim.  (*Id.*)

In contrast, Plaintiffs argue first that Defendant's recitation of the Policy is incorrect.  (Pls.' Reply at 1–2.)  Plaintiffs contend the BMV policy requires a I-797, not an I-797C.  Additionally, Plaintiffs argue Defendant attempted to "pick-off" Plaintiffs by having its counsel reach out to Plaintiffs' counsel to assist them in obtaining licenses and the claims are inherently transitory.  (*Id.*

at 2–3(citing *Miller*, 348 F. Supp. 2d at 920).)  Finally, Plaintiffs point out that even if Rahouma

and Ibrahim's claims are now moot, CRIS's claim is properly before this court.

Plaintiff's arguments regarding the BMV's policy and the application of the mootness

exceptions are well-taken.  The Court already found the inherently transitory exception to

mootness applies. *See* infra III.A.3.  Most importantly, however, CRIS has standing.  Defendant

does not contest this.  CRIS has been injured, and continues to be injured, through the resources it

has expended, and continues to expend, advocating for its constituents to get driver's licenses and

identification cards. *Miami Valley Fair Housing Ctr., Inc. v. Connor Grp*, 725 F.3d 571 576 (6th

Cir. 2013) ("[A] drain on an organization's resources . . . constitutes a concrete and demonstrable

injury for standing purposes.").  CRIS has standing, and thus, the Court need not address Rahouma

and Ibrahim's standing and can move to the case's merits. *Miller*, 348 F. Supp. 2d at 920; *see also*

*Carey*, 431 U.S. at 682 n.2.

## B. Supremacy Clause

Plaintiffs argue the Policy is preempted by federal law and thus, they are entitled to judgment

as a matter of law. (Pls.' Mot. Summ. J. at 12.)

The United States Supreme Court has "long held that federal courts may in some

circumstances grant injunctive relief against state officers who are violating, or planning to violate,

federal law." *Armstrong v. Exceptional Child Ctr*, Inc., 135 S. Ct. 1378, 1384 (2015) (citations

omitted); *see also Exodus Refugee Immigration, Inc. v. Pence*, 165 F. Supp. 3d 718, 728 (S.D. Ind.

2016), *aff'd*, 838 F.3d 902, 904 (7th Cir. 2016) (indicating that after *Armstrong*, courts may

exercise equitable power to enjoin state action that is preempted by federal immigration law).

"Federalism, central to the constitutional design, adopts the principle that both the National and

State Governments have elements of sovereignty the other is bound to respect." *Arizona v. United*

*States*, 567 U.S. 387, 398–99 (2012) (citations omitted). "From the existence of two sovereigns follows the possibility that laws can be in conflict or at cross-purposes. The Supremacy Clause provides a clear rule that federal law 'shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.'" *Id.* (quoting U.S. Const., Art. VI, cl. 2). "Under this principle, Congress has the power to preempt state law." *Id.* at 399.

When federal preemption is alleged, the analysis starts with "the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 438 (2002) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). While there is a strong presumption against preemption of a state law by a federal regulation, *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947), Congress may preempt a state law by enacting its own specific laws. *Arizona*, 567 U.S. at 399 (citing *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000)). The "[p]ower to regulate immigration is unquestionably exclusively a federal power." *De Canas v. Bica*, 424 U.S. 351, 354 (1976); *see* Art. I, Section 8, U.S. Const. ("The Congress shall have Power . . . To establish an uniform Rule of Naturalization . . . .").

Plaintiffs argue this policy is preempted because it creates an impermissible subclass of refugees, which unlawfully encroaches on the federal government's exclusive right to regulate immigration. (Pls.' Mot. Summ. J. at 12.) Plaintiffs argue the impermissible class created by the policy consists of individuals who hold refugee status but were issued their I-94 more than two years ago. (*Id.*)

Defendant contends:

> By requiring refugee applicants to submit their Form I-979 receipt notice, the
> BMV is simply verifying that Plaintiffs are still authorized to stay in the United

24

States. Thus, the BMV is acting within its police power to regulate driver's licenses in order to comply with the requirements of the REAL ID Act and is not creating a separate sub-classification of refugee.

(Def.'s Resp. at 11.)  Defendant's arguments are not well-taken.

