UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

COMMUNITY REFUGEE AND
IMMIGRATION SERVICES, *et al.*,

                   **Plaintiffs,**

    **v.**

REGISTRAR, OHIO BUREAU
OF MOTOR VEHICLES,

                   **Defendant.**

**Case No. 2:18-cv-1189**
**JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Kimberly A. Jolson**

## OPINION AND ORDER

Plaintiffs Badreldin Rahouma, Gumaa Ismail Yahya Ibrahim, and Community Refugee and Immigration Services (collectively "Plaintiffs") have filed a Motion for Attorney's Fees and Costs (ECF No. 53). Defendant Charles L. Norman,[1] Registrar ("Registrar" or "Defendant") of the Ohio Bureau of Motor Vehicles ("BMV") has filed a response (ECF No. 56) and Plaintiffs have filed a reply (ECF No. 57). Thus, the motion is ripe for review. For the following reasons, the motion (ECF No. 53) is **GRANTED**.

### I.

On October 5, 2018 Plaintiffs filed this action seeking declaratory and injunctive relief against the Registrar.[2] (*See* Compl., ECF No. 1.) In their Complaint, Plaintiffs alleged that a BMV Registrar policy which denied driver's licenses to individuals who held valid refugee admission documents but were admitted to the United States as refugees more than two years ago violated

---

[1] This case originally named Don Petit, the Registrar of the BMV on December 4, 2018, when the case was filed. (*See Compl.*; Stip. Facts ¶ 5, ECF No. 18.) Charles L. Norman took office on January 28, 2019, as the new Registrar and, as such, became the defendant in this case. *See https://bmv.ohio.gov/about-registrar.aspx.*

2 On the same day, Plaintiffs' counsel filed a companion case *Intercommunity Justice and Peace Center et al., v. Norman*, No. 2:18-cv-1247. The two cases proceeded through litigation together.

the Supremacy Clause of the Constitution, Article VI, and the Equal Protection Clause of the Fourteenth Amendment to the Constitution. (*See id.* ¶¶ 87–102.)

On February 25, 2020 the Court certified a class under Federal Rule of Civil Procedure 23(b)(2) consisting of "all refugees residing in Ohio who possess[ed] a valid refugee I-94 document that [was] more than two years old and ha[d] not yet adjusted their status to that of a lawful permanent resident." (Op. & Order at 20, ECF No. 50.) Additionally, the Court designated Advocates for Basic Legal Equality, Inc. ("ABEL") and Porter Wright Morris & Arthur LLP ("Porter Wright") as class counsel. (*Id.*) In the same Order, the Court granted Plaintiffs' motion for summary judgment. (*See id.* at 26.) The Court held that the BMV's policy was preempted by federal law. (*See id.*) It was unnecessary for the Court to determine whether the policy also violated the Equal Protection Clause. (*See id.* at 21 n.6.)

Plaintiffs now move for an award of attorney's fees in the amount of $151,912 and costs in the amount of $1090.65. (Pls.' Mot. Att'ys' Fees & Costs at 1, ECF No. 53.)

## II.

Awards of attorney's fees in cases under 42 U.S.C. § 1983 are grounded in 42 U.S.C. § 1988(b). *See Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 788 (1989). Section 1988(b) provides that "[i]n any action or proceeding to enforce a provision of [§ 1983] . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). "In enacting the Civil Rights Attorney's Fees Awards Act of 1976, Congress intended for prevailing parties to ordinarily recover attorney's fees." *Price v. Pelka*, 690 F.2d 98, 101 (6th Cir. 1982). "Awards of attorney fees are an integral part of the remedies necessary to obtain compliance with the civil rights laws." *Id.* at 101–02. "[T]he Supreme Court has held that although it is within the district court's discretion to award attorney's

fees under section 1988, 'in the absence of special circumstances a district court not merely may but *must* award fees to the prevailing plaintiff.'" *Marscott, Inc. v. City of Cleveland*, 936 F.2d 271, 272 (6th Cir. 1991) (citing *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989) (internal citation omitted)).