In its ordering denying Defendant's Motion to Dismiss, this Court found the Policy was preempted by federal law.  The Court stated:

> [T]he BMV policy on refugee I-94 expiration does create a subclassification of immigration status that is preempted by federal law.  The Registrar creates a new category for determining whether a refugee is lawfully present, that is independent of and has no analogue in federal law.  Specifically, the policy creates a category of lawful immigration status that requires a valid I-94 that was issued more than two years ago and additional documentary evidence in the form of an I-797 approval notice.  Thus, those lawfully present refugees are stripped of the status of lawfully present refugees for purposes of obtaining a REAL ID Act-compliant driver's license.  Federal immigration law, however, does not strip refugees of refugee status nor render them unlawfully present in the United States if they do not apply for or receive approval of an adjustment of status.
>
> In separating refugees into two categories, those who have I-94s that are more than two years old and those who have I-94s that are less than two years old, the BMV policy impermissibly encroaches on the federal government's exclusive authority to make immigration classifications and determine immigration status.  *Plyler v. Doe*, 457 U.S. 202, 225 (1982) ("The States enjoy no power with respect to the classification of aliens. . . . This power is 'committed to the political branches of the Federal government.'" (citations omitted).  "Although it is 'a routine and normally legitimate part' of the business of the Federal Government to classify on the basis of alien status, . . . and to 'take into account the character of the relationship between the alien and this country,' . . . only rarely are such matters relevant to legislation by a State."  *Id*. (internal citations omitted) (citing *Mathews v. Diaz*, 426 U.S. 67, 84–85 (1976); *Nyquist v. Mauclet*, 432 U.S. 1, 7, n. 8 (1977)).
>
> The extensive federal statutory and regulatory scheme governing immigration classifications leaves no room for supplemental state laws or policies that classify non-citizens.  States have no authority to create immigration classifications that do not exist in federal law, nor to assess the legality of a non-citizen's presence or status in the United States separately from the federal government.

(Opinion & Order Mot. Dismiss at 10–12, ECF No. 31.)  This question of preemption is predominantly legal, with factual development often being unnecessary.  *Pac. Gas & Elec. Co. v. State Energy Res. Conservation*, 461 U.S. 190, 201 (1983).

The Court also responded to Defendant's argument that it was simply complying with the REAL ID Act:

> The Registrar's reliance on the REAL ID Act to support its argument is misplaced. As set forth above, the REAL ID Act enumerates nine categories of federally-created "lawful" immigration statuses under which individuals are entitled to REAL ID Act-compliant licenses. One of those categories includes an alien who "has an approved application for asylum in the United States or has entered into the United States in refugee status." Pub. L. No. 109-13-202(c)(2)(B)(iv); 119 Stat. 313; (49 U.S.C. § 30301 codified as note); 6 C.F.R. § 37.3 (2016). Congress made no distinction in this category between refugees admitted before a certain period of time and refugees admitted more recently. The Court agrees with Plaintiffs' assessment that this statutory scheme reflects the federal government's clear intent to convey that 1) refugees do not lose their refugee status simply because they have been in the United States for a certain period of time, and 2) there is no subclassification in federal law between refugees admitted more than two years ago and refugees admitted within the past two years.

(*Id.* at 12–13.)

Since the Court's decision denying Defendant's motion to dismiss, the Registrar has provided no record evidence to support any argument to the contrary.[7]  In contrast, Plaintiffs provide evidence that this policy is preempted. Plaintiffs point out that Defendant testified, in its Federal Rule of Civil Procedure 30(b)(6) deposition, that "other than current BMV policy" there would be no reason not to issue a license to an individual who provided a I-94 document that was greater than two years old. (Casper Dep. 177:12–20, ECF No. 41.) This effectively concedes that the REAL ID Act does not require the I-94 to be issued within the last two years in order to show presence.

There is no genuine issue of material fact. Plaintiffs are thus entitled to judgment as a matter of law and their motion for summary judgment is GRANTED.

---

[7] Defendant offers an affidavit from a BMV customer service assistant indicating than an I-797C should be accepted for an applicant seeking a driver's license. This affidavit does not change the Court's analysis.

## VI

For the reasons set forth above, Plaintiffs' Supplemental Motion for Class Certification (ECF No. 39) is **GRANTED**.  Additionally, Plaintiffs' Motion for Summary Judgment (ECF No. 47) is **GRANTED**.  The Clerk is **DIRECTED** to enter judgment and close this case.

**IT IS SO ORDERED.**

2-20-2020

**DATED**

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**

27