The preferred method of determining a reasonable attorney's fees award is the lodestar method. *Hines v. DeWitt*, No. 2:13-cv-1058, 2016 U.S. Dist. LEXIS 59344, at *3 (S.D. Ohio May 4, 2016). The lodestar method multiplies the number of hours reasonably expended on the litigation by a reasonably hourly rate. *Id.* Due to the objectivity of the lodestar method "there is a strong presumption that [it] is reasonable." *Perdue v. Kenny A.*, 559 U.S. 542, 554 (2010). The lodestar "produces an award that *roughly* approximates the fee that the prevailing party would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Id.* at 551. "In short, the lodestar award is designed to attract competent counsel to vindicate persons' constitutional rights but is not designed to serve as a windfall for attorneys." *Hines*, 2016 U.S. Dist. LEXIS 59344 at *3–4 (citing *Coulter v. Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986)). The party seeking fees bears the burden of proving that they are reasonable. *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999).

Plaintiffs contend that they are prevailing parties and thus, they are entitled to attorney's fees. (Pls.' Mot. Att'ys' Fees & Costs at 6–7.) Defendant does not argue otherwise. (*See* Def.'s Resp. Opp'n, ECF No. 56.) The Court agrees. The Court will turn to the reasonableness of the fees sought.

### 1. Hours Reasonably Worked

When assessing whether hours were reasonably expended, "the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success

at the point in time when the work was performed." *Libertarian Party of Ohio v. Husted*, No.

2:11-cv-722, 2013 WL 4833033, at *3 (S.D. Ohio Sept. 11, 2013).

> [T]he fee applicant bears the burden of establishing entitlement to an award and
> documenting the appropriate hours expended.  If a claimant clears this hurdle, the
> burden shifts to the adverse party to demonstrate that a particular entry represents
> frivolous work . . . once a plaintiff proffers an itemized and detailed bill, it is well-
> established that conclusory allegations that the hours are excessive and that counsel
> employed poor billing judgment do not suffice to undermine it.

*Dowling v. Litton Loan Servicing, L.P.*, No. 5-CV-98, 2008 WL 906042, at *2 (S.D. Ohio

Mar. 31, 2009), *aff'd*, 320 F. App'x 442 (6th Cir. 2009) (internal quotation marks and

citations omitted).

Plaintiffs seek compensation for the following hours:

| Attorney | Hours |
|---|---|
| Emily Brown | 200.3 |
| Kathleen Kersh | 138 |
| Eugenio Mollo | 14.1 |
| Mark R. Heller | 12.3 |
| Caroline Gentry | 1.45 |
| David Shouvlin | 1.65 |
| Ana P. Crawford | 95.4 |

(Pls.' Mot. Att'y's Fees & Costs at 8.)  Plaintiffs note that their counsel has reduced its time spent

by 119.85 hours (or 25%) including all paralegal and law clerk hours (35 hours) to ensure the

requested hours are reasonable.  (*Id.* at 9; Brown Decl. ¶ 12, ECF No. 53-1.)  Plaintiffs also note

that some travel costs and client meetings have been deducted when multiple attorneys attended.

(*Id.*; Brown Decl. ¶ 15.)  Plaintiffs contend the hours expended were reasonable.  (*See id.*)  In

support, Plaintiffs provided detailed billing records itemizing the hours worked by date, attorney, and subject matter. (*See id.* at Exs. 1-2, 2-1.) The burden therefore shifts to Defendant to show the hours expended were frivolous or excessive. *See Dowling*, 2008 WL 906042 at \*3.

Defendant argues the hours expended were not reasonable because: **(a)** Porter Wright attorneys' hours should either be eliminated or reduced; **(b)** ABLE attorneys' hours were inadequately documented and therefore should be reduced; **(c)** hours billed in regard to expert Pratheepan Gulasekaram should be eliminated; and **(d)** hours worked after the deadline to file a motion for judgment on the pleadings should be eliminated . (*See* Def.'s Resp. Opp'n.)

### a. Porter Wright Hours

Defendant argues:

> [A]ssuming *arguendo*, that Plaintiffs' counsel from ABLE possess the skill, reputation, and experience to command hourly rates ranging from $350 to $550 as asserted in their Motion, there is no reason they needed to enlist the assistance of three additional attorneys outside of their firm in order to prosecute this case, especially when none of the work reported by Porter Wright appears to be for any matters outside of ABLE's claimed expertise. As such, this Court should eliminate any proposed fees charged by Porter Wright.

(*Id.* at 4.) Alternatively, Defendant argues that Porter Wright's charges are "unreasonable and duplicative" and thus, should be reduced. Specifically, Defendant contends that Ms. Crawford billed twice for driving to and preparing for a deposition as well as meeting with the Court for a mediation. (*Id.* at 4–5.)

In response, Plaintiffs contend that ABLE attorneys requested assistance from Porter Wright attorneys because the Porter Wright attorneys had knowledge and experience in the areas of civil rights law and class-action law in federal court. (Pls.' Reply at 2, ECF No. 57.) Plaintiffs contend Defendant should not be able to second-guess Plaintiffs' litigation strategy in order to reduce fees. (*Id.*) Additionally, Plaintiffs contend that Ms. Crawford's hours relating to the

deposition and mediation were not duplicated. (*Id.* at 3.) Instead, Plaintiffs explain, Ms. Crawford split the hours spent working on these matters in half and billed half to each of the two related cases because only one deposition and one mediation was conducted for both cases. (*Id.*) Additionally, Ms. Crawford was the only Porter Wright attorney who attended and worked on these matters making her hours reasonable. (*Id.*) Finally, Plaintiffs note that to the extent Defendant argues Porter Wright attorneys should not have spent hours preparing for the deposition, this argument is without merit because counsel would have done so for a fee-paying client and thus, should do so in a fee-shifting matter. (*Id.* at 4 (citing *Blum v. Stenson*, 465 U.S. 886, 893 (1984)).) Plaintiffs' arguments are well-taken.

The Court has reviewed both ABLE's time sheets and Porter Wright's time sheets and finds there was no unnecessary duplication and the time spent working on the case was reasonable. "Though courts are 'alert to needless duplication efforts by multiple law firms,' a court will review the evidence provided to determine whether such duplication actually took place." *Ne. Coal. for the Homeless v. Brunner*, No. 2:06-CV-896, 2010 U.S. Dist. LEXIS 131009, at *17–18 (S.D. Ohio Nov. 30, 2020). Here, a review of the evidence does not indicate there was any duplication. The matters which Porter Wright attorneys worked on included conferring with ABLE attorneys as to a mediation strategy and the mediation statement, the Rule 30(b)(6) deposition, the constitutional issue of a rational basis review, the expert report, and the motion for summary judgment. (*See* Pls.' Mot. Att'y's Fees & Costs at Ex. 2-1.) This case involved a constitutional issue as well as state law and policy. It was reasonable for ABLE attorneys to collaborate with Porter Wright attorneys familiar with these areas of law in order to ensure the best outcome for their clients.

As to Ms. Crawford's work in particular, the Court has reviewed her time sheet and declaration for both this case and the companion case. The Court concludes Ms. Crawford simply

split her time evenly between the two cases as there was only one deposition and one mediation for both cases. Similarly, any argument that Defendant intended to make contending that Ms. Crawford should not have prepared for the deposition is without merit. Plaintiff is correct that the standards of litigation should not be reduced because a client is non-paying. *See Blum*, 465 U.S. at 893.

As this Court has previously stated, "[o]nce a plaintiff proffers an itemized and detailed bill, it is well-established that conclusory allegations that the hours are excessive, and that counsel employed poor billing judgment do not suffice to undermine it." *Dowling*, 2008 WL 906042 at *4 (citing *Imwalle v. Reliance Med. Prod. Inc.*, 515 F.3d 531, 533 (6th Cir. 2008)). Defendant has not shown that Porter Wright attorneys' hours were unreasonable.

### b. ABLE Attorneys' Documentation

Defendant next argues that ABLE attorneys' time sheets contain references to work performed that are too vague to enable the Court to verify their reasonableness and thus should be deducted. (Def.'s Resp. at 6.) Defendant disputes 30 of Ms. Brown's entries, 3 of Ms. Kersh's entries and 1 of Mr. Mollo's entries. (*See id.* at Ex. A.) The disputed entries involve travel time, multiple attorneys collaborating, and vague language. Some examples of entries Defendant disputes include:

| Emily Brown | 8/22/2018 | 0.3 Hour | Catch up with co-counsel on case | $97.50 |
| Emily Brown | 10/9/2018 | 0.4 Hour | Discovery Planning | $130.00 |
| Emily Brown | 10/9/2018 | 0.1 Hour | Consult re: case | $32.50 |
| Kathleen Kersh | 6/18/2018 | 0.9 Hour | Call with Angie Plummer (.4); debrief with Emily (.5). | $292.50 |

| Eugenio Mollo | 1/9/2019 | 0.6 Hour | Preparing for (reading OC mediation statement) and participating in mediation strategy discussion with co-counsel. | $270.00 |
|---|---|---|---|---|

(*Id.*)

In response, Plaintiffs contend that the Sixth Circuit does not require great detail in entries. (Pls.' Reply at 4–8.) Plaintiffs also note that they have already deducted some of their hours spent traveling or when multiple attorneys collaborated and thus, the requested hours are reasonable. (*See id.*)

Beginning with Defendant's general contention that some of the entries are too vague, the Sixth Circuit has provided that "in assessing fees, district courts are not required to act as 'green-shade accountants' and 'achieve auditing perfection' but instead must simply do 'rough justice.'" *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 703 (6th Cir. 2016) (citing *Fox v. Vice*, 563 U.S. 826, 838 (2011)). Counsel is "not required to record in great detail how each minute of his time was expended, as long as the subject matter [is] identified." *Id.* at 706 (citing *Hensley*, 461 U.S. at 437 n.12). The Court has reviewed the ABLE attorneys' time records including those which Defendant argues are vague and finds the time sheets identify the subject-matter and allow the Court to determine whether the hours expended were reasonable.

As to Defendant's objection to meetings among co-counsel, the Sixth circuit has stated that while "[m]ultiple-lawyer litigation is common and not inherently unreasonable," the district court must evaluate whether the case is "overstaffed." *Id.* (citing *Hensley*, 461 U.S. at 434); *see also Gautreaux v. Chi. House Auth.*, 491 F.3d 649, 661 (6th Cir. 2007) ("Use of one or more lawyer is

a common practice, primarily because it often results in a more efficient distribution of work."). "There is no hard-and-fact rule as to how many lawyers can be at a meeting or how many hours lawyers can spend discussing a project." *Gautreaux*, 492 F.3d at 661. "Hours spent in reviewing records, talking to other lawyers or experts, preparing legal documents and the like cannot be fully verified and require the court to trust the lawyer's word that the hours claimed represent the necessary work actually performed." *Coulter*, 805 F.2d at 150.

The Court finds that the time sheet descriptions which Defendant takes issue with do not show an overstaffing of the case. This case involved a difficult issue of law combining constitutional law, Ohio law, and Ohio BMV policy, and it is reasonable for multiple attorneys to have performed the work to ensure the case proceeded efficiently. There is no indication that there were too many lawyers working on this matter to such a degree that fees should be reduced as a result. As to general entries regarding meetings with co-counsel, the Court trusts that these collaborations were necessary to provide adequate representation.

Finally, as to travel time, courts in the Sixth Circuit have previously allowed billing travel time assuming it is incurred in furnishing effective and competent representation. *See Northcross v. Bd. of Educ.*, 611 F. 2d 624, 639 (6th Cir. 1979) (finding travel costs recoverable); *Disabled Patriots of Am., Inc. v. Reserve Hotel, Ltd.*, 659 F. Supp. 2d 877, 889–90 (N.D. Ohio 2009) (noting that whether to compensate travel time is within the district court's discretion and finding counsel's travel time in the case reasonable); *Lankford v. Reladyne, LLC*, No. 1:14-cv-682, 2016 U.S. Dist. LEXIS 85003, at *16–18 (S.D. Ohio June 29, 2016) (awarding costs for travel and parking related to a mediation). In this case the disputed entries regarding travel are minimal and involve traveling to meet with a client. The Court finds this time reasonable.

In sum, the Court finds ABEL's time sheets are detailed enough such that the Court can discern that the hours were reasonably expended in pursuit of this litigation.

### c. Hours Working with Mr. Gulasekaram[3]

Defendant argues that because Mr. Gulasekaram's expert opinion related to ultimate legal questions in the case it was inadmissible and thus, Plaintiffs' time spent on issues involving Mr. Gulasekaram should be deducted from the attorney's fees owed. (Def.'s Resp. at 7–8.) Plaintiffs argue that Mr. Gulasekaram's report was admissible because it "contextualized and synthesized issues of immigration federalism that Defendant invoked in defense of his discriminatory policy." (Pls.' Reply at 9.) Additionally, Plaintiffs point out that even if portions of the report were inadmissible, this would not have rendered the entire report inadmissible. (*Id.* at 11.) Plaintiffs' arguments are well-taken.

Importantly, in its response to Plaintiffs' motion for summary judgment Defendant did not argue that Mr. Gulasekaram's report was inadmissible. (*See* Def.'s Resp. Pls.' Mot. Summ. J., ECF No. 48.) Defendant has provided no legal argument as to why it should be allowed to argue the inadmissibility of the report at this stage of the case after the merits of the case have already been decided. Further, even if parts of the report were inadmissible, which the Court need not decide now, there were certainly parts of the report which were admissible. For example, Mr. Gulasekaram's report contained information about the I-94 document given to refugees upon entry into the United States. (*See* Expert Report & Decl. Gulasekaram at ¶ 8, ECF No. 47-4.) The Court used this information as background in explaining how refugees gain legal refugee status. (*See* Op. & Order at 3.) This is not a legal conclusion as to the constitutionality of the BMV policy that

---

[3] Importantly, Plaintiffs are not asking for expert fees in what they paid to their expert to obtain his testimony. Instead, they include in their time sheets entries relating to Mr. Gulasekaram such as "follow up with possible expert" and "review and analyze draft expert declaration." (*See* Pls.' Mot. Att'y's Fees & Costs at Ex. 1-2, 2-1.) It is these entries which Defendant disputes.

was the subject-matter of the case. Instead it is simply an explanation of facts by someone with knowledge and expertise as to those facts. It is clear that at least parts of the report were admissible and therefore Plaintiffs are entitled to attorney's fees for work relating to the expert report.

### d. Hours Worked after Deadline to File Motion for Judgment on the Pleadings

Defendant's final argument as to the reasonableness of the number of hours expended is that Plaintiffs should not collect fees for any hours expended after March 25, 2019. (Def.'s Resp. at 8–9.) Defendant contends that the Court gave Plaintiffs until March 25, 2019 to file a response to Defendant's motion to dismiss as well as a motion for judgment on the pleadings. (*Id.*) Plaintiffs chose to only file a response to Defendant's motion to dismiss. (*See id.*) Defendant contends that because the Court quoted from its Order on Defendant's motion to dismiss in its order on Plaintiff's motion for summary judgment, Plaintiffs gained nothing from not filing a motion for judgment on the pleadings. (*See id.*)

Plaintiffs respond that Defendant's "argument is essentially that Plaintiffs should have defeated Defendant more quickly and with less effort." (Pls.' Reply at 11.) Plaintiffs contend that their decision not to file a motion for judgment on the pleadings and instead to proceed through discovery and file a motion for summary judgment was a reasonable litigation decision. (*Id.*) Plaintiffs explain that while the parties agreed to stipulated facts, they were ultimately unable to agree to sufficient facts such that Plaintiffs believed they could win the case on the motion for judgment on the pleadings. (*Id.*) Thus, Plaintiffs collected discovery, such as the Rule 30(b)(6) deposition, and used such evidence in their motion for summary judgment. (*Id.*) Plaintiffs' argument is well-taken.

The Court finds that Plaintiffs' decision not to file a motion for judgment on the pleadings and instead to wait and file a motion for summary judgment was a reasonable litigation decision

in pursuit of a successful outcome. Importantly, the Court evaluates litigation decisions to discern whether they were reasonable at the time the work was performed, not with the benefit of 20/20 hindsight. *Dowling*, 2008 WL 906042 at *3. Here, Plaintiffs' decision not to file a motion for judgment on the pleadings was reasonable at the time based on Plaintiffs' belief that more facts were needed to win as a matter of law. This is true even if the Court did not use all of these facts in the Opinion on summary judgment because the Court evaluates the decision at the time it was made, not with 20/20 hindsight.

Further, Defendant's assertion that the Court did not use the additional facts is not correct because the Court did use facts from the Rule 30(b)(6) deposition. (*See* Op. & Order at 26.) The Court finds Plaintiffs' strategic litigation decision reasonable and will not deduct fees for hours worked after March 25, 2019.

Defendant has not shown Plaintiffs' counsels' hours were frivolous or not in pursuit of a successful litigation outcome. Thus, the Court finds the requested hours are reasonable and will use such hours to calculate the lodestar.

### 2. Reasonable Hourly Rate

A reasonable fee is one that is sufficient to attract competent counsel, but that does not produce windfalls for attorneys. *Blum*, 465 U.S. at 895. In determining a reasonable hourly rate, what is important is not necessarily the exact value sought by a particular firm but instead is the market rate in the venue sufficient to encourage competent representation." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007). The "market rate" is that which lawyers with comparable skill and experience can reasonably charge within the Court's venue. *Id.* "It is well-established that a district court has broad discretion to determine what constitutes a reasonable hourly rate for

an attorney." *Am. Broad Cos., Inc. v. Brunner*, No. 1:04CV750, 2008 WL 11450441, at *10 (S.D. Ohio Sept. 30, 2008).

Plaintiffs seek fees based on the following hourly rates:

| Attorney | Hourly Rate |
|---|---|
| Emily Brown | $325 |
| Kathleen Kersh | $325 |
| Eugenio Mollo | $450 |
| Mark R. Heller | $550 |
| Caroline Gentry | $440 |
| David Shouvlin | $540 |
| Ana P. Crawford | $275 |

(Pls.' Mot. Att'ys' Fees & Costs at 11.) In support of such rates, Plaintiffs provide Ms. Brown's declaration, each attorneys' resume, Ms. Gentry's declaration, and Subodh Chandra's declaration and resume. (*See id.* at Exs. 1, 1-1, 2, 3, 3-1.)

Mr. Chandra is the managing partner and founder of the Chandra Law Firm which specializes in, among other areas of the law, complex civil rights law. (Chandra Decl. ¶ 7, ECF No. 53-3.) Mr. Chandra testified that since 2018 he has "continuously surveyed Ohio fee-shifting practitioners about their rates." (*Id.* ¶ 27.) Mr. Chandra testified the rates sought are reasonable. (*Id.* ¶ 30.) Mr. Chandra cited a series of attorneys in the market many of whose rates for complex litigation are comparable to counsels' rates in this case and many whom have had such rates approved by Ohio courts. (*See id.* ¶ 36.)

Defendant does not oppose these rates. (*See* Def.'s Resp. Opp'n.) After reviewing the evidence Plaintiffs have provided, including counsels' resumes, declarations, and Mr. Chandra's testimony, the Court finds these rates reasonable and will use them in the lodestar calculation.

### 3. Lodestar Calculation

Using the above conclusions, the Court arrives at the following lodestar amounts:

| Attorney | Reasonable Hours | Reasonable Hourly Rate | Lodestar |
|---|---|---|---|
| Emily Brown | 200.3 | $325 | $65,097.50 |
| Kathleen Kersh | 138 | $325 | $44,850 |
| Eugenio Mollo | 14.1 | $450 | $6,345 |
| Mark R. Heller | 12.3 | $550 | $6,765 |
| Caroline Gentry | 1.45 | $440 | $638 |
| David Shouvlin | 1.65 | $540 | $891 |
| Ana P. Crawford | 95.4 | $275 | $26,235 |
| | | | Total: $150,821.50 |

Plaintiffs' counsel's reasonable hours at reasonable rates produce a lodestar of $150,821.50 ($123,057.50 to ABEL and $27,764 to Porter Wright). Thus, the Court concludes that Plaintiff's requested amount of $150,821.50 is reasonable under the lodestar analysis and awards the requested amount.

**III.**

Federal Rule of Civil Procedure 54(d) provides for the assessment of costs as follows: "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Additionally, "[t]he authority granted in section 1988 to award a 'reasonable attorney's fee' includes the authority to award those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Northcross*, 611 F.2d at 639 (citing 42 U.S.C. § 1988). "Before the district court, it is incumbent upon the unsuccessful party to show circumstances sufficient to overcome the presumption favoring an award of costs to the prevailing party." *White & White, Inc. v. Am. Hosp. Supply Corp.*, 786 F.2d 728, 732 (6th Cir. 1986) (quotation marks and citation omitted).

Plaintiffs ask for $1,090.65 in costs which includes costs from deposition transcripts, filing fees, attorney travel costs, photocopying, and printing. (Pls.' Mot. Att'y's Fees & Costs at 12; Bill Costs, ECF No. 54.) Plaintiffs assert these do not include attorney travel costs for multiple attorneys when multiple attorneys attended proceedings. (*Id.*) Plaintiffs assert that "[t]hese expenses were reasonable and necessary to prosecuting Plaintiffs' claims. (*Id.*)

Defendant does not argue against the reasonableness of these costs. The requested costs do not appear excessive. Therefore, the Court awards $1,090.65 in costs.

### IV.

In sum, Plaintiffs Motion for Attorney's Fees and Costs (ECF No. 53) is **GRANTED**. Plaintiffs are awarded $150,821.50 in attorney's fees and $1,090.65 in costs.

**IT IS SO ORDERED.**

6-26-2026
_____
**DATED**

_____
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**